IN THE UNITED STATE DISTRICT COURT
FOR THE NOTHERN DISTRICT OF IOWA
WESTERN DIVISION

| BRUHN FARMS JOINT VENTURE, Plaintiff, -vs- FIREMAN'S FUND INSURANCE COMPANY, Defendant. | No. ___C13-CV-4106_____ PLAINTIFF'S BRIEF IN SUPPORT OF RESISTANCE TO DEFENDANT'S MOTION TO STRIKE SECOND SUPPLEMENTAL REPORT OF DAVID TRITSCH |
|---|---|

COMES NOW, the Plaintiff, by and through Counsel, and in compliance with the Federal Rules of Civil Procedure and LR 7(e) files the following brief in support of resistance to Defendant's Motion to Strike Second Supplemental Report of David Tritsch.

**TABLE OF CONTENTS**

| I. | Introduction | | 2 |
|---|---|---|---|
| II. | Facts | | 3 |
| | 1. | Plaintiff learned for the first time on November 15, 2016, that Defendant failed to produce critical claim documents ("field notes"), which needed to be reviewed by Plaintiff's expert, David Tritsch, and is the basis for his second supplemental report. | 3 |
| | 2. | The field notes were produced by Defendant on November 15, 2016, at the deposition of Galen Sornson only after Plaintiff filed a Motion for Spoliation based on Defendant's previous representation that the field notes did not exist. | 4 |
| | 3. | Plaintiff learned for the first time after review of the field notes and deposition of Galen Sornson that many representations made by Defendant concerning adjustment of this loss were blatantly false. | 5 |
| | 4. | Expert Tritsch's Second Supplemental Report followed the new information learned during Galen Sornson's deposition and review of the field notes. | 10 |
| | 5. | Plaintiff requested Sornson's deposition on July 22, 2016 | 10 |
| III. | Legal Authorities | | 11 |
| IV. | Arguments | | 13 |

1

| | | |
|---|---|---|
| 1. | Expert Tritsch's Second Supplemental Report is a supplemental report in light of the testimony of Galen Sornson and Defendant's late production of the field notes. | 13 |
| 2. | The deadline to supplement expert reports is January 27, 2017, and thus, Expert Tritsch's January 3, 2017 Report is timely. | 15 |
| 3. | If the Court does somehow find that Tritsch's Report was untimely, the timing of the report is harmless and justified. | 16 |
| Conclusion | | 17 |

## I. **INTRODUCTION**

Defendant seeks to strike Plaintiff's Expert's Second Supplemental Report of David Tritsch instead of dealing with the merits of the Report. Expert Tritsch's Second Supplemental Report was timely served under the Court's Scheduling Order and Rule 26(e)(2). There is simply no basis to strike the report. Defendant's Motion is easily denied, as Tritsch's Supplemental Report is clearly timely under the Rules.

Moreover, and perhaps more importantly, the Court should understand the timing of Expert Tritsch's Second Supplemental Report. The timing of the Second Supplemental Report was entirely dictated by Defendant's intentional failure to disclose and produce key documents in this case. The Court is aware that Plaintiff was forced in October 2016 to file a Motion for Spoliation Sanctions concerning the field notes that Plaintiff understood were previously intentionally destroyed by Defendant. Surprisingly, and despite prior representations from Defendant that the field notes no longer existed, the field notes were "discovered" by Defendant and produced for the first time on November 15, 2016. Despite producing these field notes in 2016 instead of with its original responses in 2014, Defendant now seeks with its current Motion to prohibit Plaintiff's expert from commenting on the impact of those field notes on the case as a whole by moving to strike Tritsch's Second Supplemental Expert Report.

Making things worse for the Defendant, though, is that not only did it wait until November 15, 2016 to produce the field notes it once claimed were destroyed, Defendant again surprised Plaintiff

2

on January 12, 2017, when it produced "screen shots" for the first time, depicting additional farms it claims were actually visited by its adjusters. This point is important, as not only is Plaintiff now left scrambling to determine if Expert Tritsch should comment further on the "screen shots," but Plaintiff is also facing this current Motion, which would presumably prohibit him from reviewing documents that Defendant intentionally withheld from production until shortly before trial. Simply put, Defendant does not have clean hands in this Motion. It withheld critical case documents from production in this matter, and now seeks a benefit from its discovery abuses. Plaintiff, on the other hand, has complied with the Court's Orders and has provided Tritsch's Second Supplemental Report as reasonably timely as possible in light of Defendant's late production of documents. This Court should not tolerate Defendant's conduct, and in doing so, should deny Defendant's Motion and permit Expert Tritsch to further comment on the "screen shots" which were first produced by Defendant on January 12, 2017.

## II.    FACTS

**1.    Plaintiff learned for the first time on November 15, 2016, that Defendant failed to produce critical claim documents ("field notes"), which needed to be reviewed by Plaintiff's expert, David Tritsch, and is the basis for his second supplemental report.**

The starting point for the Court's analysis is likely to ask the question: Why did Plaintiff ask its expert to supplement his opinions in this case? The answer is simple and explains the timing of Tritsch's supplementation. Supplementation of Tritsch's opinions became necessary because Plaintiff *finally* received critical case documents from Defendant on November 15, 2016, during the deposition of Plaintiff's representative, Galen Sorenson. (Ex. 8 - Dep. G. Sornson, p. 66-67:2-2; Pl. Appx. 303-304; Ex. 1 – Field Notes, Pl. Appx. 1-30). While Defendant seeks to limit any opinions not disclosed by Plaintiff prior to October 17, 2016, such a limitation in lieu of Defendant's failure to produce critical discovery documents in this case until one month after the October deadline seems completely inappropriate and inconsistent.

3

**2.  The field notes were produced by Defendant on November 15, 2016, at the deposition of Galen Sornson only after Plaintiff filed a Motion for Spoliation based on Defendant's previous representation that the field notes did not exist.**

The field notes, which purport to reflect the work performed by Defendant's adjusters in Plaintiff's fields following the loss in 2012, were produced by Defendant only *after* Plaintiff filed a Motion for Spoliation sanctions on October 31, 2016. (Doc. #65). As Plaintiff set forth in its Reply Brief, the filing of the Motion for Spoliation sanctions on October 31, 2016, placed Defendant in a position to (1) face sanctions for destroying the most critical evidence concerning how this loss was adjusted or (2) produce the field notes which are extremely damaging to Defendant's defense of the claim and support Plaintiff's claim for bad faith? (Doc. #73).

Prior to November 15, 2016, Defendant represented on numerous occasions that the field notes did not exist, which in turn resulted in the Motion for Spoliation sanctions. Defendant first represented that it had produced the relevant claim file on February 5, 2014 with initial disclosures. (Ex. 10 - Defendant's Initial Disclosures, Pl. Appx. 328). Defendant next made the same representation on February 13, 2014 with its Response to Document Request No. 1. (Ex. 11 - Defendant's Response Request Documents #1, Pl. Appx. 331-332). Accordingly, prior to the Summary Judgment Motion being submitted, Plaintiff was completely unaware that Defendant was withholding critical case documents. Thankfully, the Eighth Circuit remanded this case back for trial on all issues.

Following entry of the new Scheduling Order on July 11, 2016, Plaintiff served Defendant Request for Production of Documents Second, which included Request No. 8, which was a narrowly tailored and specific request, asking for the "field sheets documenting the actual counts of the field strips made by Defendant concerning any and all claims made by Bruhn in 2012." (Ex. 12 - Plaintiff's Request Documents Second, Pl. Appx. 338). The specific request for the field sheets was made on July 25, 2016. (Ex. 12 - Plaintiff's Request Documents Second, Pl. Appx. 337). On September 8,

2016, Defendant finally responded by stating that "all documentation regarding the adjustment process has already been produced." (Ex. 13 - Defendant's Response Request Documents Second, #8, Pl. Appx. 345).

As Plaintiff first learned on November 15, 2016, the representations made by Defendant in 2014 and again in 2016 concerning the existence of the field notes was a misrepresentation by Defendant. (Ex. 8 - Dep. G. Sornson, p. 66-67:2-2; Pl. Appx. 303-304; Ex. 1 – Field Notes, Pl. Appx. 1-30). Despite the previous misrepresentations made by Defendant, the field notes did exist, and they were finally produced by Defendant on November 15, 2016 during the deposition of Galen Sornson, which followed immediately after Plaintiff's Motion for Spoliation Sanctions. (Ex. 8 - Dep. G. Sornson, p. 66-67:2-2; Pl. Appx. 303-304; Ex. 1 – Field Notes, Pl. Appx. 1-30).

> **3.    Plaintiff learned for the first time after review of the field notes and deposition of Galen Sornson that many representations made by Defendant concerning the adjustment of this loss were blatantly false.**

On November 15, 2016, Plaintiff learned for the first time that many of the representations previously made by Defendant concerning the adjustment of Plaintiff's 2012 Soybean Hail Loss Claim were blatantly false. Again, Defendant only produced the field notes on November 15, 2016, after Plaintiff filed a Motion for Spoliation Sanctions based on Defendant's previous representations that the field notes did not exist. After they were finally produced on November 15, 2016, Plaintiff reviewed them, asked Galen Sornson questions that same day during his deposition, and has now presented that newly produced document and deposition to its expert to comment on, which resulted in the January 3, 2017 Second Supplemental Report. Defendant, in moving to strike the resulting supplemental report, seeks to benefit from its intentional withholding of these documents, which should not be tolerated by this Court.

A review of the inconsistencies is important to explain why it was necessary to have Tritsch review and comment on the newly produced field notes. The first inconsistency revealed in review

5

of the field notes was Defendant's prior representation concerning the fields actually looked at and adjusted by Defendant. Prior to November 15, 2016, Defendant had represented through its Proof of Loss that 7,934 soybean acres were submitted under the 9/11/2012 date of loss. (Ex. 4 - FFIC Proof of Loss, Pl. Appx. 216-217). In other claim documents produced prior to November 15, 2016, Defendant represented that of the 7,934 soybean acres, roughly 6,500 were looked at and adjusted. (Ex. 7 - Grieme Statement, Pl. Appx. 299). In fact, on November 27, 2012, Larry Grieme signed his name to the High Dollar Review of this claim on behalf of Defendant and stated "there were 6500 acres of shatter to count." (Ex. 6 - High Dollar Review, Pl. Appx. 297). Accordingly, prior to November 15, 2016, Defendant had represented that its adjusters actually looked at and adjusted at least 6500 of the 7,934 soybean acres.

It was discovered by Plaintiff on November 15, 2016, through Galen Sornson's deposition and review of the field notes, that 6500 acres were not actually looked at and adjusted. In fact, a review of the newly-produced field notes revealed that Defendant's adjusters only looked at 3,175 acres of soybean crop for this claim. (Ex. 1 - Field Notes, Pl. Appx. 1-30). A summary of the field notes, identifying the number of acres purportedly adjusted is below:

| Proof of Loss Line | # of Acres |
|---|---|
|  |  |
| 24 | 142 |
| 28 | 620 |
| 31 | 101 |
| 32 | 255 |
| 34 | 70 |
| 37 | 290 |
| 38 | 230 |
| 39 | 1120 |
| 41 | 120 |
| 43 | 155 |
| 54 | 72 |
|  |  |
| Total Acres: | 3,175 |

(Ex. 1 – Field Notes, Pl. Appx. 1-30; Ex. 4 - FFIC Proof of Loss, Pl. Appx. 216-217))(summaritzed).

The above analysis reveals that, according to Defendant's field notes, somewhere between 3,325 and 4,759 acres of soybean were simply ignored and not adjusted by Defendant. This, of course, was a major revelation in this case and one that necessarily justifies comment by Plaintiff's expert. Again, it was not Plaintiff who intentionally withheld production of the field notes until November 15, 2016. It was Defendant. Yet, Defendant now seeks to benefit from its intentional discovery abuse by trying to prevent Plaintiff's expert from commenting on the impact of the inconsistencies in Defendant's own documents.

The fact that Defendant's field notes represent that adjusters failed to look at and adjust Lines 26, 27, 33, 35, 36, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, and 55 is extremely relevant in this matter, as Defendant's own expert, John Mewes, has identified a September hail storm that would have passed over the farms for Lines 45, 46, 47, 49, 50, 51, 52, 53, 54, and 55. (Ex. 17 - Mewes Report, Pl. Appx. 362-363). The attached map identifies the Bruhn Farms with associated numbered Lines in connection with black outlined pens around the farms that Defendant's own expert admits would have been hit by a hail storm in September 2012. (Ex. 16 - Map of Bruhn Properties and Storm Path Mewes, Pl. Appx. 359).[1] This admission by Defendant's own expert that a hail storm was likely in the area of at least 10 farms that Defendant's field notes confirm were simply ignored and never adjusted by Defendant is highly relevant in this case and supportive of Plaintiff's claims, including the bad faith claim.

The second inconsistency discovered after November 15, 2016, and after the late production of the field notes by Defendant, is that the field notes do not even correspond with the Soybean Survey Sheets and Proof of Loss previously provided by Defendant. This is an important point, as much of Tritsch's commentary in his Second Supplemental Report addresses this. One significant

---

[1] The map also identifies in green other claims paid by Defendant for other insureds for the September 2012 hail claims.

inconsistency between the newly produced field notes and the previously produced Soybean Survey Sheets/Proof of Loss pertains to Line 28 on the Proof of Loss.

A review of the Field Notes reveals the following pertaining to Line 28:

| Test No. | % Loss |
|---|---|
|  |  |
| 1 | 5.2 |
| 2 | 6.7 |
| 3 | 5.2 |
| 4 | 34.6 |
| 5 | 40.9 |
| 6 | 13.5 |
| 7 | 46.8 |
| 8 | 11.5 |
| 9 | 18.4 |
| 10 | 26.0 |
| 11 | 31.7 |
| 12 | 14.4 |

(Ex. 1 – Field Notes, Pl. Appx. 1-30).

Comparing Line 28 from the field notes to the previously produced Soybean Survey Sheet, Defendant previously represented the following test results for Line 28:

| Test No. | % Loss |
|---|---|
|  |  |
| 1 | 44.9 |
| 2 | 47.5 |
| 3 | 35.4 |
| 4 | 23.4 |
| 5 | 19.9 |
| 6 | 21.5 |
| 7 | 24.2 |
| 8 | 73.2 |
| 9 | 34.1 |
| 10 | 15.9 |
| 11 | 18.0 |

(Ex. 5 – Soybean Survey Sheet, Pl. Appx. 291-295).

As the Court can tell from the above comparison, it was first discovered by Plaintiff on November 15, 2016, that Defendant's own claim documents for Line 28 are *drastically inconsistent*. In fact, not a single test on Line 28 of the Proof of Loss matches the field notes produced on November

15, 2016. This may explain why Defendant did not produce these critical case documents until Plaintiff filed the Motion for Spoliation, placing Defendant in the position of either producing the documents or facing the consequences of destroying the documents, as previously represented by Defendant to Plaintiff.

It gets worse for Defendant than simply Line 28, though. On January 12, 2017, Defendant, again for the first time, produced new case documents in the form of "screen shots" at the deposition of Larry Burkhart. (Ex. 2 - Screen Shots, Pl. Appx. 31-142). The "screen shots" purport to be the data entry for the Soybean Survey Sheets, which forms the basis of the Proof of Loss for Defendant. A comparison of the "screen shots" to the "field notes" reveals more than 100 inconsistencies between the two documents. (Ex. 3 - Filed Notes and Screen Shots Comparison, Pl. Appx. 143-214). In fact, the field notes and Screen Shots are so inconsistent that Defendant's National Claim Field Manager, Larry Burkhart, could not explain them during his deposition. (Ex. 9 - Dep. L. Burkhart, p. 74-75:16-8, Pl. Appx. 321-322).[2]

Just like the revelation in November 2016 that Defendant did not go to more than 3000 of the soybean acres, the revelation that the field notes are inconsistent with the documents that form the basis of the Proof of Loss and previous payment of benefits is a significant development in this case. Again, it was not Plaintiff who intentionally withheld production of the field notes until November 15, 2016. It was Defendant. Yet, Defendant, who apparently would not have produced these documents but for a Spoliation Motion, still seeks to benefit from its discovery abuse.

---

[2] In addition to not being able to explain the drastic inconsistencies between the field notes and screen shot, Mr. Burkhart had no reasonable explanation for why the field notes were not produced until November 2016, and the screen shots until January 2017. (Ex. 9 - Dep. L. Burkhart p. 63-72:15-1, Pl. Appx. 310-319).

9

### 4. Expert Tritsch's Second Supplemental Report followed the new information learned during Galen Sornson's deposition and review of the field notes.

Expert Tritsch's Second Supplemental Report, dated January 3, 2017, begins with the following statement:

> "This is my second supplementary report in the Bruhn matter. New information since my last report was provided in Galen Sornson's deposition…"

(Defendant's Ex. 4, Def. Appx. 41).

After that, Expert Tritsch engages in a detailed discussion of the claim in light of the new information learned during Galen Sornson's deposition, including the information contained in the field notes. (Defendant's Ex. 4, Def. Appx. 41-46). Because of this new information and his analysis, Tritsch opines that the money due and owing under the policy is an additional $1,793,250 for a total of $3,549,778. (Defendant's Ex. 4, Def. Appx. 45-46). Tritsch's analysis in his Second Supplemental Report would not have been possible to do prior to receiving the field notes and the testimony of Galen Sornson. In fact, as he comments in his report, "the executive(s) had access to all of the data, and (Tritsch) did not." (Defendant's Ex. 4, Def. Appx. 46).

### 5. Plaintiff requested Sornson's deposition on July 22, 2016.

On page 3 of its Brief, Defendant asserts that "Plaintiff has known that Galen Sornson was the lead adjuster on the subject claim from the inception of this case and could have elected to depose him on an earlier date." (Defendant's Brief, p. 3, Doc. #79). Defendant's point, though, is subject to two fatal criticisms.

First, Plaintiff requested Sornson's deposition on July 22, 2016. (Ex. 14 - July 22, 2016 Email Exchange, Pl. Appx. 354). That request was ignored, and Plaintiff's Counsel was forced to send a follow up on August 1, 2016. (Ex. 14 - July 22, 2016 Email Exchange, Pl. Appx. 353). Defense Counsel finally responded and objected to any further depositions in the case. (Ex. 14 - July 22, 2016 Email Exchange, Pl. Appx. 352-353). Plaintiff's Counsel made it clear that Plaintiff wanted to depose

10

Sornson, and that others were listed, but would likely not be necessary. (Ex. 14 - July 22, 2016 Email Exchange, Pl. Appx. 350-352). Despite this, nearly a month later, Defendant was still refusing any depositions and instead requested a "meet and confer" on August 17, 2016. (Ex. 14 - July 22, 2016 Email Exchange, Pl. Appx. 349). After Plaintiff was finally able to secure the deposition of Defendant's representative, Larry Grieme, on September 28, 2016, Plaintiff again requested the deposition of Sornson on September 29, 2016. (Ex. 15 - September 29, 2016 Email Exchange, Pl. Appx. 356). On October 12, 2016, Defendant finally responded claiming that it would be the second week of November before they could make Sornson available. (Ex. 15 - September 29, 2016 Email Exchange, Pl. Appx. 356). Accordingly, Sornson's deposition took place in November because it was the earliest date possible for Plaintiff to take the deposition following the initial request in July 22, 2016.

Second, Plaintiff did not know prior to the actual deposition on November 15, 2016, that Defendant would produce critical field notes at the deposition. As set forth above, Defendant represented on numerous occasions that the field notes did not exist, which in turn resulted in Plaintiff's Motion for Spoliation sanctions, which finally prompted Defendant to produce the field notes during the Sornson deposition. It is entirely unfair and inconsistent for Defendant to "blame" Plaintiff for not deposing Sornson earlier when Defendant failed to produce critical case documents pertaining to Sornson, affecting Plaintiff's analysis as to which witnesses needed to be deposed and when.

### III.  LEGAL AUTHORITIES

Fed. R. Civ. P. 26(e) provides:

> (1) In General.  "A party who has made a disclosure under Rule 26(a)…must supplement or correct its disclosure or response:
>
> (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

11

> otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) As ordered by the court.
>
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.[3]

*Fed. R. Civ. P. 26(e)(2016).*

Under the case law in the Northern District and 8th Circuit addressing Rule 26(e) supplemental reports, the framework for analysis has been established as the following:

> (1) Is the Expert report supplemental in nature?
>
> (2) If so, did an Order of the Court amend the supplemental expert deadline established by Rule 26(e)(2) which incorporates the Rule 26(a)(3) pretrial disclosure deadline?
>
> (3) If so, was the Order of the Court setting forth the supplemental expert deadline violated by the supplemental report?
>
> (4) If not, was the deadline set forth in Rule 26(e)(2), which incorporates he Rule 26(a)(3) pretrial disclosure deadline violated by the supplemental report?
>
> (5) If a deadline set forth for supplementing expert reports either by the Court or by Rule 26(e)(2) was violated, was it harmless or justified, so as to be permitted under Rule 37(c)(1)[4]?

*See United States v. Hawley*, 562 F. Supp. 2d 1017 (N.D. Iowa 2008)(holding that supplemental report deadline governed by 26(e)(2), and supplemental expert report served more than 30 days before trial was proper); *See also Engineered Prods. Co. v. Donaldson Co.*, 313 F. Supp. 2d

---

[3] The Court's Order set the deadline for pretrial disclosures for 15 days before the date of the FPTC, which is set for February 10, 2017. Accordingly, Plaintiff understands the 26(a)(3) deadline, as modified by the Court's July 19, 2016, Order is now set for January 27, 2017. *See Doc#54 (Final Pretrial Order ¶ II & III)*.

[4] *Fed. R. Civ. P. 37* provides in relevant part:
> "If a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information…on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

*Fed. R. Civ. P. 37(c)(in part).*

12

951, 1014-1015 (N.D. Iowa 2004)(holding that deadline in trial management Order as to exchange of witness list was deadline for supplementation pursuant to 26(e)(1) and (a)(3)); *Serverside Group Ltd. V. Tactical 8 Techs., L.L.C.*, 985 F. Supp. 2d 900, 908-913 (N.D. Iowa 2013)(holding that even if there was a violation of the 26(e) deadline, it was justified or harmless and not subject to Rule 37 sanctions); *City of Cedar Rapids v. Jarvis Constr.*, 2011 U.S. Dist. LEXIS 77196, No. C10-0073 (N.D. Iowa July 15, 2011)(holding that supplemental report was admissible); *Lenius v. Deere & Co.*, 2014 U.S. Dist. LEXIS 160004, No. C12-2063 (N.D. Iowa 2014); *But See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087 (N.D. Iowa 2008)(denying supplemental report of expert when the Scheduling Order contained a deadline separate from the supplemental report deadline from 26(e)(2), and the report was five months late after the supplemental deadline); *See Wegener v. Johnson*, 527 F.3d 687 (8th Cir. 2008)(denying supplemental report of expert made two-and-a half weeks before trial in violation of supplemental report deadline).

## IV. ARGUMENT

**1. Expert Tritsch's Second Supplemental Report is a supplemental report in light of the testimony of Galen Sornson and Defendant's late production of the field notes.**

Defendant asserts that Expert Tritsch's Second Supplemental Report "asserts entirely new liability theories and more than doubled his estimation of contract damages" and thus is a report that should have been provided on or before October 17, 2016. (Defendant's Brief p. 2-3, Doc #79). Defendant contends that "a vast majority of the opinions contained in the supplemental report are based on adjustment records and a soybean loss instruction handbook furnished approximately three years ago." (Defendant's Brief, p. 3, Doc #79). Based on this, Defendant argues that the report is eleven weeks late and less than four weeks before the close of discovery. (Defendant's Brief, p. 4, Doc #79).

13

Defendant mischaracterizes the nature and scope of Expert Tritsch's Second Supplemental Report. The opinions express in the Second Supplemental Report follow the deposition of Galen Sornson and the late production of the field notes by Defendant on November 15, 2016. In fact, Expert Tritsch's Second Supplemental Report, dated January 3, 2017, begins with the following statement:

> "This is my second supplementary report in the Bruhn matter. New information since my last report was provided in Galen Sornson's deposition…"

(Defendant's Ex. 4, Def. Appx. 41).

After that, Expert Tritsch engages in a detailed discussion of the claim in light of the new information learned during Galen Sornson's deposition, including the information contained in the field notes. (Defendant's Ex. 4, Def. Appx. 41-46).

Tritsch begins with the premise that the claim should have been rejected upon receipt from RCIS (Defendant's managing agent) for being incomplete. (Defendant's Ex. 4, Def. Appx. 41). Tritsch opines that Sornson's testimony and the field notes supports the conclusion that the claim should have been rejected as being incomplete. (Defendant's Ex. 4, Def. Appx. 41). In his discussion on the "Notice" analysis, Tritsch makes specific reference to the impact of Sornson's investigation. (Defendant's Ex. 4, Def. Appx. 41). These opinions are clearly supplemental in light of Sornson's testimony. In his discussion on "Investigation," Tritsch spends time discussing Sornson's testimony in light of the industry requirements concerning a proper and adequate investigation. (Defendant's Ex. 4, Def. Appx. 41-43). Again, these opinions are clearly supplemental in light of Sornson's testimony. While it is true as Defendant notes that Tritsch refers back to the NCIS loss instructions produced earlier as well as certain claim documents produced earlier, it is only to the extent he is using it to analyze Sornson's testimony. (Defendant's Ex. 4, Def. Appx. 41-43). In his next discussion, Tritsch analysis the "proof of loss" in light of Sornson's testimony, and the discussion

14

lays the foundation for the opinions set forth in the payment or denial of the claim. (Defendant's Ex. 4, Def. Appx. 43-44). Again, these opinions are clearly supplemental in light of Sornson's testimony.

Finally, Tritsch in his discussion under "payment or denial of the claim" begins his analysis of whether the payment or denial of the claim was proper in light of the newly learned information during the Sornson deposition and the late-produced field notes. (Defendant's Ex. 4, Def. Appx. 43-46). In reading Defendant's Brief, it appears that this opinion is what upsets Defendant, as Tritsch's analysis of Sornson's deposition and the field notes previously withheld by Defendant results in an increased damage award in this matter. As set forth in this section, Tritsch analyzes the impact of the field notes which (1) do not support the survey sheets which formed the basis of the proof of loss and payment actually made and (2) do not support the claim previously made by Defendant that its adjusters actually went and looked at all of the fields, including those that it assigned 0% loss. (Defendant's Ex. 4, Def. Appx. 43-46).

Because of this information first learned during the Sornson deposition and review of the field notes which were previously withheld by Defendant, Tritsch now opines that the money due and owing under the policy is an additional $1,793,250 for a total of $3,549,778. (Defendant's Ex. 4, Def. Appx. 41-46). Tritsch's analysis in his Second Supplemental Report would not have been possible to do prior to receiving the field notes and the testimony of Galen Sornson. In fact, as he comments in his report, "the executive(s) had access to all of the data, and (he) did not." (Defendant's Ex. 4, Def. Appx. 46). Accordingly, the report is a supplemental report and not subject to the October 17, 2016 deadline that Defendant relies on in trying to strike Tritsch's Second Supplemental Report.

### 2. The deadline to supplement expert reports is January 27, 2017, and thus, Expert Tritsch's January 3, 2017 Report is timely.

No Order of this Court has amended the supplemental expert deadline established by Fed. R. Civ. P. 26(e)(2). Under, Rule 26(e)(2), the deadline to supplement report is established by the Rule 26(a)(3) pretrial disclosure deadline unless that deadline is amended by the Court Order. In this

15

matter, the Court's Final Pretrial Order, entered on July 19, 2016, set the Rule 26(a)(3) pretrial disclosure as 15 days before the date of the FPTC, which was set for February 10, 2017. *See Doc #54*; *See also Engineered Prods. Co. v. Donaldson Co.*, 313 F. Supp. 2d 951, 1014-1015 (N.D. Iowa 2004)(holding that deadline in trial management Order as to exchange of witness list was deadline for supplementation pursuant to 26(e)(1) and (a)(3)).

Accordingly, by Order of this Court, expert supplemental reports are due by January 27, 2017. It is undisputed that Expert Tritsch's Second Supplemental Report was served before that deadline, and thus, the Supplemental Report is timely. Because the Supplemental Report is timely, Defendant has no grounds to move to strike the report, and Defendant's Motion should be denied in its entirety.

### 3. If the Court does somehow find that Tritsch's Report was untimely, the timing of the report is harmless and justified.

While Plaintiff believes that the Court need not engage in Rule 37 analysis, if it does, Plaintiff believes that the timing of the Tritsch Second Supplemental report is harmless and justified, thus striking the report is not an appropriate remedy. Plaintiff has set forth above why the timing was justified (based on Defendant's refusal to put Sornson forward for a deposition and the late production of the field notes). Moreover, the timing is harmless, as Defendant has and continues to have time to depose Tritsch prior to the close of discovery as well as supplement its expert reports if it believes that to be necessary. In fact, Plaintiff has agreed to put Tritsch up for a deposition concerning his opinions expressed in his Second Supplemental Report, but to date, Defendant has apparently decided not to do so.

## CONCLUSION

The Eighth Circuit has said that this case needs to be litigated on its merits. Plaintiff is willing to do so. Again, Defendant appears unwilling to do so. Defendant's motion should be overruled in its entirety, except to the extent Defendant actually wants to depose Tritsch concerning his opinions and said deposition is within the 10 deposition limit imposed by this Court.

BEATTIE LAW FIRM, P.C.

By____*Donald G. Beattie*_____
Donald G. Beattie (AT0000736)
Nile Hicks (AT0009391)
4300 Grand Ave.
Des Moines IA 50312
Phone: (515) 263-1000
FAX: (515) 263-1411
don.beattie@beattielawfirm.com
nile.hicks@beattielawfirm.com

SPAULDING, BERG & SCHMIDT, P.L.C.

Nicholas L. Shaull (AT0010096)
2423 Ingersoll Ave.
Des Moines IA 50312
Phone: (515 277-6559
Fax: (515) 277-7536
Email: nick.shaull@sbsattorneys.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Kelly L. Brandt Beattie, do hereby certify that on January 26, 2017, I electronically filed foregoing document with the Clerk of Court using the ECF system which will send a notification of said filing to all counsel of record in this matter.

_____/s/ Kelly L. Brandt Beattie_____
Beattie Law Firm, P.C.