IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

BRUHN FARMS JOINT VENTURE                                          PLAINTIFF

v.                                                                       Case No. 13-CV-4106-CJW

FIREMAN'S FUND INSURANCE COMPANY                   DEFENDANT

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
STRIKE SECOND SUPPLEMENTAL REPORT OF DAVID TRITSCH**

COMES NOW the Defendant, Fireman's Fund Insurance Company ("FFIC"), and submits the following reply brief in support of its motion (Doc. 79) to strike the second supplemental report of Plaintiff's expert, David Tritsch.[1]

**1. Plaintiff has known which fields were adjusted and paid from the inception of this case.**

In an effort to justify the untimely disclosure of Mr. Tritsch's second supplemental report, Plaintiff attempts to create a controversy where none exists. That is, the Plaintiff suggests that the specific fields that were inspected by the loss adjusters on October 29 and 30, 2012—and for which payments were issued to the Plaintiff—were unknown until Galen Sornson produced "field notes" at his deposition on November 15, 2016. The field notes are nothing more that hand-written notations of counts taken by the adjusters when they inspected the check strips left in the loss fields. The adjuster counts were entered into the RCIS computerized claim platform (known as Quest), which calculated the loss percentages for each field inspected. The result of this process is a Quest-created document known as a soybean survey sheet, which is part of the claim file. The entire claim file, including the survey sheets, was produced at the inception of

---

[1] FFIC reserves the right to also file a motion in limine addressing the substance of Mr. Tritsch's expert opinions, as disclosed in his original and supplemental reports. The present motion is only intended to address whether the second supplemental report should be stricken based on the untimely disclosure thereof.

this case with FFIC's initial disclosures.[2] *See* Plaintiff's Appendix (Doc. 86-2) at 226-289. As clearly shown on the survey sheets, the adjusters inspected and assessed losses on the following seventeen fields, which comprise 4,422.5 total acres:

| Line #[3] | # Acres | % Loss |
|---|---|---|
| 24 | 142 | 6.8 |
| 25 | 260 | 52.2 |
| 28 | 620 | 35.3 |
| 29 | 230 | 4.4 |
| 30 | 150.3 | 5.6 |
| 31 | 101 | 2.6 |
| 32 | 255 | 5.2 |
| 34 | 70 | 11.8 |
| 37 | 290 | 3.6 |
| 38 | 230 | 1.9 |
| 39 | 1120 | 27.4 |
| 40 | 152.2 | 34.2 |
| 41 | 120 | 70.9 |
| 42 | 380 | 2.7 |
| 43 | 155 | 8.8 |
| 44 | 75 | 2.3 |
| 54 | 72 | 2.1 |

Plaintiff now asserts that it was necessary for Mr. Tritsch to prepare a supplemental report because the Sornson field notes somehow established which fields the adjusters examined and also that the adjusters did not visit other fields. The notes are simply documents personally retained by Mr. Sornson as to the counts taken in **some** of the above fields. These notes are not part of the claim file, and they are not determinative of what was paid on the claim.[4] Moreover,

---

[2] Unlike the soybean survey sheets, any notes utilized by the adjusters to initially record their counts prior to entering the same in Quest are not part of the claim file and are typically destroyed once the information is entered. In this instance, Galen Sornson happened to retain some of the notes, and he brought them to his deposition on November 15, 2016.

[3] Each insured field is designated by a separate line number on the schedule of insurance. The schedule further identifies the legal description of each field by section, township, and range.

2

the Defendant has never contended or even suggested that any fields, other than the seventeen listed above, were inspected.

Plaintiff also makes mention of Quest "screen shots" that were produced by Defendant on January 12, 2017. The screen shots merely reflect what numbers were actually entered by the adjusters into Quest to generate the soybean survey sheets. Thus, the screen shots—which cannot justify Mr. Tritsch's tardiness because they were not discovered and produced until after Mr. Tritsch's second supplementation of his report—merely provide the raw data that went into the percentages of loss shown in the survey sheets.

The adjuster notes and the screen shots have absolutely nothing to do with proving which fields the adjusters inspected. Yet, the need for a second supplemental report from Mr. Tritsch is justified entirely on the false premise that these documents "prove" that fields other than the seventeen reflected in the chart above were not visited by the adjusters. Given that the fields inspected are specifically identified in the survey sheets, and Defendant has never claimed to have inspected any additional fields in connection with the September 11 hail loss, there is simply no valid justification for the late supplementation by Mr. Tritsch.

### 2. Plaintiff's prior spoliation motion is completely irrelevant.

To further justify the late submission of the Tritsch report, Plaintiff accuses the Defendant of all manner of alleged discovery abuses and points to the prior motion for spoliation sanctions (Doc. 65) as evidence of Defendant's alleged misconduct. It bears noting (yet again) that the Court denied Plaintiff's spoliation motion and determined that "Defendant acted promptly and in good faith" in responding to Plaintiff's discovery requests. *See* Doc. 75 at 2. The filing of that motion had nothing to do with Mr. Sornson's production of field notes that he

---

[4] Mr. Sornson produced field notes referencing fourteen of the seventeen fields for which there are survey sheets. However, it is indisputable that the adjustment was made on the above seventeen fields and that Plaintiff was paid a loss on all of these fields.

had personally retained at his deposition. And, as noted above, the field notes merely serve as further documentation of the adjusters' inspections of some of the seventeen fields in dispute. To suggest that the existence of these notes serves as proof that **other** fields that RCIS never claimed to have inspected were in fact not inspected is nonsensical.

### 3. Rule 26(e)(2) does not permit wholesale revisions to an expert report.

Plaintiff argues that the second supplemental report of Mr. Tritsch was timely pursuant to Rule 26(e)(2) because it was served prior to the deadline for pretrial disclosures (21 days prior to the Final Pretrial Conference). However, it is well established that the type of supplementation permitted under this rule is very limited in scope and is for the "narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." *Wells v. Lamplight Farms, Inc.*, 303 F.R.D. 530, 536 (N.D.Ia.2014) (quoting *Mineabea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C.2005). Mr. Tritsch amended his report to address fields in addition to the seventeen listed on the chart above. It has been known since the inception of this case which of the fields the adjusters inspected. Thus, there is nothing to justify Mr. Tritsch's supplementation of his report some eleven-plus weeks after the expert designation deadline.

### 4. The late supplementation is far from harmless.

Finally, Plaintiff argues that, even if the Tritsch supplementation was tardy under the Rules, the tardiness was harmless because FFIC can still take Mr. Tritsch's deposition in advance of the March 6 trial date. In his supplemental report, Mr. Tritsch has more than doubled his estimation of contract damages. The late disclosure, coming on the eve of trial, has effectively thwarted Defendant's ability to mount any meaningful defense to these new claims, through additional written discovery, rebuttal experts, or motion practice. The late supplementation is the very antithesis of "harmless."

4

## CONCLUSION

The untimeliness of Mr. Tritsch's second supplemental report has caused significant prejudice to the Defendant. Consequently, the report must be stricken and Plaintiff precluded from utilizing the information or theories presented in that report at trial. Alternatively, the Defendant requests that a new scheduling order be entered in this case allowing FFIC additional time to disclose rebuttal expert opinions and conduct discovery on the additional liability theories and damages contained in Mr. Tritsch's second supplemental expert report.

Date: February 2, 2017

Respectfully submitted,

s/ Jeffrey S. Dilley
Jeffrey S. Dilley, *Pro Hac Vice*
jsd@henke-bufkin.com
Elizabeth T. Bufkin, *Pro Hac Vice*
etb@henke-bufkin.com
W. Kurt Henke, *Pro Hac Vice*
wkh@henke-bufkin.com
HENKE BUFKIN, P.A.
Post Office Box 39
Clarksdale, MS 38614
662-624-8500 (telephone)
662-624-8040 (fax)

Michael W. Ellwanger, AT0002283
mellwanger@rawlings-law.com
RAWLINGS, ELLWANGER, JACOBS
MOHRHAUSER & NELSON, L.L.P.
522 4TH Street, #300
Sioux City, IA 51101-1624
712-277-2373 (telephone)
712-277-3304 (fax)

*Attorneys for Fireman's Fund Insurance Company*

## Certificate of Service

I, Jeffrey S. Dilley, do hereby certify that on February 2, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send a notification of such filing to all counsel of record.

                                                          s/ Jeffrey S. Dilley