IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BRUHN FARMS JOINT VENTURE,<br><br>Plaintiff,<br><br>vs.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>Defendant. | No. 13-CV-4106-CJW<br><br>**ORDER** |

_____

## *I.  INTRODUCTION*

This matter is before the Court on Defendant's Motion to Strike Portions of Supplemental Discovery Response and Preclude Recovery of Newly-Discovered Damages (Doc. 77), and Defendant's Motion to Strike Second Supplemental Report of David Tritsch (Doc. 79).

Defendant seeks to strike portions of Plaintiff's December 6, 2016, supplemental answer to Interrogatory No. 9 that disclosed the following five new categories of damages. (Doc. 77, at 4). Plaintiff resists Defendant's motion to strike, asserting that its supplemental disclosure was timely. (Doc. 80).

Defendant also moves to strike expert David Tritsch's second supplemental report (dated January 3, 2017, and served on January 6, 2017) because it was not timely. (Doc. 79 at 3; Doc. 86 at 5). Plaintiff resists Defendant's motion to strike its expert's supplemental response, asserting it is timely because it was based on field notes Defendant produced in November 2016. (Doc. 86).

For the reasons that follow, the Court grants in part and denies in part Defendant's motions to strike.

1

## II. PROCEDURAL HISTORY AND BACKGROUND

This suit arose when in 2012 Plaintiff suffered storm damage to its crops insured by Defendant. Defendant inspected the crop damage and paid Plaintiff approximately $250,000 for its loss. Unsatisfied, in 2013 Plaintiff filed suit against Defendant in state court, which Defendant then removed to this Court based on diversity of citizenship. In Count 1 of its complaint, Plaintiff asserts that Defendant breached the parties' contract "because it refuses to compensate the Plaintiff under the terms of the contract" and "by failing to comply with other provisions and duties required of it under the contract." (Doc. 3, at 2). Plaintiff sought damages of "$1,316,225.30 which is sufficient to fully compensate it for all of the damages suffered by the Plaintiff resulting directly or indirectly, from the Defendants [sic] breaches." (*Id.*). In Count 2 of its complaint, Plaintiff alleged that Defendant acted in bad faith in adjusting the insurance claim, for which it sought "punitive damages in an amount sufficient to deter Defendant and others from such outrageous and intentional conduct in the future." (*Id.*, at 4). Plaintiff has never moved to amend its complaint.

On December 13, 2013, Plaintiff served its initial disclosures on Defendant, including information required under Rule 26(a)(1)(A)(iii) ("a computation of each category of damages claimed by the disclosing party"). In these initial disclosures, Plaintiff sought additional indemnities under the policy for soybean, corn, and rye losses of $1,562,201, beyond the sum pled in its complaint. Plaintiff has not supplemented its initial disclosures.

On June 11, 2014, Defendant propounded written discovery on Plaintiff, including Interrogatory No. 9, which requested Plaintiff "itemize each element of damages and expense claimed against [Defendant] in this action, including those elements attributable to special damages and those elements attributable to general damages, and state the manner in which each such element of damages and expense has been calculated." On July 24, 2014, Plaintiff served its answer to Interrogatory No. 9. It read: "See Plaintiff's

Rule 26 filing and Plaintiff's expert reports."

On April 9, 2014, Plaintiff served its disclosure of expert witnesses on Defendant, but had not included any reports. On January 5, 2015, Plaintiff provided Defendant with an expert report by David Tritsch. In that report, Tritsch quantified Plaintiff's soybean losses at $1,267,079.

On February 27, 2015, after the close of discovery, Defendant filed a motion for summary judgment. (Doc. 24). On May 8, 2015, the Court granted the motion for summary judgment. (Doc. 33). Plaintiff appealed and about a year later, on May 25, 2016, the Eighth Circuit Court of Appeals reversed the decision, finding there were genuine issues of material fact that prevented a grant of summary judgment, and remanded the case for further proceedings. (Docs. 38-40).

On July 11, 2016, the Court entered a new scheduling order, which provided the following deadlines:

October 17, 2016: Plaintiff's expert disclosures;

October 31, 2016: Dispositive motions;

January 31, 2017: Close of discovery.

(Doc. 48). Trial was scheduled for March 6, 2017, which remains the trial date. (Doc. 54).

On October 17, 2016, Plaintiff served on Defendant an amended and supplemental designation of experts, which included a report by David Tritsch. Mr. Tritsch revised his loss calculation from $1,654,342 to $1,682,486.

Then, on December 6, 2016, Plaintiff served a supplemental answer to Interrogatory No. 9. In that supplemental answer, Plaintiff listed the following categories of damages:

> Plaintiff seeks only what the jury determines is fair and reasonable in this case upon consideration of the totality of the circumstances. Plaintiff provides amounts that a jury would likely award based upon the best information and expertise of counsel, including facts currently known, research and knowledge of past verdicts and settlements, and in light of the

harm involved in this case. The following damages are subject to amendment or supplementation, including pursuant to any and all answers to interrogatories, documents produced, and expert reports produced in this matter:

Due to Defendant's gross negligence, and the wanton, reckless, and unreasonable disregard it exercised in adjusting Plaintiff's September 2012 crop-hail loss, Plaintiff sustained breach of contract damages totaling $1,682,486.

Because of Defendant's improper adjustment and payment of Plaintiff's September 2012 crop-hail loss, Plaintiff was compelled to seek and obtain legal counsel. Plaintiff incurred attorneys' fees from Norelius and Nelson in the amount of $48,896.22; from Peters Law Firm in the amount of $40,200.90; and from Kutak Rock, LLP in the amount of $68,459.56. Plaintiff has incurred legal case expenses to-date totaling $24,185.50. Plaintiff will also owe attorney fees through current representation by the Beattie Law Firm and Nicholas L. Shaull, P.C. of one-third of the recovery, plus costs of litigation.

Alan Bruhn—a member partner of Plaintiff Bruhn Farms Joint Venture—was compelled to cash certificates of deposits totaling $331,356.85 to create additional operating cash flow to make up for the shortage created by Fireman's Fund's improper adjustment and payment of Plaintiff's September 2012 crop-hail loss.

In addition, Alan Bruhn was compelled to borrow $436,703.36 against the cash value of a life insurance policy to create additional operating cash flow to make up for the shortage created by Fireman's Fund's improper adjustment and payment of Plaintiff's September 2012 crop-hail loss. Alan Bruhn has paid interest of almost $60,000 on said loans.

Plaintiff also had to sell an excavator to create additional operating cash flow to make up for the shortage created by Fireman's Fund's improper adjustment and payment of Plaintiff's September 2012 crop-hail loss. As a result, Plaintiff was forced to hire contractors to perform maintenance and dirt work that would have previously been completed through use of Plaintiff's own excavator. To-date, Plaintiff has paid $36,385.00 to Anderson Construction and $271,323.23 to Krohnke Construction to complete this work, for a total loss of $307,708.23.

Because of Defendant's improper adjustment and payment of Plaintiff's September 2012 crop-hail loss—and the financial and other hardship it afflicted upon him—Alan Bruhn has suffered significant past and future physical, emotional, and mental pain and suffering/loss of function in an amount to be determined by the trier of fact. Based on the circumstances of this case, as well as past verdicts and settlements, it is reasonably anticipated to be in the range of $1,000,000 - $10,000,000.

Also, Plaintiff's counsel advises Plaintiff that the United States Supreme Court has permitted punitive damage awards that do not exceed double-digit multiplications of the underlying award or judgment. Plaintiff believes that is an appropriate sanction here to deter Defendant from ever adjusting a loss with the complete disregard for its own standards and guidelines, as well as industry standards and guidelines, as it did with Bruhn, to the great financial and emotional detriment of their own insured. Absent this safeguard, Defendant may continue to adjust its insureds' losses with the same cavalier approach and methods as it did Bruhn's, with reckless disregard and impunity for the damage and emotional toll its actions cause its insured. Consequently, Plaintiff seeks a punitive damage award in the amount of $30,000,000.

(Doc. 77-2, at 33-35; Appendix at 31-33 (same document).

On January 6, 2017, Plaintiff served on Defendant a second supplemental report by David Tritsch. In that report, Mr. Tritsch offered additional liability theories opining that payment was due to Plaintiff on other fields not inspected by Defendant's adjuster, and increased his breach of contract damage calculation to $3,549,778.[1] (Doc. 79-3, at 19-24; Appendix at 41-46 (same document)).

### III. DISCUSSION

Defendant moves to "strike those portions of Plaintiff's Supplemental Answer to Interrogatory Number 9 wherein Plaintiff has asserted new categories of damages and also preclude Plaintiff from seeking any such damages at trial." (Doc. 77-1, at 10).

---

[1] The Court notes that this figure is different from the breach of contract damage calculation Plaintiff provided to Defendant in the supplemental answer to Interrogatory No. 9.

Defendant asserts the supplemental answer was not "timely" under Federal Rules of Civil Procedure 26(e)(1)(A) and that Defendant is prejudiced by the untimely answer because it is precluded from filing dispositive motions or responding to this claim with its own experts. Alternatively, Defendant asks the Court to extend the discovery deadline and grant it leave to conduct discovery and designate experts. Plaintiff counters that it supplemented its answer before the end of the discovery deadline and in compliance with Rule 26, offered Defendant the opportunity to conduct discovery regarding these new damages but Defendant declined, notes that Defendant waited nearly 30 days to file the motion to strike, and claims that "Defendant's own discovery abuse in this case is much worse than the conduct it complains of concerning Plaintiff's supplementation." (Doc. 80, at 2).

Defendant similarly seeks to strike David Tritsch's supplemental expert report on the ground that it was untimely. (Doc. 79). Plaintiff resists, claiming the supplementation was timely under the rules and to the extent it was not, the fault is Defendant's because of late disclosure of field notes. (Doc. 86).

Thus, the question before the Court is whether either of Plaintiff's supplemental interrogatory answer or its supplemental expert disclosures were timely. I will address each in turn.

### A. *Supplemental Interrogatory Answer*

Federal Rule of Civil Procedure 26(e)(1)(A) requires that a party "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e) requires that supplementation be made in a "timely manner." "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." FED. R. CIV. P. 26(e)

advisory committee's note to 1993 amendment.

"A supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made as soon as possible." *Hypertherm, Inc. v. American Torch Tip Co.*, Civil No. 05–cv–373–JD, 2009 WL 703271, at *1 (D. N.H. Mar. 16, 2009). *See also*, *e.g.*, *Malozienc v. Pac. Rail Servs.*, 572 F. Supp.2d 939, 943 (N.D. Ill. 2008) (holding supplementation was made in a timely manner "by supplementing discovery production as soon as possible"); *Walls v. Paulson*, 250 F.R.D. 48, 53 (D.C. C. 2008) (finding supplemental responses untimely when made months after learning of information); *Hummer v. BNSF Ry. Co.*, No. 06-CV-1218, 2006 WL 3523752, at *2 (C.D. Ill. Dec. 6, 2006) (finding supplemental disclosure made nine days after party became aware of evidence was timely).

Plaintiff has not claimed that it just recently learned information that led it to realize that it could claim interest on the funds it claims it was due, or just realized it suffered emotional distress, or just became aware that it had incurred attorneys' fees and expenses. In fact, Plaintiff does not state when it became aware of any of these categories of damages. But, by their very nature, it is readily apparent that these are the types of alleged damages that Plaintiff would or should have known it incurred at or shortly after the alleged breach of contract. Plaintiff, however, did not supplement its interrogatory answer until after nearly three years of litigation, 60 days before the close of a second round of discovery, and 90 days before trial. Where, as here, the deadline for completing discovery was closing and trial was fast approaching, Plaintiff had an obligation to disclose information much earlier than it did for it ever to be considered timely under Rule 26(e). *See Spencer v. Peters*, No. C11–5424 BHS, 2012 WL 6608616, at *2 (W.D. WA. Dec. 18, 2012) ("The Court will not permit the undue hardship that would result to Defendants from Spencer's disclosure of twelve additional witnesses so close to the discovery deadline, especially because Spencer knew or should have known long before November 19, 2012 that some or all of these same witnesses would likely testify.").

It is no answer, as Plaintiff suggests, that its supplemental answer to Interrogatory

7

No. 9 was timely simply because it was technically made before the end of discovery. *See*, *e.g.*, *Lee v. Kmart Corp.*, No. 2014-0079, 2016 WL 4373694, at *14 (D. V.I. Aug. 15, 2016) (holding that supplementation of discovery seven days before the close of the extended discovery period was not timely); *Chemence Medical Products, Inc. v. Quinn*, 1:11-CV-1366-CAP, 2014 WL 12538886, at *2 (N.D. Ga. Dec. 30, 2014) ("Although such disclosure occurred prior to the close of fact-witness discovery, in no way can such action be viewed as a timely amendment under Rule 26" when information was known to the party years before); *Reed v. Washington Area Metropolitan Transit Authority*, 2014 WL 2967920, at *2 (E.D. Va. July 1, 2014) ("Making a supplemental disclosure of a known fact witness a mere two days before the close of discovery. . . is not timely by any definition.").

Rule 26(e)'s timeliness requirement, read in conjunction with the directive of Rule 1 that the rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action," leads the Court to conclude that Plaintiff's delay in disclosing entirely new categories of damages on the eve of the close of discovery was unacceptable, especially where this complicated case was set for trial only two months away at the time of its disclosures. Accordingly, the Court finds Plaintiff has not complied with Rule 26(e)(1) and did not timely supplement its discovery response to Interrogatory No. 9.

Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." These sanctions do not apply, however, if "the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In determining whether the automatic exclusion provision of Rule 37 should apply, the Court should consider four factors in assessing whether the failure to disclose was substantially justified or harmless: (1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used at trial or on a

motion; and (4) the availability of a continuance to cure such prejudice. *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp.2d 1045, 1064 (D. Minn. 1999).

Here, the importance of the information is significant. Plaintiff would purport to introduce entirely new categories of damages not pled in its complaint, nor ever before disclosed during discovery.

Plaintiff's explanation for the delay in disclosure is virtually nonexistent. Indeed, Plaintiff has provided no information about when it learned that it suffered emotional damages[2] or that it has incurred attorneys' fees and expenses, but there is no question that to the extent Plaintiff actually suffered such damages it has known about such damages for some time. Plaintiff cited the deposition of Alan Bruhn, one of the partners, for the proposition that Defendant was previously aware of Plaintiff's emotional damages. (Doc. 80, at 5-6). Putting aside whether the emotional suffering of a partner equals emotional damage to a partnership entity, the Court has reviewed the deposition of Bruhn and finds Bruhn made no claim of emotional suffering or injury in that deposition. Plaintiff's attempt to justify its discovery abuse by claiming Defendant engaged in worse discovery abuse is not a legitimate response. If Plaintiff had evidence Defendant violated discovery rules, then Plaintiff could move for sanctions.[3] Even if Defendant had violated discovery rules, it is hardly a justification for excusing Plaintiff's violation. It seems unnecessary that the Court should have to state the obvious; two wrongs don't make a right. *See Chambers v. Nationwide Mut. Ins. Co.*, No. 5:00CV204, 2002 WL 34364960, at *2 n.6 (N.D. W.Va. Mar. 14, 2002) (noting that a party's argument that "'my discovery responses or my expert's report is better than your discovery responses or expert report' [is equivalent to] the grade school playground defense 'He did it to me

---

[2] The Court will not consider for purposes of this order whether it is even possible for a partnership to suffer emotional damages. That is the subject of a pending motion in limine, which has not yet been fully briefed. (Doc. 103).

[3] The Court notes that Plaintiff knows how to raise claims of discovery abuse. It previously filed a motion for spoliation sanctions (Doc. 65), which this Court denied (Doc. 75).

9

first.' This is irrelevant. The remedy is, as always, to file a motion. Or, as everyone's mother used to advise, 'Two wrongs don't make a right.'").

The prejudice to Defendant is obvious here. Plaintiff's supplemental answer came within 60 days of the end of discovery. Although Plaintiff complains that Defendant did not avail itself of the time remaining to conduct additional discovery, there was little time to conduct the needed discovery of Plaintiff's additional new categories of alleged damages. This was already a complex case with significant other discovery to complete. *See Spencer*, 2012 WL 6608616, at *2 ("Given the quantity and proximity of disclosure to the discovery cutoff date, the heavy deposition schedule, and Defendants' need to depose some or all of the disclosed witnesses, prejudice to Defendants is clear"). And although Plaintiff has since backed off pursuing some of those new categories of damages, that occurred sometime after Defendant filed the instant motion. Just as important, Plaintiff's supplemental answers came after the deadline for Defendant to designate experts and file dispositive motions. Again, it is no answer that Plaintiff expressed its willingness to permit late designation of experts or discovery past the deadline. First, there was hardly time for Defendant to conduct discovery, for example, of Plaintiff's alleged emotional damages, then to identify and retain an expert, then to make an expert disclosure and permit its expert to be deposed all before this matter goes to trial on March 6, 2017. Second, the parties are not at leave to amend the scheduling order on their own. A scheduling order may be modified only for good cause and with the judge's consent. FED. R. CIV. P. 16(b)(4). *See also* Local Rule 16(f) ("The deadlines established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause.").

The final factor is the availability of a continuance to cure the prejudice. Trial is scheduled for March 6, 2017. This case has been on file for more than three years, and this trial date was set more than six months ago, after the parties had already completed discovery once before. The Court will not continue the trial in this matter, and therefore continuing deadlines for discovery, expert disclosures, and dispositive motions is not an

10

option.

Plaintiff argues that the Court should look to the holding in *Mahony v. Universal Pediatric Servs. Inc.*, 753 F. Supp.2d 839 (S.D. Iowa 2010), where the court found sanctions inappropriate. (Doc. 80, at 11-12). In *Mahony*, the Plaintiff sought sanctions against the Defendant alleging that supplemental answers to interrogatory answers were made past a court imposed deadline. The court found otherwise, noting that it "did not impose a deadline" on the Defendant for responding to Plaintiff's discovery request. *Mahony*, 753 F. Supp.2d at 844. The court went on to note that Rule 37(b) provides for sanctions if a party fails to comply with a discovery order, that Rule 37(c) provides for substantially all of the same sanctions under Rule 37(b), then stated "[a] party must disobey a discovery order before sanctions may be imposed . . . ." *Mahony*, 753 F. Supp.2d at 845. Plaintiff in this case implies by citing this quotation that the Court cannot impose sanctions under Rule 37 unless it finds Defendant violated a specific court order. That is not accurate and the *Mahony* Court's statement is too broad. By its plain language, Rule 37(c) provides that a court may impose sanctions "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e)," and one requirement of Rule 26(e) is that supplemental responses to discovery must be timely. The *Mahony* Court never discussed the timeliness requirement of Rule 26(e).

Plaintiff also argues that "'exclusion of critical evidence is an "extreme" sanction, not normally imposed absent a showing of willful deception or a flagrant disregard of a court order by the proponent of the evidence.'" (Doc. 80, at 12, quoting *Lozano v. City of Hazleton*, 241 F.R.D. 252, 255 (M.D. Penn. 2007) (in turn citing *Meyers v. Pennyback Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3rd Cir. 1977)). Plaintiff also cites: *Soto-Lebron v. Fed. Express Corp.*, 538 F.3d 45 (1st Cir. 2008), for the proposition that "failure to supplement barred some damages at trial" *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir. 1975), for the proposition that "Rule 37 sanctions only apply where there is a total non-compliance with discovery"; and *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888 (8th Cir. 2009), for the proposition that the Eighth Circuit Court

11

of Appeals found a district court abused its discretion imposing Rule 37 sanction. Putting aside the fact that none of the first three cases is binding authority on this court, each of these cases is easily distinguishable. In *Lozano*, the issue was not a discovery dispute, but whether a witness could testify without disclosing evidence of his immigration status. *Lozano*, 241 F.R.D. at 255. The *Lozano* Court did not address Rule 37 sanctions. In *Meyers*, which the *Lozano* Court quotes, the issue again related to witnesses, and involved whether the party gave timely notice of a witness in its trial memorandum. *Meyers*, 559 F.2d at 905. Again, the *Meyers* Court did not address Rule 37 sanctions. In *Soto-Lebron*, the court found it an appropriate sanction under Rule 37 to bar the Plaintiff from presenting evidence of economic damages, not just because he failed to supplement his answers to interrogatories as Plaintiff implies, but because like the Plaintiff in this case, he failed to claim such damages from the beginning. *Soto-Lebron*, 538 F.3d at 54 (noting that the Plaintiff "stated that he was seeking damages only for emotional distress. He did not claim economic damages or produce documents that would have supported a claim for lost wages. [The Plaintiff] failed to supplement his answers to interrogatories after economic damages were discussed at various depositions."). In *Fox*, the issue was the application of sanctions under Rule 37(d) for, *inter alia*, failing to answer interrogatories. *Fox*, 516 F.2d at 994-95. Here, in contrast, the Court is imposing sanctions under Rule 37(c) for failing "to provide information . . . as required by Rule 26(a) or (e) . . . ." FED. R. CIV. P. 37(c)(1). Finally, in *Sentis*, the Eighth Circuit Court of Appeals found the district court abused its discretion imposing the sanction of dismissing the case because the decision "rested upon the cumulative findings of several alleged abuses, one of which was clearly erroneous, and several of which involved the court's resolution of close questions." *Sentis*, 559 F.3d at 891. That is not the situation in this case.

In short, the Court finds Plaintiff's failure to timely supplement its answer to Interrogatory No. 9 was not substantially justified or harmless. Accordingly, the Court finds that sanctions under Rule 37 are appropriate. Plaintiff will not be allowed to seek the additional categories of damages disclosed for the first time in its December 6, 2016,

supplemental answer to Interrogatory No. 9.

### B. *Supplemental Expert Report*

Federal Rule of Civil Procedure 26(a)(2) requires the disclosure of the identity and written reports of witnesses who are retained to provide expert testimony at trial. The deposition of such witnesses may occur "only after the report is provided." Rule 26(b)(4)(A). Expert witness disclosures, as well as information provided in the expert's report and deposition, must be supplemented by "[a]ny additions or changes to th[at] information." FED. R. CIV. P. 26(a)(2)(E) & 26(e)(2). A late disclosure of an expert opinion can be "equivalent to a failure to disclose." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose," citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)).

When a party fails to provide the information or the identity of an expert witness in compliance with Rules 26(a) and 26(e), the court has wide discretion to fashion a remedy or sanction under Rule 37(c) that is appropriate under the circumstances. These sanctions can include the exclusion at trial of testimony on undisclosed opinions. *See* FED. R. CIV. P. 37(c)(1). These sanctions do not apply, however, if "the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). *See, e.g.*, *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (the district court did not abuse its discretion in excluding expert witness testimony supplemented less than three weeks prior to trial because, in relevant part, the late disclosure was neither substantially justified nor harmless, and "a continuance would have postponed a much-delayed trial"); *accord Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 976 (8th Cir. 2013) (finding no "clear and prejudicial abuse of discretion" in the district court's decision to strike an expert's second report, which was disclosed after the close of both discovery and the summary judgment record, because that report "materially alter[ed], [rather than] merely clarif[ied]" the expert's original report and deposition testimony) (quotation omitted).

13

Importantly, "the exclusion of evidence is a harsh penalty [for non-compliance with discovery disclosure deadlines] and should be used sparingly." *Wegener*, 527 F.3d at 692 (quotation omitted). *See also Sylla-Sawdon*, 47 F.3d at 285 (stating that a trial court has great discretion in determining whether to strike expert testimony that is disclosed in contravention of the court's scheduling orders). *Cf. Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203-04 (8th Cir. 2015) (affirming, under the circumstances, the district court's denial of a motion to exclude expert trial testimony due to the late disclosure of a supplemental expert report).

Courts have allowed an expert's untimely supplemental report when the supplementation did not contradict prior deposition testimony, but rather, only provided more detailed information that was "entirely consistent with and d[id] not significantly expand on any of the opinions or reasons in the" expert's report, or merely expanding or clarifying initial opinions that the Defendants had an opportunity to test during discovery. *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4–13CV01043 SPM, 2015 WL 2176964, *3 (E.D. Mo. May 8, 2015; *see also Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) (noting that "a post-deposition affidavit [will not be considered if it] contradict[s] prior testimony in an attempt to create issues of fact . . . [b]ut an affidavit may be submitted to clarify ambiguities or confusion in deposition testimony"; and concluding the district court abused its discretion in striking a witness' post-deposition supplemental affidavit because it "clarified and placed into context her prior testimony").

In *Omaha Public Power Dist. v. Siemens Aktiengesellschaft*, No. 8:99CV352, 2002 WL 826830 (D. Neb. Jan. 15, 2002), the court considered whether to strike a supplemental expert affidavit which was filed after the summary judgment deadline. The supplemental affidavit included a new opinion which had not been previously disclosed. The court found the Defendant offered no justification for its failure to comply with the disclosure requirements and had not given any explanation for its late disclosure. The court also found the cross-claim Defendant was prejudiced because the expert's new

14

opinions were disclosed just a few weeks before the final pretrial conference and less than three months before trial. The court determined that because the Defendant had no justification for his late disclosure and because the other party was prejudiced, Rule 37 required the court to exclude the new opinions of the expert witness. *Id*. at *5.

This Court has also previously addressed a similar situation. In *Wells v. Lamplight Farms, Inc.*, 303 F.R.D. 530, 534 (N.D. Ia. 2014), this Court held that FED. R. CIV. P. 26(a)(2)(A)-(B) and N.D. Ia. L.R. 26(b) "when read together, establish that the expert witness disclosure deadlines contained in a scheduling order are deadlines for disclosing all required information about a retained expert, including all of the opinions he or she will offer at trial." This Court further concluded that supplementation of reports after the expert designation deadline is only allowable for the limited purposes of correcting inaccuracies in the original report or addressing information not previously available to the disclosing party. *Wells*, 303 F.R.D. at 536 (quoting *Mineabea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) ("Rule 26(e)(1) provides a limited exception to the deadlines provided in Rule 26(a)(2)(C), requiring that an expert witness supplement his report if he 'learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing.' . . . Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case. Rather, the Rule permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."). This Court noted that the correct procedure, if the party believed it was entitled to relief from a deadline for some reasons, is to file a motion to modify the scheduling order and show good cause for the modification. *Id.*, at 537.

Plaintiff argues that it is entitled to have its expert supplement his report because Defendant did not provide Plaintiff with the adjuster's field notes until November 15, 2016. (Doc. 86, at 3). Plaintiff explains that it had previously requested field notes and

were told that they did not exist, but then one of the adjusters produced them when he showed up for a deposition on November 15, 2016. (Doc. 86, at 4-5). Plaintiff notes that it requested to take this adjuster's deposition as early as July, but he was not produced until November. Plaintiff further indicates that the field notes revealed for the first time that Defendant did not inspect thousands of acres and reflect inconsistencies between the field notes and Defendant's proof of loss sheets upon which it based its payment determination. (Doc. 86, at 4-9). Plaintiff argues that Defendant previously represented it had inspected all of Plaintiff's roughly 6,500 acres. (Doc. 86, at 6). Plaintiff then claims that Defendant produced "screen shots" on January 12, 2017, which show even more inconsistencies. (Doc. 86, at 9). Plaintiff accuses Defendant of intentionally not producing the field notes.

Defendant responds that Plaintiff was always aware that Defendant had only claimed it inspected 17 fields and any references by adjusters to inspecting more acres were simply rough estimates. (Doc. 90, at 1-3). It also points out that Plaintiff's reference to the late production of the screen shots is irrelevant because those were produced after Mr. Tritsch's supplemental report. (Doc. 90, at 3). Defendant further argues that there was no bad faith in the late production of the field notes; rather, Defendant indicates that field notes are routinely destroyed once the final report is generated, but in this particular case the adjuster had not destroyed the rough field notes and brought them to his deposition. (Doc. 90, at 2-3).

The Court first must decide whether Plaintiff's second supplemental report complied with Rule 26. The Court finds that it does not because it constitutes a significant difference in the damage calculation previously provided on October 17, 2016. This is not simply a case of providing a supplemental report for the "narrow purpose of correcting inaccuracies." *Wells*, 303 F.R.D. at 536 (quotation omitted). If Plaintiff believed it had good cause for submitting a significantly altered expert report, it should have filed a motion to modify the scheduling order to allow for a substantive supplementation to its expert's report outside the time allowed by the scheduling order.

16

It did not do so. Rather, it produced a substantively amended supplemental expert report past the deadline for expert disclosures.

The next question, though, is whether sanctions are appropriate in the form of barring Plaintiff's expert's second supplemental report and barring Plaintiff from pursuing the additional damages reflected in that report. The Court finds the sanction of barring the evidence inappropriate because Plaintiff has made a sufficiently arguable showing of just cause for the untimely supplementation of its expert's report. To be clear, the Court does not find there is sufficient evidence before it to show that Defendant acted in bad faith in producing the field notes. Although Plaintiff alleges Defendant intentionally concealed the field notes from it, before the Court there is no evidence of this. The Court also understands there is a factual debate between the parties about whether the field notes truly provide new information to the expert or not. The Court is not in a position to resolve that factual dispute and finds it is best left to the jury. The jury may believe Plaintiff is correct that the field notes reveal Defendant's adjusters did not inspect fields they claim they inspected. In that case, the jury may credit Mr. Tritsch's report. On the other hand, the jury may just as well determine that it was clear from the beginning which fields the adjusters inspected and that the field notes did not reveal anything new. In that case, the jury may discredit Mr. Tritsch's report. Either way, the Court cannot resolve this factual dispute absent live testimony and a full airing of the evidence. The Court does not find the sanction of barring the evidence of Mr. Tritsch's second supplemental report appropriate when the Court believes a legitimate factual dispute exists on the significance of the field notes produced on November 15, 2016, after Defendant indicated it had no field notes and after the deadline for Plaintiff's expert's disclosures.

Accordingly, the Court denies Defendant's Motion to Strike the Second Supplemental Report of David Tritsch. Because the Court finds, however, that the supplemental report constitutes a substantial change in Mr. Tritsch's damage calculation, Defendant will be permitted, if it wishes, to re-depose Mr. Tritsch on the subject of the

changes in his damage calculation as reflected in his second supplemental report.

## IV.   CONCLUSION

For the reasons set forth above, the Court:

(1) **Grants** Defendant's Motion to Strike Portions of Supplemental Discovery Response and Preclude Recovery of Newly-Discovered Damages (Doc. 77). Plaintiff is barred from seeking damages for any category of damages included for the first time in its supplemental answer to Interrogatory No. 9 served on Defendant on December 6, 2016; and

(2) **Denies in part** Defendant's Motion to Strike Second Supplemental Report of David Tritsch (Doc. 79). Plaintiff may present evidence of alleged damages reflected in David Tritsch's second supplemental report served on Defendant on January 6, 2017. Defendant may, however, re-depose Mr. Tritsch regarding the changes in his calculation of damages as reflected in his second amended report.

**IT IS SO ORDERED** this 13th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa