# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

BRUHN FARMS JOINT VENTURE,

        Plaintiff,

vs.

FIREMAN'S FUND INSURANCE
COMPANY,

        Defendant.

No.  13-CV-4106-CJW

**ORDER ON MOTIONS IN LIMINE**

———————————

## Table of Contents

I.     INTRODUCTION.................................................................................. 2

II.    THE PARTIES' GENERAL MOTIONS IN LIMINE................................... 3

    A. Golden Rule ....................................................................................... 3
    B. Effects of Law Suits ........................................................................... 3
    C. Money Tree Argument ........................................................................ 3
    D. Reliance on Counsel ........................................................................... 4
    E. Summary Judgment Ruling .................................................................. 4
    F. Hail Claims Submitted by Plaintiff to Other Hail Insurance Companies .............. 4
    G. Defense Expert Meek's Personal Dealings with Bruhn.................................. 5
    H. Field Notes ....................................................................................... 5
    I. Timely Notice of Claims ...................................................................... 6
    J. Fault of Plaintiff ................................................................................ 6
    K. Prior Law Suits Involving Plaintiff or Al Bruhn.......................................... 7
    L. Alleged Hearsay Statements of Al Bruhn ................................................. 7
    M. References to Motions in Limine or Discovery Disputes............................... 7
    N. Attempts to Compromise or Settle Case.................................................. 9
    O. Relative Wealth of Parties .................................................................. 12
    P. Other Jury Verdicts .......................................................................... 12

III.   PLAINTIFF'S MOTIONS IN LIMINE ................................................... 13

    A. Drought ......................................................................................... 13
    B. Defense Expert John Brown................................................................ 14
    C. Plaintiff's Separate Multi-Peril Crop Insurance Policy ............................... 15
    D. Defendant's Use of Harvest Date for Staging of Plaintiff's Crop.................... 16

IV.   DEFENDANT'S MOTIONS IN LIMINE .................................................. 18

    A. Report and Testimony of Bruce A. Babcock ............................................. 18
    B. Evidence of Wealth of Defendant ........................................................... 20
    C. Evidence of Plaintiff's Alleged Emotional Distress ...................................... 21
    D. Evidence of Plaintiff's Claim for Common Law Attorneys' Fees ...................... 21
    E. Evidence of Defendant's Parent Companies .............................................. 22
    F. Allocation of Punitive Damages Award to Civil Reparations Fund ................... 24
    G. Testimony of David Tritsch ................................................................. 24

V.   CONCLUSION ................................................................................. 26

## I.    INTRODUCTION

This matter is before the Court on the parties' motions in limine.  On February 3, 2017, each party filed multiple motions in limine.  Plaintiff filed a "general" motion in limine regarding a dozen topics (Doc. 93), and four additional motions in limine concerning drought (Doc. 94), defense expert John Brown (Doc. 95), plaintiff's separate multi-peril crop insurance policy (Doc. 96), and a defendant's use of harvest date for staging of plaintiff's crops (Doc. 98).  Defendant filed seven separate motions in limine regarding plaintiff's expert Bruce A. Babcock (Doc. 100), defendant's wealth (Doc. 101), plaintiff's alleged emotional distress (Doc. 103), plaintiff's claim for common law attorneys' fees (Doc. 104), defendant's parent companies (Doc. 105), the allocation of punitive damages to the civil reparations fund (Doc. 106), the testimony of David Tritsch (Doc. 107), and a general motion in limine regarding another four topics (Doc. 108). The Court granted the parties' request for additional time to file resistances to the various limine motions.  The motions are now fully briefed and ready for decision.

For the reasons that follow, the Court grants in part, denies in part, and holds in abeyance in part, the parties' various motions in limine.

## II.    THE PARTIES' GENERAL MOTIONS IN LIMINE

The parties each filed "general" motions in limine. The Court will address separately the issues raised by the parties in their general motions in limine.

### A.    Golden Rule

Both parties seek an order barring the opposing side from suggesting the jury should decide the case based on how it will affect their own lives, sometimes referred to as the "golden rule." (Doc. 93, at 1; Doc. 108-1, at 2). The motions are granted. Neither party may suggest the jurors should place or imagine themselves in the role of one of the parties, or otherwise decide the case on how it might conceivably affect the jurors.

### B.    Effects of Lawsuits

Plaintiff seeks an order in limine barring counsel or witnesses from testifying about or making comments regarding the effect law suits have on people or society generally. (Doc. 93, at 2-3). Plaintiff asserts, however, that its motion is not intended to limit the court or counsel from (1) obtaining the opinions of prospective jurors about lawsuits, or (2) limit the parties from commenting on the reasons and justification for punitive damages. (Doc. 93, at 3). Defendant does not object to this motion. (Doc. 128, at 1). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on the effects of law suits.

### C.    Money Tree Argument

Plaintiff seeks an order barring defendant from referencing "annuity contracts and/or how much could be earned with a sum of money if it were invested at the present time." (Doc. 93, at 3-4). Defendant does not object to this motion. (Doc. 128, at 1). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on annuity contracts or the time value of money.

### D.   Reliance on Counsel

Plaintiff seeks an order barring defendant from referencing reliance "on advice of counsel in making decisions concerning Plaintiff's crop-hail insurance claim." (Doc. 93, at 4). Defendant does not object to this motion. (Doc. 128, at 1). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on reliance of counsel.

### E.   Summary Judgment Ruling

Plaintiff seeks an order barring defendant from referencing "the fact that Defendant's Summary Judgment filing was originally granted by the District Court." (Doc. 93, at 4-5). Defendant does not object to this motion. (Doc. 128, at 1-2). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on the summary judgment motion. That means that neither party may mention the filing of a motion for summary judgment, the district court granting the motion, or the Eighth Circuit Court of Appeals' decision reversing the district court's decision.

### F.   Hail Claims Submitted by Plaintiff to Other Hail Insurance Companies

Plaintiff seeks an order barring defendant from referencing plaintiff's submission of hail loss claims made to other insurance companies both before and after the 2012 loss at issue in this trial. (Doc. 93, at 5-6). Defendant resists this portion of plaintiff's general motion in limine, arguing that "said evidence may be probative to issues as to the standard procedures utilized by the Plaintiff in the submission and handling of crop hail claims" and "may be appropriate for purposes of impeachment." (Doc. 128, at 2). Neither side fully briefed this issue. The Court is not in a position, with such scant information provided by the parties, to assess what evidence may be offered, whether that evidence is similar to the insurance claim at issue, or whether it would have any bearing on proper impeachment. The Court cannot rule on the admissibility of evidence in a vacuum, based on vague and general descriptions of categories of

evidence.  Accordingly, the Court holds in abeyance any ruling on this portion of plaintiff's motion in limine.

### G.    *Defense Expert Meek's Personal Dealings with Bruhn*

Plaintiff seeks an order barring defendant from referencing any prior relationship "Mr. Bruhn" (presumably Al Bruhn) had with defense expert Greg Meek.  (Doc. 93, at 6).  Plaintiff explains that Meek once worked for defendant and had "previous experience with Mr. Bruhn."  (*Id.*).  Defendant objects to this portion of plaintiff's motion, arguing that "said evidence may be probative to issues as to the standard procedures utilized by the Plaintiff in the submission and handling of crop hail claims" and "may be appropriate for purposes of impeachment."  (Doc. 128, at 2).  Neither side fully briefed this issue.  The Court is again not in a position, with such scant information provided by the parties, to assess what evidence may be offered, whether that evidence would be probative of any issue, or whether it would have any bearing on proper impeachment.  Accordingly, the Court holds in abeyance any ruling on this portion of plaintiff's motion in limine.

### H.    *Field Notes*

Plaintiff seeks an order barring defendant from referencing "other field notes that exist or once existed concerning the adjustment of Plaintiff's claims."  (Doc. 93, at 6-7).  Plaintiff argues that defendant has previously represented that it produced all existing field notes and therefore should not be able to claim that others existed.  (*Id.*).  Defendant objects to this portion of plaintiff's general motion limine, arguing that this is "an issue of fact that should be before the jury."  (Doc. 128, at 2).  Defendant claims that "testimony by Galen Sorenson established that he was only able to locate certain notes and that he was unaware of where other field notes were presently."  (Doc. 128, at 2).  Again, the Court has little actual evidence in front of it from which to render an informed decision.  The Court therefore holds in abeyance any ruling on the

admissibility of evidence of the possibility other field notes existed. On the other hand, defendant has allegedly produced to plaintiff all extant field notes. Defendant will not be permitted, therefore, to produce additional field notes as evidence at trial because it has not produced them during discovery.

### I.    *Timely Notice of Claims*

Plaintiff seeks an order barring defendant from referencing or suggesting that plaintiff "did not give timely notice of the claims under the policy for the 2012 year." (Doc. 93, at 7). Plaintiff argues that defendant "waived any such defense and has previously represented in discovery responses that Plaintiff did no wrong in this matter." (*Id.*). Defendant resists this portion of plaintiff's general motion in limine, arguing that "Plaintiff did not comply with the time restrictions for submission of the claim as required under the terms of the crop hail policy" and that defendant's acceptance of the loss, despite plaintiff's failure to make a timely claim, is relevant to the issue of whether defendant "acted with bad faith or with willful and wanton disregard for the rights of another." (Doc. 128, at 3). To the extent plaintiff pursues a claim for punitive damages against defendant, then it brings into play the totality of defendant's conduct in handling plaintiff's claim, including whether defendant processed plaintiff's loss claim even though it was not filed in a timely manner. Accordingly, plaintiff's motion in limine in this regard is denied.

### J.    *Fault of Plaintiff*

Plaintiff seeks an order barring defendant from referencing or suggesting "that Plaintiff did or did not do anything giving rise to fault." (Doc. 93, at 7-8). Defendant does not object to this motion. (Doc. 128, at 3). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on claims that plaintiff was negligent. This does not prohibit admission of evidence, as noted above, that plaintiff did not file a timely claim.

### K.      Prior Law Suits Involving Plaintiff or Al Bruhn

Plaintiff seeks an order barring defendant from referencing prior lawsuits filed by plaintiff, either "individually" (presumably in reference to individual partners) or as "a corporate entity: (presumably meaning as a partnership). (Doc. 93, at 8). Defendant does not object to this motion. (Doc. 128, at 3). Accordingly, plaintiff's motion is granted. Neither party may discuss or comment on prior lawsuits involving plaintiff or Al Bruhn.

### L.      Alleged Hearsay Statements of Al Bruhn

Plaintiff seeks an order barring defendant from referencing or suggesting that "Plaintiff has made statements such as an instruction to adjusters not to inspect or adjust certain soybean fields." (Doc. 93, at 8). Plaintiff, of course, is a partnership. Plaintiff clearly means to reference Al Bruhn. Plaintiff concedes that a statement by Al Bruhn is a statement by a party opponent and therefore does not come within the definition of hearsay. *See* FED. R. EVID. 801(d)(2). Plaintiff insists, however, that "a statement from someone else claiming that Al Bruhn said something is not" a statement of a party opponent. (Doc. 93, at 9). Defendant indicates that it is not in a position to respond to this motion as it is "unsure of the specific statement" at issue. The Court is equally unaware of exactly what testimony plaintiff is referencing, and therefore must hold in abeyance any ruling on this portion of plaintiff's motion in limine. Suffice it to say, however, that if a witness takes the stand and testifies that Al Bruhn made a statement relevant to the issues in dispute in this lawsuit, that testimony would not constitute hearsay because it would constitute a statement of a party opponent, under Rule 801(d)(2).

### M.      Reference to Motions in Limine or Discovery Disputes

Defendant seeks an order barring plaintiff from referencing defendant's motion in limine and any discovery disputes on the ground that they are irrelevant, citing

Federal Rule of Evidence 402. (Doc. 108-1, at 2). Plaintiff does not resist this motion insofar as it relates to the motion in limine and is equally binding on both parties. (Doc. 122, at 1). Accordingly, the Court grants that portion of defendant's general motion in limine.

Plaintiff does resist this motion in limine to the extent it seeks to bar mention of discovery disputes in this case, asserting that the failure of a party to identify a witness or document in a disclosure statement would be admissible, citing the Advisory Committee notes from the 1993 amendments to Federal Rule of Civil Procedure 37. (Doc. 122, at 1). Plaintiff argues that defendant's motion is also deficient in that it fails to identify specific discovery disputes, citing *Rattray v. Woodbury County, Iowa*, 761 F. Supp.2d 836, 842 (N.D. Iowa 2010), and *Kuiper v. Givaudan*, 602 F. Supp.2d 1036 (N.D. Iowa 2009). (Doc. 122, at 2). The Court is unable at this time to determine the admissibility of any evidence regarding a party's production or failure to produce documents or otherwise comply with discovery requests as no specific dispute or evidence has been identified. Nevertheless, whether or not the parties filed motions to compel, and the Court's rulings on those motions to compel, are not relevant to any matter at issue in this trial (FED. R. EVID. 402) and to the extent it might have some probative value, it would be substantially outweighed by the danger of misleading and confusing the jury (FED. R. EVID. 403). Therefore, neither party will be allowed to discuss or introduce evidence of motions to compel or other motions related to discovery disputes, nor the Court's orders ruling on those motions. To the extent a party seeks to offer evidence regarding whether and when a party produced documents or information in relation to a discovery dispute, the Court will hold in abeyance its ruling regarding the admissibility of that evidence until it knows exactly what evidence is being offered and the context in which it is being offered.

*N.*     *Attempts to Compromise or Settle Case*

Defendant seeks an order barring plaintiff from referencing any attempts by the parties to compromise or settle the case, citing Federal Rule of Evidence 408. (Doc. 108-1, at 2). Rule 408 provides:

> (a) **Prohibited Uses.** Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) Furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) Conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. Plaintiff does not resist this motion "to the extent it seeks to limine[1] any reference to the recent, failed mediation or any statements made during that mediation." (Doc. 122, at 3). Plaintiff does not define what it considers to be "recent" mediation. Plaintiff resists to the extent the motion seeks to bar admission of what it refers to as the "primrose path" evidence of defendant's alleged delay in adjusting the fields and settling the dispute over the payment. (Doc. 122, at 3-4).

In assessing this motion, it is helpful here to recount the parties' attempts to reach an agreement before plaintiff brought this suit, as summarized by the Eighth Circuit Court of Appeals.

---

[1] The Court assumes plaintiff is using the word "limine" to mean limit here. Limine is Latin for "at the outset." BLACK'S LAW DICTIONARY (7th Ed. 1999). It does not mean "limit," an all-too-common misconception.

Bruhn sustained a significant hail loss on September 11, 2012, and reported that loss to RCIS. Adjustment of the loss was assigned to RCIS adjuster Galen Sornson. Although the loss occurred in early September, Bruhn had still not heard from RCIS or its adjusters in mid-October. Accordingly, Bruhn requested and obtained approval from RCIS to harvest its crops and leave check strips for the adjusters. Because the loss potentially involved more than 5,000 acres, a six-person team was assembled to work the loss. The team of adjusters did not arrive at the Bruhn farm until October 29, 2012, more than a month after receiving notice of the loss, during which time harvest had occurred and volatile weather conditions persisted in Iowa. Indeed, according to Alan Bruhn (Alan), a partner of Bruhn, weather conditions were cold and windy on the two days that the adjusters were in the fields counting check strips, and the adjusters spent a considerable amount of time in the barn and in their trucks, trying to warm up. Bruhn's expert opined that the adjusters could not have spent a sufficient amount of time in the fields over those two days to properly adjust a claim covering the number of acres over which Bruhn had reported damage.

Nonetheless, the adjusters purportedly completed their counts using the check strips that had been left in the fields and reported that sufficient check strips were left in each field to complete the adjustment process. According to their survey sheets, the adjusters determined that 4,120.5 acres of soybeans had payable hail losses. Based on the crop-hail loss-adjustment procedures set forth in the respective National Crop Insurance Services (NCIS) manuals, the RCIS adjusters found losses ranging from 2.3% to 71.4%. On October 30, Sornson completed the proof of loss for the September 11 claim. Sornson attempted to meet with Alan to discuss the claim on October 30 before leaving the Bruhn farm, but Alan was sick and unable to meet. Sornson faxed a copy of the proof of loss to Alan on November 5, 2012.

Bruhn did not agree with the adjusters' calculations and Alan refused to sign the proof of loss. Sornson's supervisor conducted a review of the Bruhn claim in late November 2012 and determined that the loss had been properly adjusted in accordance with NCIS crop-hail procedures. On November 28, 2012, despite Bruhn's disagreement and without its approval or Alan's signature, RCIS issued payment to Bruhn for the amount RCIS had determined was payable for the losses: $417,636 for the loss, less a premium credit of $184,578, for a net payment of $233,058. A check in that amount was delivered to Alan's residence via FedEx on

December 4, 2012.

After the check was delivered, Alan directed his insurance agent, Terry Nielsen, to inquire as to how he could dispute the paid amount. Nielsen, in turn, contacted Rod Nelson, the manager of RCIS's Regional Service Office. According to Nielsen, Nelson suggested that in order to reconsider the loss determination, the insurance company would look at records of historical yields. It was Nelson's recollection that Nielsen was the one who suggested looking at historical yields, although Nelson agreed in his deposition that looking at historical yield numbers would be part of the process. The next incident of note occurred on December 15, 2012, when Nielsen inquired of Nelson about the status of the claim, and Nelson responded via text message that they were "one drink away" from settling Bruhn's claim. However, when contacted the next day, Nelson stated that there was nothing further RCIS could do with regard to Bruhn's claim.

Following this news from Nelson, Alan met with Larry Burkhart, RCIS's Crop-Hail/Named Peril Field Claims Manager, on December 18, 2012. During the meeting, Burkhart also advised Alan that he would conduct a review of the claim and would, among other things, look at Bruhn's historical yields. Alan contended that his historical yield records would result in a much higher payment. During the meeting, Alan contends Burkhart told him to be patient while they gathered information and considered the claim, because the claim had been mishandled. Nielsen alleges that several weeks later, Burkhart advised him they were about $25,000 apart on the claim, somewhere in the neighborhood of $900,000. Nielsen relayed this information to Alan, who directed him to settle for the lower number. However, when Nielsen contacted Burkhart to tell him Alan was willing to take the lower number, Burkhart retreated, and instead informed Nielsen that after reviewing the available information, he concluded that RCIS's original loss determinations were correct. On January 25, 2013, Burkhart sent a letter to Bruhn indicating that RCIS had completed the review and determined that the claim was properly adjusted and paid.

*Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 823 F. 3d 1161, 1163 (8th Cir. 2016).

Given the nature of this dispute, evidence of the parties attempts to reach an agreement on the adjustment of the crop loss is admissible up to a point because it is relevant to plaintiff's claim defendant acted in bad faith in adjusting plaintiff's claim. Evidence relating to defendant's alleged delay in adjusting the fields is not subject to the Rule 408 prohibition. Evidence regarding the parties' attempts to an agreement up to January 25, 2013, is similarly not barred by Rule 408. All subsequent attempts to settle this dispute, however, are firmly covered by Rule 408. As this Court has previously stated, the inadmissibility of "evidence of settlement negotiations is . . . obvious . . .." *Rattray*, 761 F. Supp.2d, at 841 n.3. The Court therefore grants defendant's motion in limine with respect to any settlement negotiations or attempts at mediation after filing of this suit or in contemplation of this suit after January 25, 2013.

### O.  *Relative Wealth of Parties*

Defendant seeks an order barring plaintiff from referencing the parties' relative wealth, arguing it is irrelevant under Federal Rule of Evidence 402, and any probative value is outweighed by prejudice to defendant, citing Federal Rule of Evidence 403. (Doc. 108-1, at 2). Plaintiff resists this portion of defendant's general motion in limine, insisting that the wealth of a defendant is admissible for determining whether to award punitive damages. (Doc. 122, at 4). Although that is true, the *relative* worth of the parties is irrelevant to any issue. Accordingly, plaintiff's wealth or lack thereof is inadmissible at trial, as is any argument relating to the relative worth of the parties. Therefore, the Court grants defendant's motion in limine regarding the relative worth of the parties.

### P.  *Other Jury Verdicts*

Defendant seeks an order barring plaintiff from referencing jury verdicts in other cases, citing Federal Rule of Evidence 402. (Doc. 108-1, at 3). Plaintiff does not resist this portion of defendant's general motion in limine. (Doc. 122, at 5).

Therefore, it is granted. The parties are prohibited from discussing jury verdicts in other cases in this or any other jurisdiction.

## III.    PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff filed four additional motions in limine, each addressing a separate topic.[2] The Court will address each in turn.

### A.    Drought

Plaintiff seeks an order barring defendant from referencing "drought . . . or any purported reduction in yields or production associated with the same." (Doc. 94, at 1). Plaintiff argues that the reasoning behind this motion is similar to its motion regarding its multi-peril insurance policy. (Doc. 94-1, at 1). Plaintiff argues that the insurance policy prohibits consideration of drought, defendant's representatives admitted that drought is irrelevant, defendant's representatives admitted that drought was not a factor regarding the soybeans at issue, and defendant did not "evoke"[3] the contractual non-waiver procedure to asset drought as a defense. (Doc. 94). Defendant concedes that "the policy at issue in this case does not cover drought" and only covers "direct damage to plants caused by hail." (Doc. 118, at 2). Defendant insists, however, that the 2012 crop yields are "very much at issue in this case" for two reasons. First, to the extent plaintiff alleges that defendant acted in bad faith in reneging on an agreement to adjust the payment based on yield loss, defendant argues the reason that adjustment did not

---

[2] Defendant similarly filed separate, topic-specific motions in limine. The Court is at a loss to understand why lawyers do this. It is a waste of paper. Plaintiff, for example, consumed at least 13 pages of duplicative captions, motions, signature blocks and certificates of service, while defendant consumed at least another 27 wasted pages. Nothing in the federal rules or local rules suggest that parties should file separate motions in limine and briefs on specific issues. Indeed, the parties filed "general" motions in limine that contained multiple issues divided by separate headings. They could simply have added additional headings to these motions.

[3] The Court assumes plaintiff meant "invoke." "Evoke" generally means "to bring or recall to the conscious mind," while "invoke" generally means "to put into legal effect."

occur was that "it discovered that yields did not provide a valid point of comparison due to the effects of the drought." (Doc. 118, at 3-4). Second, defendant claims that plaintiff is seeking a 100% loss on 14 fields that it never inspected and, therefore, "it is certainly pertinent to prove the yields that were harvested in those fields and that Plaintiff certified that any yield reductions in those fields were cause by drought and not hail." (Doc. 118, at 2, 4-5).

It appears to the Court that, depending on what evidence plaintiff presents and what arguments it makes at trial, it may very well make the issue of drought, and the effect the drought had on the 2012 yield, relevant. The Court is not, however, in a position in advance of trial to rule on the admissibility of this evidence until it hears plaintiff's evidence and is in a better position to assess the probative value of the drought evidence against the danger that evidence may create to confuse or mislead the jury. It is likely the Court will admit some evidence regarding the drought if responsive to plaintiff's evidence or argument, followed by a limiting instruction if requested. But the Court reserves ruling on this evidence until trial.

## B.    *Defense Expert John Brown*

Plaintiff seeks an order barring defendant "from presenting any expert testimony or reports from Defense Expert John Brown. Ph.D., to the extent his opinions attempt to interpret and/or map weather data, or generally fall within the purview of matters properly reserved for testimony by an expert meteorogist." (Doc. 95, at 1). Plaintiff invokes the *Daubert* standard, and asserts that Dr. Brown's testimony fails to meet the standard under Rule 702 of the Federal Rules of Evidence because plaintiff asserts he is not qualified to render meteorological opinions. (Doc. 95-1, at 4-5). Defendant resists this motion, asserting that Dr. Brown's testimony is "the very type of testimony contemplated by FED. R. EVID. 702 to assist the trier of fact and should be allowed." (Doc. 119, at 1). Defendant designated Dr. Brown as an expert to testify "regarding the spatial distribution and impact of weather related events on the 2012 crops of

Plaintiff Bruhn Farms" using, in part, tools such as "infrared photography, satellite imagery, NEXRAD date, USDA information, and NOAA weather reports." (Doc. 119, at 2, 4). Dr. Brown has completed similar "investigative work and image analysis for the United States Department of Justice, the United States Department of Agriculture, the Risk Management Agency, and the United States Office of Inspector General." (Doc. 119, at 4).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court emphasized that a trial court has a gatekeeping function to ensure that, among other things, an expert has sufficient scientific, technical, or other specialized knowledge to help the trier of fact to understand the evidence or to determine a fact in issue. Plaintiff here does not allege Dr. Brown's opinion was based on insufficient facts or data, or suffered from a flawed methodology. The Court finds Dr. Brown's education and experience sufficient to qualify him to offer an opinion regarding a subject beyond the scope of knowledge of a common juror and that his testimony could be helpful to the trier of fact. To the extent plaintiff believes Dr. Brown's lack of a meteorological degree seriously detracts from the validity of his opinion, then it can demonstrate that through vigorous cross-examination or the presentation of contrary evidence. *Daubert*, 509 U.S. at 595–96. Therefore, the Court denies plaintiff's motion in limine in this regard; Dr. Brown's expert testimony will not be excluded pretrial on *Daubert* or Rule 702 grounds.

### C.    *Plaintiff's Separate Multi-Peril Crop Insurance Policy*

Plaintiff seeks an order barring any reference to plaintiff's "multi-peril crop insurance policy, including any claim for or receipt of benefits under such policy, as well as any documentation related to plaintiff's actual crop production/yields in 2012." (Doc. 96). Plaintiff argues such evidence is irrelevant and therefore barred by Rule 402 of the Federal Rules of Evidence or, alternatively, any probative value is "substantially outweighed by the resultant unfair prejudice upon Plaintiff, in addition to

confusing and misleading the jury." (Doc. 96-1, at 2). Plaintiff asserts that "any documentation setting forth Plaintiff's 2012 crop production/yields, including, but not limited to, Defendant's Proposed Exhibits Y, AA, G, CC, GG, OO, QQ, RR, SS, ZZ, AAA, BBB, CCC, DDD, and GG[G], is entirely irrelevant." (Doc. 96-1, at 7).

Defendant resists this motion on the same grounds it resists plaintiff's motion in limine in relation to drought evidence. (Doc. 130). Defendant argues that plaintiff "has placed its yields (both for 2012 and prior years) at issue in this case by claiming that Defendant reached a post-adjustment agreement to review Plaintiff's claim on the basis of its yield loss and then committed bad faith by allegedly reneging on that agreement." (Doc. 130, at 2). Defendant also argues the yield evidence is relevant to the extent plaintiff seeks 100% loss recovery on 14 fields not inspected by defendant for which plaintiff made a claim under its multi-peril crop insurance policy asserting the loss was caused by drought and not hail. (Doc. 130, at 2-3).

As with plaintiff's motion in limine regarding drought evidence, the Court will hold its ruling in abeyance pending the presentation of evidence at trial. As with the drought evidence, it appears that plaintiff may very well place its yields into issue in this case and that yield information is contained in claims plaintiff made under its multi-peril crop insurance policy. On the other hand, the Court finds no basis for defendant to present any evidence regarding the amount of any claim made or collected by plaintiff on its multi-peril crop insurance policy. Accordingly, to that extent the Court grants in part plaintiff's motion in limine.

### D.    *Defendant's Use of Harvest Date for Staging of Plaintiff's Crop*

Plaintiff seeks an order barring "any reference to the date that Plaintiff harvested any of his crops for the 2012 crop year in addition to any argument that [defendant] can use any date of harvest for purposes of staging the crop at issue." (Doc. 98). Plaintiff anticipates that defendant "will attempt to utilize planting and harvest dates as points of reference for purposes of staging maturity of [plaintiff's] soybean crops at the time of

16

the September 2012 date of loss." (Doc. 98-1, at 1). Plaintiff insists that the insurance contract provides that only one of two dates can be used for adjusting any claim: (1) the date of loss; or (2) the date of adjustment. (Doc. 98-1, at 2). Plaintiff argues that the contract requires the "stage" of plaintiff's crop was to be determined based off one of these two dates as applied to a Time Interval Chart in the NCIS manual. (Doc. 98-1, at 2-4). Plaintiff anticipates that defendant will attempt to calculate the proper adjustment based on the harvest date because it would result in a more favorable outcome for defendant. (Doc. 98-1, at 1). Plaintiff alleges that defendant's adjustment based on the harvest date precluded coverage for defoliation of the plants, resulting in a lower loss amount. (Doc. 98-1, at 6-7).

Defendant resists plaintiff's motion, arguing that were the Court to bar such evidence, it would mislead and confuse the jury. (Doc. 129, at 1). Defendant argues that the hail damage occurred shortly before plaintiff harvested the crop, that a soybean crop could not be harvested unless it had already reached a certain level of maturity, and that that level would not include coverage for defoliation at that stage. (Doc. 129, at 2). Defendant argues that its adjusters did not breach the contract by basing their adjustment on the stage of plaintiff's crops in the field, instead of based on the date of adjustment. (Doc. 129, at 2-5). Defendant argues that propriety of the adjustment is a fact issue for the jury to decide. (Doc. 129, at 5).

The Court agrees with defendant. Plaintiff alleges defendant breached the insurance contract in part by basing its adjustment on the stage of plaintiff's crop at the time of harvest instead of, as plaintiff alleges it should have done, on the date of adjustment with application to the Time Interval Chart. Plaintiff's claim of bad faith is similarly tied to how defendant adjusted the loss of its crop. How and why defendant staged the loss of plaintiff's crop, whether it violated the contract, and whether defendant acted in bad faith in the manner in which it staged plaintiff's crop, are all questions for the jury to determine. The Court therefore denies plaintiff's motion in limine on this issue.

## IV.   DEFENDANT'S MOTIONS IN LIMINE

Defendant filed seven motions in limine (in addition to its "general" motion in limine), each addressing a separate topic.  The Court will address each in turn.

### A.   Report and Testimony of Bruce A. Babcock

Defendant seeks an order barring "the expert report of Bruce A. Babcock as well as any testimony from Dr. Babcock as to the matters contained in that report."  (Doc. 100, at 1).  Defendant argues that "the entire substance of Dr. Babcock's proposed testimony concerns the accuracy and/or validity of damage calculations performed by attorneys" for the parties.  (*Id.*).  Defendant argues that "the calculation and communications related thereto are inadmissible under FED. R. EVID. 408."  Plaintiff argues that "Defendant's characterization of Expert Babcock is incorrect and misleading" and that Babcock's report "was not limited in scope to his analysis of settlement calculations."  (Doc. 124, at 1).  Plaintiff argues that Babcock's opinions "are offered not as commentary of settlement negotiations, but rather, the opinions are commentary on the methodology of calculating the loss if yield is taken into consideration by the parties."  (Doc. 124, at 2).

Although neither party has raised the issue, the Court begins its analysis with the finding that an expert's report is hearsay and is not admissible in evidence, unless a party can establish an exception to the hearsay rule.  *See United States v. Lasley*, No. 14–CR– 45–LRR, 2014 WL 6775539, at *6 (N.D. Iowa Dec. 2, 2014) (finding an expert's written report is hearsay and not admissible under the residual exception).  *See also Devorak v. United States*, Civ. No. 01–1415 (RHK/AJB), 2002 WL 34715899, at *2 (D. Minn. Oct. 30, 2002) (barring admission of written expert report as hearsay); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 342 (D. Kan. 1999) (stating that an expert's written report generally inadmissible); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 702 permits the admission of expert opinion testimony not opinions contained in documents prepared out of court.").  Accordingly, the Court will

not admit the written report of any expert unless a party can lay a proper foundation for an exception to the hearsay rule.

Regarding the substance of Mr. Babcock's opinion, the Court has reviewed his report (Doc. 100-2, at 4-5). It consists of his analysis of two attorneys' loss calculations, criticizing the method used by one attorney and finding the method used by the other attorney proper. The Court cannot at this stage discern how Mr. Babcock's analysis of the loss calculations proposed as part of settlement negotiations has any relevance to any issue in dispute at trial. Further, the Court is concerned that any attempt by Mr. Babcock to testify is rife with the potential to violate Rule 408 because the context for his opinion is premised on calculations made by an attorney in settlement negotiations. It is not based, in contrast, for example, on calculations made by defendant as part of the adjustment process in this case.

Plaintiff asserts that "[i]t has already been determined that the Primrose Path evidence is admissible in this matter," citing the Eighth Circuit Court of Appeal's decision in this case, and that Mr. "Babcock's opinions go directly to the Primrose Path issue in analyzing the aspect of the claim from the yield analysis standpoint, and the approach of the parties at the time they agreed upon a yield analysis approach." (Doc. 124, at 2). Nothing in the Eighth Circuit Court of Appeal's decision in this case addressed the admissibility of evidence in general, or the admissibility of this evidence in particular. Rather, the Court's opinion merely found that there was a genuine issue of fact that precluded entry of summary judgment in favor of defendant. Moreover, Mr. Babcock's opinion does not relate to how defendant adjusted the claim; it relates to how an attorney calculated loss in connection with settlement negotiations. Therefore, it has nothing to do with the so-called Primrose Path issue.

Plaintiff argues that if the Court bars Mr. Babcock's opinion, it would "lead to an unfortunate, and frankly unreasonable rule that expert opinions that are used by Counsel in negotiating a claim make those opinions inadmissible at trial." (Doc. 124, at 2). It does not lead to such a conclusion. Plaintiff was free to designate Mr. Babcock as an

expert and have him opine as to whether defendant properly adjusted the claim in this case, or to testify more generally as to the calculation of loss based on a yield analysis. What plaintiff is not free to do is introduce at trial evidence that a settlement offer was unreasonable because the attorney's loss calculation was flawed. Rule 408 bars such evidence.

Accordingly, the Court grants defendant's motion in limine and bars Bruce A. Babcock from testifying at trial.

### B.    *Evidence of Wealth of Defendant*

Defendant seeks to bar evidence of its wealth "unless and until the Court determines Plaintiff has made a prima facie showing of liability for punitive damages." (Doc. 101). Defendant concedes that "[e]vidence of a defendant's net worth is a relevant factor in setting an amount of punitive damages" but argues that it is "wholly irrelevant when determining an award of compensatory damages." (Doc. 101-1, at 2). Plaintiff resists defendant's motion, arguing that "the Eighth Circuit has already held that a prima facie case for bad faith, and in turn punitive damages, exists." (Doc. 123, at 1). Invoking the Law of the Case Doctrine, plaintiff argues that the Court is bound by that finding and must admit the evidence. (Doc. 123, at 1-2).

Plaintiff reads way too much into the Eighth Circuit Court of Appeal's decision. The Eighth Circuit reversed this Court's grant of summary judgment. Under that standard, a court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Electric Indust. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986) (internal citation omitted). Pursuant to this favorable standard, the Eighth Circuit in this case merely found that there was a genuine issue of material fact whether defendant acted in bad faith. *Bruhn*, 823 F.3d at 1167. It is still for this Court to determine, based on the evidence actually admitted at trial, whether plaintiff has established a prima facie showing that defendant engaged in "willful and wanton"

conduct, exhibiting complete disregard for the plaintiffs' rights.

Accordingly, until and unless the Court finds plaintiff has made that prima facie showing, evidence of defendant's financial condition is irrelevant (FED. R. EVID. 402) and any probative value would be outweighed by the danger of unfair prejudice (FED. R. EVID. 403). *See Pfab v. United Wisconsin Ins. Co.*, No. C10–1024, 2012 WL 860321, at *5 (N.D. Iowa Mar. 13, 2012) ("The Court agrees that evidence regarding United Heardand's financial condition may only be introduced after Pfab makes a prima facie showing for recovery of punitive damages."); *Penford Corp. v. National Union Fire Ins. Co.*, No. 09–CV–13–LRR, 2010 WL 2509985, at *5 (N.D. Iowa Jun. 17, 2010) ("The court will not admit evidence of Defendants' financial condition unless and until the jury reaches a verdict that would support an award of punitive damages. In the event of such a verdict, the Court will permit the parties to present further evidence and argument on the issue of punitive damages.").

Therefore, defendant's motion in limine is conditionally granted; plaintiff must seek leave of the court before it presents evidence or makes comment or argument regarding defendant's financial condition.

### C.     *Evidence of Plaintiff's Alleged Emotional Distress*

Defendant seeks an order barring admission of evidence or argument relating to claims of emotional distress on the ground that a partnership cannot suffer emotional distress. (Doc. 103). Plaintiff concedes that this Court's order granting defendant's motion to strike (Doc. 112) bars plaintiff from asserting a claim for emotional distress and thereby renders this motion moot. (Doc. 121). Accordingly, the Court denies defendant's motion as moot.

### D.     *Evidence of Plaintiff's Claim for Common Law Attorneys' Fees*

Defendant seeks an order barring admission of evidence or argument relating to claims for attorneys' fees and expenses on the ground that "[t]he decision to award

common law attorneys' fees lies within the equitable powers of the court" and therefore should not be presented to the jury. (Doc. 104, 104-1, at 1-2). Plaintiff concedes that this Court's order granting defendant's motion to strike (Doc. 112) bars plaintiff from asserting a claim for emotional distress and thereby renders this motion moot. (Doc. 120). Accordingly, the Court denies defendant's motion as moot.

### E.    *Evidence of Defendant's Parent Companies*

Defendant seeks an order barring evidence "relating to the parent companies" of Fireman's Fund Insurance Company" (FFIC) on the grounds that it is not relevant and highly prejudicial. (Doc. 105). Plaintiff sued FFIC claiming a breach of contract and bad faith in processing its crop insurance claim. The claim was adjusted and paid by Rural Community Insurance Agency, Inc. (d/b/a Rural Community Insurance Services (RCIS)) on behalf of FFIC pursuant to a managing general agency agreement. Allianz of America, Inc. (Allianz) is the parent company of FFIC. Wells Fargo Insurance, Inc. (Wells Fargo) was the parent company of RCIS at the time of the adjustment of plaintiff's claim; currently Zurich American Insurance Company (Zurich) is RCIS's parent corporation. Defendant resists this motion, arguing that these parent companies are not parties to the law suit and were not in any conduct giving rise to the suit. (Doc. 105-1, at 1-2). Further, defendant argues that these are well-known companies, the "mere mention" of which "has the strong potential to unfairly prejudice, confuse, and mislead the jury into thinking that they are evaluating the conduct of these companies" and "may also conclude mistakenly that the assets of the parent companies are relevant to this case when they are not." (Doc. 105-1, at 2-3).

Plaintiff resists this motion, arguing that "Wells Fargo will come up at trial concerning issues such as: (1) Wells Fargo's control over upper management's performance-based bonuses; (2) Wells Fargo's training requirement of adjusters; and (3) Wells Fargo's document retention policy." (Doc. 125, at 1-2). Plaintiff further argues that "the issues of Wells Fargo's wealth and the subsequent parent companies is a

consideration for punitive damages." (Doc. 125, at 2).

The Court rejects plaintiff's argument that Wells Fargo's alleged control over upper management's performance-based bonuses makes evidence of defendant's parent companies admissible. First, plaintiff has provided the Court with no evidence to suggest that any decision made by an adjuster or any other employee or agent of defendant was motivated in any way by bonuses. Rather, plaintiff's single citation to a portion of a deposition shows that bonuses were based on overall company profitability and not on the adjustment of individual claims. Second, the cases plaintiff cites in support of its argument are easily distinguishable. Both *Grange Mut. Ins. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004), and *Meier v. Travelers Home & Marine Ins. Co.*, 2016 WL 4447050 (W.D. Wash. Aug. 4, 2015), involved questions about whether parties could conduct discovery of bonuses, not the admissibility of the identify of parent companies at trial.

On the other hand, it appears that some of the adjusters' practices and document retention requirements were governed by Wells Fargo Insurance, Inc.'s policies, as may be reflected in documents that may be admissible. That these were policies imposed by Wells Fargo, versus FFIC or RCIS, appears to have no relevance to any issue in dispute. The Court is not persuaded, at least on the showing thus far made, that the "trial in this matter will involve significant issues as to Wells Fargo's involvement and role with respect to the conduct that occurred in this case in both the breach of the contract and bad faith conduct" as plaintiff so strongly alleges. (Doc. 125, at 4). Nor is the Court persuaded, however, that the mere mention of Wells Fargo would cause defendant unfair prejudice.

Finally, the Court rejects on the record before it that the parent companies are relevant to the issue of punitive damages. Plaintiff's reliance on *Niver v. Travelers Indem. Co.*, 430 F. Supp.2d 852 (N.D. Iowa 2006), is misplaced. In *Niver*, the Court found the plaintiff produced evidence establishing a prima facie basis for piercing the corporate veil of the parent corporation with evidence showing, among other things, financial and managerial interrelationships between the defendant corporation and its

parent corporation. 430 F. Supp.2d at 870-71. Plaintiff has made no such showing here. Rather, this case is much more like this Court's decision in *Williams v. Security National Bank of Sioux City, Iowa*, 358 F.Supp.2d 782, 787 (N.D. Iowa 2005). There, this Court found the plaintiff was required to prove "exceptional circumstances" warranting piercing the corporate veil, but had failed to satisfy the requirements for piercing the corporate veil. Therefore, the Court excluded evidence of the defendant subsidiary's corporate relationship to its parent corporation and evidence of the financial condition of the parent corporation that the plaintiff might have intended to use as a basis for awarding punitive damages against the subsidiary. *Id.*

In sum, the Court finds that there has been no basis for plaintiff to reference or introduce evidence of FFIC's parent corporation Allianz, or RCIS's current parent corporation Zurich. Plaintiff may introduce evidence of Wells Fargo only to the extent it is related to training, document retention policies, or the like governing the adjusters at the time of their conduct in question. If defendant believes a limiting instruction is appropriate, it may request the Court give one. Plaintiff may not introduce evidence of Wells Fargo's wealth, or make any argument that the jury should in any way consider the relationship between defendant and Wells Fargo in determining any damage award in this case. Accordingly, defendant's motion in limine is granted in part, and denied in part.

### F.     *Allocation of Punitive Damages Award to Civil Reparations Fund*

Defendant seeks an order barring evidence "relating to the allocation of a punitive damages award to the civil reparations fund." (Doc. 106). Plaintiff does not resist this motion (Doc. 126), and therefore it is granted.

### G.     *Testimony of David Tritsch*

Defendant seeks an order to exclude "certain of the anticipated testimony of [plaintiff's expert] David Tritsch." (Doc. 107). Defendant believes Mr. Tritsch may

improperly attempt "to offer opinions about the ultimate issue in this case, define legal duties, deliver legal interpretations, deliver opinions on matters outside the scope of his expertise, make interpretations of evidence and testimony, and improperly and negatively characterize documents and individuals herein." (Doc. 107, at 1-2). Defendant argues that Mr. Tritsch's opinion contains improper conclusions as to intent and bad faith, ultimate issues for the jury, legal interpretations, allegations of conflicts of interest and intentional destruction of evidence, interpretations as to defendant's employees' motives and attitudes, and improper characterizations and commentary. (Doc. 107, at 2-8). Plaintiff resists defendant's motion, asserting that Mr. Tritsch has 41 years of experience in the industry and it qualifies him to offer these opinions. Plaintiff argues that Mr. Tritsch's opinions do not constitute legal conclusions, may embrace the ultimate issue before the jury pursuant to Rule 704 of the Federal Rules of Evidence, and otherwise are not outside the scope of proper opinion testimony. (Doc. 127).

As the Court previously noted with regard to Mr. Babcock, written expert reports are hearsay and will not be admitted absent a showing of an exception to the hearsay rule. Therefore, at the outset, the jury will not likely see Mr. Tritsch's reports. The Court has reviewed the reports and find them to contain a fair amount of speculation as to defendant's employees' knowledge, motives, and intention, pejorative and inflammatory language and references,[4] and some legal conclusions. His reports certainly do not reflect a neutral expert's, dispassionate professional opinion. Be that as it may, Mr. Tritsch has expertise in the area superior to that of the jurors and his opinions regarding whether defendant acted properly in adjusting and processing plaintiff's crop insurance claim may be of assistance to the jury. The Court cannot find that Rule 702 should bar Mr. Tritsch's testimony. Rather, the proper way for handling this expert's testimony is the same for handling Mr. Brown's testimony. To the extent defendant believes Mr. Tristch's

---

[4] Plaintiff indicated it would not elicit these types of comments from Mr. Tritsch during his testimony. (Doc. 127, at 16-17 & n.2).

testimony is improper, it may object. To the extent defendant believes Mr. Tritsch's testimony lacks a sufficient basis in fact or is outside his area of expertise, then it can demonstrate that through vigorous cross-examination or the presentation of contrary evidence. *Daubert*, 509 U.S. at 595–96.

Accordingly, the Court denies defendant's motion in limine to exclude certain anticipated testimony of David Tritsch.

## V.  *CONCLUSION*

For the reasons and as explained in detail set forth above, the Court grants in part, denies in part, and holds in abeyance its ruling in part, regarding plaintiff's motions in limine (Docs. 93, 94, 95, 96, 97, and 98) and defendant's motions in limine (Docs. 100, 101, 103, 104, 105, 106, 107, and 108).

**IT IS SO ORDERED** this 27th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa