IN THE UNITED STATE DISTRICT COURT
FOR THE NOTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BRUHN FARMS JOINT VENTURE,<br>    Plaintiff,<br><br>-vs-<br><br>FIREMAN'S FUND INSURANCE<br>COMPANY,<br>  Defendant. | No. ____13-cv-4106____<br><br><br>**FINAL PRETRIAL ORDER** |

      This final pretrial order was entered after a final pretrial conference held on February 6,

2017. The court expects the parties to fully comply with this order.

      The following counsel, who will try the case, appeared at the conference:

1.     For plaintiff(s):
       Donald G. Beattie
       Beattie Law Firm, P.C.
       4300 Grand Ave.
       Des Moines IA 50312
       Phone: (515) 263-1000
       Fax: (515) 263-1411
       Email: don.beattie@beattielawfirm.com

       Nile Hicks
       Beattie Law Firm, P.C.
       4300 Grand Ave.
       Des Moines, IA 50312
       Phone: (515)263-1000
       Fax: (515)263-1411
       Email: nile.hicks@beattielawfirm.com

       Nicholas L. Shaull
       Nicholas L. Shaull, P.C.
       2423 Ingersoll Ave.
       Des Moines IA 50312
       Phone:  (515) 277-6559
       Fax:    (515) 277-7536
       Email: nick.shaull@sbsattorneys.com

2. For defendant(s):
W. Kurt Henke (via Phone)
Henke-Bufkin, P.A.
P.O. Box 39
Clarksdale, MS 38614
Phone: (662) 624-8500
Fax: (662) 624-8040
Email: wkh@henke-bufkin.com

Jeffrey S. Dilley
Henke-Bufkin, P.A.
P.O. Box 39
Clarksdale, MS 38614
Phone: (662) 624-8500
Fax: (662) 624-8040
Email: jsd@henke-bufkin.com

Michael W. Ellwanger
Rawlings, Ellwanger,
Mohrhauser & Nelson, L.L.P.
522 Fourth St., Suite 300
Sioux City, IA 51101
Phone: (712) 277-2373
Fax: (712) 277-3304
Email: mellwanger@rawlings-law.com

I. **STIPULATION OF FACTS:** The parties agree that the following facts are true and undisputed:

A. RCIS, acting in its capacity as managing general agent for Fireman's Fund Insurance Company ("FFIC"), issued a policy of crop-hail insurance to Bruhn Farms Joint Venture ("Bruhn") for crop year 2012, designated as policy number IA-090-120853.

B. Plaintiff paid a premium of $245,967 for said hail coverage.

C. Terry Nielsen was appointed as an agent by RCIS effective for the 2012 crop year.

D. Subject to its terms and conditions, the Policy afforded coverage during the 2012 crop year to those crops identified by line, county, and legal description in the Policy Declaration Page.

E. The insured crops include 300 acres of rye, 3,464.7 acres of corn, and 7,934 acres of soybeans. The soybeans are listed in lines 24-55 of the declarations page.

2

F. For crop year 2012, National Crop Insurance Services ("NCIS") published crop-hail loss adjustment procedures for corn and soybeans.

G. Following report of the loss, RCIS consented to Plaintiff harvesting the damaged fields but leaving test strips in these fields.

H. On November 5, 2012, Galen Somson faxed to Al Bruhn a copy of the adjustment findings.

I. Plaintiff did not agree with the findings.

J. Larry Grieme completed a "high dollar" review of the claim on November 27, 2012.

K. Defendant issued payment to Plaintiff for the loss amount less premium balance. The payment was delivered to Plaintiff via FedEx on December 4, 2012.

L. After receiving payment for the loss, Al Bruhn placed a call to Terry Nielsen. Nielsen then contacted both Rod Nelson (manager of our RCIS's Regional Service Office) and Chuck Eldredge (RCIS's National Claims Manager) to request that RCIS reconsider its payment determination.

M. On December 15, 2012, Chuck Eldredge requested that Larry Burkhart (RCIS's Crop Hail/Named Peril Field Claims Manager) meet with Al Bruhn.

N. A meeting occurred on December 18, 2012, between Al Bruhn and Larry Burkhart.

O. On January 25, 2013, Larry Burkhart sent Plaintiff a letter advising that RCIS had completed its review of Plaintiff's claim and determined that the claim was properly adjusted and paid.

II. **EXHIBIT LIST**: The parties' exhibit lists and objections are attached to this Order.

III. **WITNESS LIST**: The parties intend to call the following witnesses at trial and the notes objections by the parties at this time:

A. Plaintiff(s) witnesses:

| Witness Name | Substance of Testimony | Objections/Nature & Grounds of Objection |
|---|---|---|
| 1) Alan Bruhn | Alan Bruhn is expected to testify live at trial. Mr. Bruhn is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge. | |

3

| 2) Jessica Bruhn | Jessica Bruhn is expected to testify live at trial. Ms. Bruhn is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent she has personal knowledge. | Defendant objects to this witness testifying, as she was never disclosed as having knowledge of discoverable facts. |
|---|---|---|
| 3) Calvin Bruhn | Calvin Bruhn is expected to testify live at trial. Mr. Bruhn is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge. | |
| 4) Leo Erlemeier | Leo Erlemeier is expected to testify live at trial. Mr. Erlemeier is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge. This would include, but is not limited to, his testimony concerning similar cross loss claims asserted by him in 2012 as discussed generally in his deposition. | |
| 5) Ryan Gotto | Ryan Gotto is expected to testify live at trial. Mr. Gotto is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge. This would include the contents of his deposition and affidavit previously submitted. This would include, but is not limited to, Bruhn's farming procedures and practices. This would include, but is not limited to, his knowledge of the hail losses, test strips, condition of the soybean plants, and Defendant's adjustment procedures as witnessed by Mr. Gotto | |
| 6) Darren Jacobson | Darren Jacobson is expected to testify live at trial. Mr. Jacobson is expected to testify as to all disputed issues in this matter, including the liability and | |

| | | |
|---|---|---|
| | damage claims asserted in this matter to the extent he has personal knowledge. This would include the contents of his deposition and affidavit previously submitted. This would include, but is not limited to, Bruhn's farming procedures and practices. This would include, but is not limited to, his knowledge of the hail losses, test strips, condition of the soybean plants, and Defendant's adjustment procedures as witnessed by Mr. Jacobson. | |
| 7) Kirk Lacey | Mr. Lacey is expected to testify live at trial. Mr. Lacey is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge. This would include the contents of his deposition and affidavit previously submitted. This would include, but is not limited to, Bruhn's farming procedures and practices. This would include, but is not limited to, his knowledge of the hail losses, test strips, condition of the soybean plants, and Defendant's adjustment procedures as witnessed by Mr. Lacey. | |
| 8) Terry Nielsen | Mr. Nielsen is expected to testify concerning issues pertaining to liability and damages. This includes his testimony concerning the insurance policy at issue and insurance policies purchased by Plaintiff. This includes information contained within his deposition generally. This includes matters surrounding the ProAg documents and claims (conditionally). This includes routine practice and procedure in the handling of the hail claims. This includes any additional information he knows concerning these claims and for which he has personal knowledge, including the | |

| | | |
|---|---|---|
| | adjustment performed by Defendant. | |
| 9)  Jeremy Blake | Mr. Blake is expected to testify live at trial.  Mr. Blake is expected to testify as to all disputed issues in this matter, including the liability and damage claims asserted in this matter to the extent he has personal knowledge.  This would include the contents of his deposition and affidavit previously submitted.  This would include, but is not limited to, Bruhn's farming procedures and practices.  This would include, but is not limited to, his knowledge of the hail losses, test strips, condition of the soybean plants, and Defendant's adjustment procedures as witnessed by Mr. Blake. | |
| 10) Larry Grieme | Mr. Grieme is expected to testify live at trial.  Mr. Grieme is Defendant's representative and agent.  Plaintiff does not guarantee his appearance at trial, but does intend to subpoena Mr. Grieme for trial.  It is expected that Mr. Grieme will testify concerning issues related to the liability and damage claims asserted herein.  To the extent Mr. Grieme does not testify live, Plaintiff reserves the right to designate deposition testimony. | |
| 11) Galen Sornson | Mr. Sornson is expected to testify live at trial.  Mr. Sornson is Defendant's representative and agent.  Plaintiff does not guarantee his appearance at trial, but does intend to subpoena Mr. Sornson for trial.  It is expected that Mr. Sornson will testify concerning issues related to the liability and damage claims asserted herein.  To the extent Mr. Sornson does not testify live, Plaintiff reserves the right to designate deposition testimony. | |
| 12) Ed Cerven | Mr. Cerven is expected to testify live at trial.  Mr. Cerven is Defendant's representative and agent.  Plaintiff does not guarantee his appearance at trial, but does intend to subpoena Mr. | |

| | | |
|---|---|---|
| | Cerven for trial. It is expected that Mr. Cerven will testify concerning issues related to the liability and damage claims asserted herein. To the extent Mr. Cerven does not testify live, Plaintiff reserves the right to designate deposition testimony. | |
| 13) Charles Eldredge (by deposition or live) | Mr. Eldredge is expected to testify by deposition unless made available for live trial testimony by Defendant. Mr. Eldredge is Defendant's representative and agent. It is expected that Mr. Eldredge will testify concerning issues related to the liability and damage claims asserted herein. To the extent Mr. Eldredge does not testify live, Plaintiff intends to designate deposition testimony. | |
| 14) Larry Burkhart (by depositions or live) | Mr. Burkhart is expected to testify by deposition(s) unless made available for live trial testimony by Defendant. Mr. Burkhart is Defendant's representative and agent. It is expected that Mr. Burkhart will testify concerning issues related to the liability and damage claims asserted herein. To the extent Mr. Burkhart does not testify live, Plaintiff intends to designate deposition testimony. | |
| 15) Rod Nelson (by deposition or live) | Mr. Nelson is expected to testify by deposition(s) unless made available for live trial testimony by Defendant. Mr. Nelson is Defendant's representative and agent. It is expected that Mr. Nelson will testify concerning issues related to the liability and damage claims asserted herein. To the extent Mr. Nelson does not testify live, Plaintiff intends to designate deposition testimony. | |
| 16) Bruce Babcock | Mr. Babcock may testify at trial in this matter. Mr. Babcock is one of Plaintiff's expert witnesses. Mr. Babcock my testify live at trial. His testimony would consist of his | Defendant objects to this witness testifying, as the entire substance of his report pertains to communications that are |

| | | |
|---|---|---|
| | qualifications, review of the file, and opinions expressed generally in his report previously provided to Defendant. | protected under Fed.R. Evid. 408. |
| 17) Chris Anderson | Mr. Anderson is expected to testify at trial in this matter. Mr. Anderson is one of Plaintiff's expert witnesses. His testimony would consist of his qualifications, review of the file, and opinions expressed generally in his report previously provided to Defendant. | |
| 18) Ben Parrott | Mr. Parrott is expected to testify at trial in this matter. Mr. Parrott is one of Plaintiff's expert witnesses. His testimony would consist of his qualifications, review of the file, and opinions expressed generally in his report previously provided to Defendant. | |
| 19) David Tritsch | Mr. Tritsch is expected to testify at trial in this matter. Mr. Tritsch is one of Plaintiff's expert witnesses. His testimony would consist of his qualifications, review of the file, and opinions expressed generally in his reports previously provided to Defendant. | Defendant objects to this expert's testimony to the extent raised in its Motion in Limine. |
| 20) Hans Hoffmeier | Mr. Hoffmeier may be called as a witness at trial. Mr. Hoffmeier is expected to testify as to issues related to liability and damages. This includes testimony concerning hail losses on his soybeans in 2012. | |
| 21) Joel DeJong | Mr. DeJong may be called as a witness at trial. Mr. DeJong is expected to testify as to issues related to liability and damages. This includes testimony concerning soybean production in Iowa in 2012 and the information he and others provided to Defendant during this claim as evidenced in the file documents produced in this litigation. See documents produced and Plaintiff's 26(a)(2)(C) designation. | |

| | | |
|---|---|---|
| 22) Cheri Hardison | Ms. Hardison may be called as a witness at trial. Ms. Hardison is expected to testify as to issues related to liability and damages. This includes testimony concerning soybean production in Iowa in 2012 and information she and others provided to Defendant during this claim as evidence in the file documents produced in this litigation. See documents produced and Plaintiff's 26(a)(2)(C) designation. | |
| 23) Jerry Thies | Mr. Thies may be called as a witness at trial. Mr. Thies is expected to testify as to damage. This includes testimony concerning "volunteer soybeans" in Bruhn fields for the copy year 2013. This also includes testimony concerning the fact that Bruhn Farms were good farmers. | Defendant reserves any objections to opinion or character testimony by this witness. |
| 24) Bill Ortner | Mr. Ortner may be called as a witness at trial. Mr. Ortner is expected to testify as to damage. This includes testimony concerning "volunteer soybeans" in Bruhn fields for the copy year 2013. This also includes testimony concerning the fact that Bruhn Farms were good farmers. | Defendant reserves any objections to opinion or character testimony by this witness. |
| 25) Jeff Cameron – Provisional & cannot Guarantee his Presence) | Mr. Cameron may be called as a witness at trial and is designated as a provisional witness. If called, he is expected to testify concerning his dealings with Plaintiff and ProAg and any other issues relating to liability, damages, and Defendant's defenses in this matter. | |

26) Plaintiff further reserves the right to call any witness necessary to lay foundation for any document or item of evidence objected to by Defendant before or at trial.

27) Plaintiff further reserves the right to call any witness for purposes of rebuttal testimony.

28) Plaintiff further reserves the right to call any witness identified during discovery not objected to by Plaintiff.

29) Plaintiff further reserves the right to read into testimony all or portions of the deposition testimony of Defendant's experts not objected to by Plaintiff.

B.     Defendant(s) witnesses:

| Witness Name | Substance of Testimony | Objections/Nature & Grounds of Objection |
|---|---|---|
| 1) Larry Burkhart | Mr. Burkhart is expected to testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the hail claim at issue and other hail claims of the Plaintiff in 2012. Mr. Burkhart may testify as his experience with the growth of soybeans, soybean crop hail losses, hail claims in 2012, as well as multiple peril claims, including multiple peril losses in 2012. Mr. Burkhart's testimony may include the claim adjustment, communications regarding the claim adjustment, and interaction with Plaintiff regarding the claim at issue. Mr. Burkhart's testimony may include, but is not limited to, the matters addressed in his deposition. | |
| 2) Galen Sornson | Mr. Sornson is expected to testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to claim adjustment and communications regarding the claim. He may testify as his experience with the growth of soybeans and soybean crop hail losses. His testimony may include, but is not limited to, matters addressed in his deposition. | |
| 3) Clifton Parker | Mr. Parker is an expert retained by Defendant. He is expected to testify at trial as to his qualifications and the matters contained in his report submitted in this case as well as the matters addressed in his deposition. | Plaintiff objects to this expert to the extent raised in Motions in Limine. |
| 4) Steven Griffin | Mr. Griffin is an expert retained by Defendant. He is expected to testify at trial as to his qualifications and the matters contained in his report submitted in this case. | Plaintiff objects to this expert to the extent raised in Motions in Limine. |

| | | |
|---|---|---|
| 5) Gregory Meek | Mr. Meek is an expert retained by Defendant. He is expected to testify at trial as to his qualifications and the matters contained in his reports submitted in this case as well as the matters addressed in his deposition. | Plaintiff objects to this expert's testimony to the extent raised in Motions in Limine. |
| 6) John Mewes | Mr. Mewes is an expert retained by Defendant. He is expected to testify at trial as to his qualifications and the matters contained in his report submitted in this case as well as the matters addressed in his deposition. | |
| 7) John Brown | Mr. Brown is an expert retained by Defendant. He is expected to testify at trial as to his qualifications and the matters contained in his reports submitted in this case. | Plaintiff objects to this expert to the extent raised in Motions in Limine. |
| 8) Larry Grieme | Mr. Grieme **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to claim adjustment and communications regarding the claim. Mr. Grieme may testify as to his experience with the growth of soybeans and soybean crop hail losses. His testimony may include, but is not limited to, the matters addressed in his deposition. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 9) Edward Cerven | Mr. Cerven **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the hail claim at issue and other hail claims of the Plaintiff in 2012. Mr. Cerven may testify as to his experience with the growth of soybeans, soybean crop hail losses, as well as multiple peril claims, including multiple peril losses in 2012. His testimony may include claim adjustment and communications regarding the claim adjustment. His testimony may include, | |

| | | |
|---|---|---|
| | but is not limited to, the matters addressed in his deposition. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 10) Mike Gamber | Mr. Gamber **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of crop hail claims in 2012 for Plaintiff. His testimony may include matters relating to the adjustment of hail claims for Plaintiff in 2012 and communications regarding the claims. Mr. Gamber may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 11) Jim Baldwin | Mr. Baldwin **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of crop hail claims in 2012 for Plaintiff. Mr. Baldwin's testimony may include matters relating to the adjustment of hail claims for Plaintiff in 2012 and communications regarding the claim. He may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 12) Craig Polson | Mr. Polson **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of crop hail claims in 2012 for Plaintiff. His testimony may include | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary |

| | | |
|---|---|---|
| | matters relating to the adjustment of hail claims for Plaintiff in 2012 and communications regarding such claims. Mr. Polson may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 13) Clay Manes | Mr. Manes **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of crop hail claims in 2012 for Plaintiff. His testimony may include matters relating to the adjustment of hail claims for Plaintiff in 2012 and communications regarding the claim. Mr. Manes may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 14) Craig Woodford | Mr. Woodford **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to the claim adjustment and communications regarding the claim. He may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested |

| | | by Plaintiff's Counsel and Judge Scoles. |
|---|---|---|
| 15) Curt Thompson | Mr. Thompson **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to claim adjustment and communications regarding the claim. He may testify as his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 16) Don Carlson | Mr. Carlson **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to claim adjustment and communications regarding the claim. He may testify as to his experience with the growth of soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 17) Curtis Winquist | Mr. Winquist **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the crop hail insurance claim at issue, including matters relating to claim adjustment and communications regarding the claim. He may testify as to his experience with the growth of | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up |

| | | |
|---|---|---|
| | soybeans and soybean crop hail losses. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 18) Steven Kevorkian | Mr. Kevorkian **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the hail claim at issue and other hail claims of the Plaintiff in 2012. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
| 19) Rodney Nelson | Mr. Nelson **may** testify live at the trial as to his communications regarding the claim adjustment for the crop hail claim at issue, and his interactions with Plaintiff's representatives regarding the claim at issue. He may also testify regarding the background of crop hail policies and multiple peril crop insurance policies. Mr. Nelson's testimony may include, but is not limited to, the matters addressed in his deposition. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 20) Tim Buckingham | Mr. Buckingham **may** testify live at the trial as to the nature and scope of crop hail policies, the adjustment of crop hail claims, as well as the adjustment and assessment of the hail claim at issue and other hail claims of the Plaintiff in 2012 | Plaintiff objects to this witness testifying, as he was never disclosed as having knowledge of discoverable facts through the summary |

| | | statement of facts as requested by Judge Scoles and followed up on by Plaintiff's Counsel. Furthermore, Plaintiff was not permitted to depose this witness to learn the facts or substance of his testimony as requested by Plaintiff's Counsel and Judge Scoles. |
|---|---|---|
| 21) Chuck Eldredge | Mr. Eldredge **may** testify live at the trial as to his communications and regarding the claim adjustment for the crop hail claim at issue, and his interactions with Plaintiff's representatives and RCIS personnel regarding the claim at issue. He may also testify regarding the background of crop hail policies and multiple peril crop insurance policies. Mr. Eldredge's testimony may include, but is not limited to, the matters addressed in his deposition. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 22) Representative of FFIC | A representative of FFIC **may** testify live at trial in the event the Court should allow the issue of punitive damages to proceed to the jury. Such representative will testify regarding the financial documents of FFIC previously produced to Plaintiff. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 23) Jeff Cameron | Mr. Cameron **may** testify live at the trial as the adjustment of the Plaintiff's multiple peril crop insurance claim in 2012. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | |
| 24) Wayne Roush | Mr. Roush **may** testify live at the trial with respect to matters relating to the 2012 Western Research Farm Summary. As this individual is designated as a "may call" witness, Defendant does not guarantee his presence at trial. | Plaintiff objects to this witness as the entire substance of his testimony is irrelevant and prejudicial and is a nondisclosed witness. |

| | | |
|---|---|---|
| 25) Jacqueline Larsen | Ms. Larsen **may** testify live at the trial with respect to the claims and damages claimed by Plaintiff in this case. As this individual is designated as a "may call" witness, Defendant does not guarantee her presence at trial. | Plaintiff objects to this witness as a nondisclosed witness. |
| 26) Custodian of Records, Crawford County FSA | The custodian of records for the Crawford County FSA office **may** testify at trial, if needed, as to the authenticity of Plaintiff's FSA records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 27) Custodian of Records, Monona County FSA | The custodian of records for the Monona County FSA office **may** testify at trial, if needed, as to the authenticity of Plaintiff's FSA records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 28) Custodian of Records, Woodbury County FSA | The custodian of records for the Woodbury County FSA office **may** testify at trial, if needed, as to the authenticity of Plaintiff's FSA records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 29) Custodian of Records, Berne Coop Assn. | The custodian of records for Berne Coop Association **may** testify at trial, if needed, as to the authenticity of Plaintiff's records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 30) Custodian of Records, Mapleton Grain Co. | The custodian of records for Mapleton Grain Company **may** testify at trial, if needed, as to the authenticity of Plaintiff's records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 31) Custodian of Records, ProAg Ins. Co. | The custodian of records for ProAg may testify at trial, if needed, as to the authenticity of Plaintiff's records. Defendant will subpoena the custodian to appear if his/her appearance is necessitated. | |
| 32) Custodian of Records, Pioneer Hi-Bred Intl., Inc. | The custodian of records for Pioneer Hi-Bred International, Inc., may testify at trial, if needed, as to the authenticity of Plaintiff's records. Defendant will | |

| | subpoena the custodian to appear if his/her appearance is necessitated. | |
|---|---|---|

33) Defendant also reserves the right to call any witness designated by the Plaintiff or otherwise disclosed during discovery.

34) Defendant also specifically reserves the right to call any witnesses necessary to address claims presented by Plaintiff at trial that were previously withdrawn if the Court should allow the presentation of the same.

All parties are free to call any witness listed by an opposing party. A party listing a witness guarantees his or her presence at trial unless it is indicated otherwise on the witness list. *Any objection to the offer of testimony from a witness on the witness list is waived if it is not stated on this list.*

## IV. EVIDENTIARY AND OTHER LEGAL ISSUES:

A. Plaintiff(s) Issues:

1. Did Defendant breach the insurance contract?
    a. Elements of a breach of insurance contract cause of action:
        i. Plaintiff was insured for the loss by Defendant on the date of the loss.
        ii. Plaintiff paid the premiums that were due.
        iii. Plaintiff suffered a loss which was covered by the insurance policy with Defendant.
        iv. Defendant did not pay the Plaintiff's claim pursuant to the insurance policy.
        v. The amount of damages.
    b. Plaintiff states that it is believed the issues for trial as disputed by Defendant are (iv) and (v).

2. Did Defendant commit bad faith in the handling of the insurance claim?
    a. Elements of a bad faith cause of action:

        i. Defendant delayed, denied, or failed to adequately investigate Plaintiff's claim for benefits; underpaid benefits, delay in adjusting the fields, then for the next several months leading plaintiff to believe that the claim would be favorably settled without being required to go through a joint appraisal

        ii. There was no reasonable basis for delaying, denying, or failing to adequately investigate Plaintiff's claim for benefits; underpaid benefits, delay in adjusting the fields, then for the next several months leading plaintiff to believe that the claim would be favorably settled without being required to go through a joint appraisal

        iii. Defendant knew or had reason to know that there was no reasonable basis for delaying, denying, or failing to adequately investigate Plaintiff's claim for benefits; underpaid benefits, delay in adjusting the fields, then for the next several months leading plaintiff to believe that the claim would be favorably settled without being required to go through a joint appraisal

        iv. The delay, denial, or failure to adequately investigate, underpaid benefits, delay in adjusting the fields, then for the next several months leading plaintiff to believe that the claim would be favorably settled without being required to go through a joint appraisal was a cause of damage to Plaintiff.

        v. The nature and extent of damage.

19

3. Is Plaintiff entitled to punitive damages?
   a. Elements of a claim for punitive damages:
      i. Preponderance of clear, convincing and satisfactory evidence that Defendant's conduct or lack of conduct constituted a willful and wanton disregard for the rights of Plaintiff and caused damage to the Plaintiff.
      ii. Punitive damages are allowed to punish or discourage the Defendant and others from like conduct in the future.
      iii. There is no exact rule to determine the amount of punitive damages, if any, that a jury should award, but the following can be considered:
         1. The nature of Defendant's conduct.
         2. The amount of punitive damages which will punish and discourage like conduct by Defendant in view of their financial condition.
         3. The Plaintiff's actual damages.

4. Relevant to the issues raised above, there will be evidence presented concerning the fact that the adjustment of the soybean fields by Defendant violated the requirements of the NCIS soybean manual (deposition exhibit 37), adopted by reference in the insurance contract.

5. Relevant to the issues raised above, there will be evidence presented concerning the fact that the adjustment of the soybean fields by Defendant violated the requirements of Defendant's 2012 Crop-Hail Loss Adjustment Manual (deposition exhibit 40).

6. Relevant to the issues raised above, there will be evidence presented concerning the fact that Defendant failed to adequately stage the soybean crop using the information in its own file and applying the requirements of the time interval charts contained within the NCIS soybean manual.

7. Relevant to the issues raised above, there will be evidence presented that Defendant's failure to adequately stage the soybean crop resulted in a significant underpayment of the soybean crop, as Defendant failed to consider and pay for defoliation losses on the soybean crop.

8. Relevant to the issues raised above, there will be evidence presented that 7,934 soybean acres were submitted under the September 2012 soybean claim, and Defendant's adjusters only adjusted 3,175 soybean acres of land according to their own field notes.

9. Relevant to the issues raised above, there will be evidence presented that 7,934 soybean acres were submitted under the September 2012 soybean claim, and Defendant's adjusters only adjusted 4,422.50 soybean acres of land according to their own screen shots.

10. Relevant to the issues raised above, there will be evidence presented that according to Defendant's records, 6,500 soybean acres or more contained test strips following the September 2012 soybean claim, and Defendant's adjusters only adjusted 3,175 soybean acres of land according to their own field notes.

11. Relevant to the issues raised above, there will be evidence presented that according to Defendant's records, 6,500 soybean acres or more contained test strips following the September 2012 soybean claim, and Defendant's adjusters only adjusted 4,422.50 acres of land according to their own screen shots.

12. Relevant to the issues raised above, Defendant has elected to defend this claim, asserting that drought was a cause of the loss sustained by Plaintiff. Plaintiff states that drought is not a consideration or used in determining hail loss, and there will be an evidentiary issue concerning the relevancy and admissibility of any drought related testimony at trial.

13. Relevant to the issues raised above, Defendant has elected to defend this claim by referring to claims made under a separate Multi-Peril insurance policy for the 2012 year. Plaintiff states that the Hail insurance policy that is the issue in this case is separate, distinct, and independent of any other policies of insurance, and there will be an evidentiary issue concerning the relevancy and admissibility of any Multi-Peril insurance claim documents or claims related testimony at trial.

B. Defendant(s) Issues:

1. Whether Defendant breached the terms of the crop hail insurance contract with Plaintiff?

2. If there was a breach of the crop hail insurance contract with Plaintiff, whether Defendant's breach was in bad faith?
   a. Whether the amount of money due to the Plaintiff under its crop hail insurance policy was fairly debatable?
   b. Whether the Defendant knew or had reason to know that its determination with respect to the amount due to the Plaintiff under the crop hail insurance policy was unreasonable?

3. Whether Plaintiff can recover emotional distress or mental distress damages?
   a. Whether Plaintiff as a business entity can recover emotional distress damages?

b. Whether damages alleged to have been incurred by an individual can support a emotional distress claim of a business entity?

c. Whether sufficient proof exists to establish an emotional distress claim if there is no financial hardship incurred?

4. Whether Plaintiff has established a prima facie case for punitive damages?

5. Whether there are any damages flowing from the alleged bad faith which are not subsumed in the claim for punitive damages?

a. Whether a claim for bad faith should be submitted if there is also a claim for punitive damages?

6. Whether Plaintiff can recover attorney's fees in this action?

a. Whether the Defendant acted vexatiously, wantonly, or for oppressive reasons?

b. The extent and type of proof needed to establish attorney's fees?

7. Whether Plaintiff can introduce evidence of the net worth or financial condition of Defendant prior to the Court determining if Plaintiff has established a prima facie case to support a claim for punitive damages?

a. If the Court determines that Plaintiff has made a prima facie case for punitive damages, what type of financial information with respect to the Defendant is admissible?

8. Whether Plaintiff can introduce evidence of the net worth or financial condition of the parent companies or associated companies of the Defendant?

9. Whether Plaintiff can make references to the Defendant's parent company or the parent companies of Defendant's managing general agent, Rural Community Insurance Agency, Inc.?

a. Whether Plaintiff can offer evidence of the acquisition of Rural Community Insurance Agency, Inc.?

10. Whether Bruce Babcock, an expert designated by Plaintiff, can offer testimony in this matter as his opinions are based upon and address only matters relating to settlement discussions, and accordingly are deemed inadmissible by Fed.R.Evid. 408?

11. Whether portions of the opinions of David Tritsch should be striken and testimony as to the same excluded at trial?

a. Whether the opinions offered by David Tritsch in his second supplemental report are not timely and should be excluded?

b. Whether certain of the opinions of David Tritsch are outside the scope of expert testimony and should be excluded at trial?

12. Whether a witness, Jessica Bruhn, not identified by Plaintiff as having firsthand knowledge of the facts of this case during the course of discovery can offer testimony regarding the claims and damages requested by Plaintiff?

13. Whether communications between the parties or representatives of the parties in the nature of settlement discussions/negotiations are admissible at trial?

14. Whether portions of pleadings offered by Defendant during the Eighth Circuit appeal are admissible?

15. Whether portions of pleadings offered by Defendant in conjunction with the filing of Defendant's motion for summary judgment are admissible?

**IT IS SO ORDERED.**
**DATED** this _2nd_ day of _March_, _2017_.

**MAGISTRATE JUDGE**
**NORTHERN DISTRICT OF IOWA**