
## GENERAL INFORMATION

The purpose of this manual is to provide a reference for the Rural Community Insurance Services (RCIS) crop-hail adjusters. The procedures and guidelines contained in this manual are those accepted by the crop-hail industry. Some additional guidelines and procedures have been established by RCIS. We believe that both the crop-hail industry and RCIS procedures and guidelines are compatible to each other. If you should have any questions about the material contained in the manual or any suggestions for additional material that you might feel would be helpful, please contact your Area Claims Supervisor (ACS), Regional Claims Manager (RCM), or Claims Administration.

## THE AGENT

The agent's responsibility on a crop-hail loss is to submit the insured's notice of loss to the company. Agents may go along with the adjuster, but not interfere with the adjustment of the claim. It is extremely important to keep the agent informed of the status of the claim. Each adjuster must take time to contact the agent at different times to ensure they are aware of the progress of the claim.

## THE INSURED'S CLAIM

We, as crop-hail adjusters, spend most of the growing season adjusting many acres of crops with varying degrees of damage. We are confident of our abilities and know the loss adjusting procedures from memory. However, some of the things we need to continue to remind ourselves about are:

1.  It may be the first time the insured has had a loss with crops in this stage.
2.  The insured may have had a bad experience with an adjuster previously.
3.  We may be dealing with the insured's entire source of income for the year.

The insured is not as familiar with the loss adjusting process as we are. Therefore, we have to explain to the insured the adjusting procedures and our results as we work the loss. When possible, involve the insured in the process. Let the insured record some of the numbers. Show the insured how the charts work. When the insured sees that there are defined adjusting procedures and you have explained how these procedures affect the crop(s) at the various stages, then the insured will have a better understanding and appreciation of the adjusting process. The sooner you, as an adjuster, gain the confidence of the insured, the greater the opportunity for the insured to gain from your knowledge and explanation of the adjusting process.



EXHIBIT

14

13-CV-4106 CJW


# THE ADJUSTER

The adjuster's responsibility is to use industry-accepted procedures to determine the percentage of loss and to keep the agent informed of the status of every claim. We all know that most fields can have a number of stresses that can cause a reduction to yield. The crop-hail procedures will accurately determine the % loss from insured perils. When the policy was purchased, the insured determined what type of policy they wanted (basic or deductible), how much coverage per acre they wanted to purchase, and what crops would be insured. It is not the adjuster's responsibility to determine the amount of dollars an insured will receive, therefore, no dollar amount should be entered on the proof at the time the insured's signature is obtained.

When taking the necessary counts in the field, we need to keep in mind that the accuracy of the procedure is determined by the selection of the count locations. When using an average in anything, the more numbers that go into the sum, the more credible the average. Elsewhere in the manual, you will find minimum number of field tests that must be taken, dependent on the field size. For example, a 60 acre field requires a minimum of four counts. Each count should represent a different 15 acre sample.

Many times the only way to get to the other end of the field is to walk. There is nothing more embarrassing than having to go back on a loss because the insured says the damage was worse on the other end of the field and the adjuster never checked that part of the field. It is mandatory that you as an adjuster visually inspect all areas of the field.

During your adjusting activities, if you encounter a crop condition not caused by hail and you do not know the cause of the crop stress, seek help from a more experienced adjuster, company supervisory personnel, professional agronomists, or others who can help you satisfy the insured's concerns.

# ADJUSTER/ADJUSTER TRAINEE

Under the supervision of the ACS, the responsibility of this position is to competently adjust crop-hail losses using the accepted industry crop-hail loss adjustment procedures.

**Responsibilities:**

1.  **VERY IMPORTANT: It is the adjuster's responsibility to VERIFY SIGNATURE AUTHORIZATION for anyone signing for the loss. The adjuster must enter into the NOTE PAD that they have VISUALLY VERIFIED SIGNATURE for all claims. If not done, the claim will be suspended and the reviewer will contact the adjuster and request additional information. This is a requirement of Wells Fargo and the other Reinsurance Companies.**

2.  Adjust crop-hail losses in a professional manner.

3.  **Mail/upload all completed or deferred losses daily.**

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 2 of 112

**CONFIDENTIAL**

RCIS 0742


4.   Maintain an updated company adjuster training manual.

5.   Attend as requested, company adjuster schools, training sessions, and field days.

6.   Inform ACS regarding any critical loss problems or high dollar possibilities.

7.   Accompany ACS or RCM on field reviews as requested.

8.   Perform all other duties as assigned.

9.   Keep computer equipment functional with all current updates for both Quest and RCIS systems, especially during slack work time and off-season time to prevent major tech issues.

10.  Perform in a timely manner all required computer training sessions, including but not restricted to Wells Fargo training.

**Qualifications:**

1.   Understand crop-hail policies provisions and endorsements.

2.   Understand and use industry crop-hail loss adjustment procedures for primary crops in area to be assigned.

3.   Understand plant physiology for primary crops in his/her assigned area of responsibility.

4.   Recognize and identify stress factors other than hail that can affect crop yields, primarily to differentiate between perils insured and not insured under a crop-hail policy.

5.   Display general knowledge of accepted farming practices.

6.   Display ability to understand and recommend solutions to most crop-hail adjusting problems.

7.   Maintain highest professional standards.

8.   Avoid conflicts of interest or the appearance of such.

9.   Maintain adjuster license(s) in the states where you work.

10.  Zero tolerance is;

   •   Knowingly submitting false claims information.

   •   Obtaining final signature(s) prior to claims completion.

   •   Having insured(s) sign blank/incomplete survey sheets, proof of loss, appraisal worksheets, or production worksheets.

   •   Back-dating or forward-dating any claims documents.

   •   Failure to follow claim appraisal and/or claim verification procedures (e.g. not taking the requisite number of crop counts, "estimating" percent of loss, and/or taking the insured's word regarding production levels without taking actual measurements, etc).

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 3 of 112
**CONFIDENTIAL**

3

FFIC 0742


 Any violation of "zero tolerance" items may result in termination of employment with RCIS.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 4 of 112
**CONFIDENTIAL**

EEIC 0744

4


# BEFORE MEETING THE INSURED

### Examine all Claim Documents

1. Study liability coverage to determine potential high dollar loss.

2. Read agent comments, if any, and highlight phone numbers.

3. Check % interest in each line item to see if companions are involved.

4. Formulate questions ahead of time before making appointment phone calls to agent and farmer.

5. Estimate how long the adjustment will take and/or call supervisors regarding any irregularities, after evaluating phone calls. Ask about other insurance.

6. Read the loss instructions in crop handbooks for the damaged crops.

7. Determine if the loss was reported timely. If there is any question regarding coverage, the adjuster and insured should sign the top part of the non-waiver form before doing the field adjustment.

8. Familiarize yourself with the policy legal descriptions, crops, and type of policy.

9. When making an appointment, ask the agent or insured if there is other insurance. Both companion policyholder and/or additional coverage with another company must be considered.

10. VERY IMPORTANT: Verify Signature Authorization

11. Upon first contact with the insured, inquire as to whom will be accompanying the adjuster on the loss and are they authorized to sign for the loss. If not, inquire as to whom has authorization to do so.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 5 of 112
**CONFIDENTIAL**

RCIS 0745


## Verify equipment before leaving to adjust

Quest adjusters should keep generic forms on hand in case of computer failure.

## Standard paper work supplies

1. LAM (including RCIS crop policy, and all company/adjuster phone numbers for help access if needed)
2. Specific State Rates and Rules Handbook
3. Color-Coded Policy Provision Deduction Sheet
4. Specific Crop Handbooks used in settling the claim (Crop Specific NCIS Slip Cards)
5. Survey Worksheets for the specific crops involved
6. Fact Sheets for detailing information
7. Non-Waiver sheets for any problems with the proof
8. Withdrawal of Claim forms for a possible "no loss"
9. Standard/generic/old RCIS Proof of Loss form for emergency back-up
10. Subrogation Receipt for fire/transit/malicious mischief losses
11. Fire, Transit, Harvested Stored Grain Worksheets.

## Standard boxed-equipment supplies

You should always have these supplies on hand.

1. Fully charged cell phone
2. Pocket knife and/or scissors for cutting plants
3. Calculator
4. Tape measure
5. Equipment relative to adjusting specific crop, such as a lentil square
6. Laptop computer/equipment for Quest crops and/or correspondence


## ADJUSTER PROCEDURE

Always try to make appointments through the agent of record. If the agent prefers, you can schedule directly with the insured. After receiving losses or loss assignments, it is company procedure to contact the agent and insured by phone within 24 hours. At this time, you can determine if there is other hail insurance on the crops.



It is not recommended to adjust any claim without the named insured, the **Power-of Attorney (POA)** or the *person who has written consent to sign the proof* accompanying the adjuster to the field. VERIFICATION OF SIGNATURE IS MANDATORY.

It is the adjuster's responsibility to confirm the person signing the proof is authorized to do so. When making arrangements to work a claim, ask who will be present to sign the proof. If the named insured will not be available:

- You must *visually* inspect the application with authorized signatures and/or the Power of Attorney (POA) form.

- Ask for a written note from the named insured stating who is authorized to sign on their behalf and attach this to the claim package.

Before the claim can be processed, you must add remarks in the Quest Notebook or Fact Sheet indicating you visually verified documentation that the person who signed the loss was authorized to do so or, you must attach attach documentation to the claim package.

### Upon First Meeting with the Insured

1. Determine what policy items have sustained hail damage.
2. Be aware at all times of any potential high dollar losses so the appropriate procedures are performed and individuals can be notified.
3. On the survey sheets, list the number of acres in each field and either diagram the fields now or as you make your counts in each field.


## The Field Adjustment

1. Determine the minimum number of counts (tests) required depending upon field size and where they will be taken. Establish an acre per count system at this point and inform the insured.

2. Ask the insured where the heaviest damage is. Generally, we suggest starting with the crop with the most severe damage and at the most severe spot in that field.

3. As you are doing the tests, explain the following to the insured:

    a. What you are looking for.

    b. How crops are staged for loss adjusting.

    c. Types of damages based on stage of growth.

    d. Other pertinent information determined for the crop(s) being adjusted.

   ⚠ Never tell the insured there is no loss. Instead, say, **"I can't find a payable loss".**

4. Tell the insured the results of the counts after each test in each field. There may be some exceptions to this.

5. Complete the survey sheet for each field as you complete the inspection for the field.

   ⚠ Any time you step into a field, you must indicate percentage determined. If zero, put zero on the survey sheet and enter notes as to how this decision was made.

6. Review the claim with the insured including the agreed percent of loss.

7. Obtain all signatures on the proof of loss.
   **Note:** If the insured does not agree with the results, do not defer or sign the claim. Contact your ACS.

8. Complete the fact sheet and/or notes, scan in all other information pertinent to the claim and complete the claim for uploading.

9. Print a copy of the proof of loss and leave it with the insured.

10. Upload the claim as soon as possible.


Case 5:13-cv-04106-CJW Document 149-11 Filed 03/13/17 Page 8 of 112
CONFIDENTIAL
EEIC 0748


## MAP DRAWING

It is very important that maps you create can easily identify the acres the loss occurred on and where the counts were made.

For example, we have a loss on 27 acres (640 acres = 1 section). The adjuster did two counts to determine the percent of the loss.

Here is an example of a well drawn map. You can clearly see the 27 acre portion and the adjuster clearly identified where the two counts were done.



Here is an example of a poorly drawn map. There is no way to identify where the 27 acre portion is and the counts are placed on two separate sections within the 640 acres



Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 9 of 112



# 2012 Crop - Hail Loss Adjustment Manual

**Basic Adjuster Procedures**

## FIELD COUNTS (TEST)

It is important that all adjusters follow the Industry Loss Adjustment Procedures and RCIS guidelines so that we have consistency in our adjustments. This is a per acre policy which needs to be adjusted accordingly.

A.  Make your tests throughout the entire field to get an accurate average for that field.



B.  Increase the number of counts taken to get an accurate average when there is a large difference between the percentages.

C.  If a field is split, each sub-field is subject to the minimum number of counts.

D.  It is RCIS policy that we take a minimum number of counts based on the acreage. More counts may be necessary to determine the loss. An example is; for row crops and small grains, it is suggested to take the number of counts per field according to the following chart.

| Acres in Field | Minimum Number of Counts |
|---|---|
| Less than 40 acres | 2 |
| 40 to 79 acres | 3 |
| 80 to 160 acres | 4 |
| Over 100 acres | 4 plus 1 for each 100 over 160 |

**Note:** The map located in Quest and on the manual survey sheet constitutes a section (640 acres).

---

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 10 of 112
**CONFIDENTIAL**
RFIC 0750



E.    The number of counts can be determined by the following criteria:

    1.    Crop

    2.    Number of acres

    3.    Uniformity of the loss

    • Big differences will require more counts in order to accurately split acres.

    • More counts may be needed to find location splits.

 **Important:** Each count must represent a certain number of acres.

F.    Tobacco minimum counts by number of acres are in the Tobacco Loss Adjustment Procedures. Follow those instructions when adjusting tobacco.

G.    Tree Fruits have recommendations for minimum number of counts in the Tree Fruit Loss Instructions. However, for each test you are to use a range of 50 to 100 fruits.

H.    Corn Green Snap, Green Snap Plus and Green Snap Special losses require specific counts. Refer to the green snap instructions in the Optional Endorsement section for details.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 11 of 112
**CONFIDENTIAL**


## OTHER INSURANCE (DOUBLE)

When other insurance (double) is determined, cooperation between companies is necessary. What we want to avoid is loss competition between companies on the same land. In some instances, this "competition between companies" is nurtured by an insured.

1.  What to do if you know prior to meeting the insured that there is other insurance:

    a.  Contact your ACS with the information you have obtained.

2.  What to do if you find out after meeting with the insured that there is other insurance:

    a.  If we have equal or higher liability, proceed;

    - Make sure your adjustment will protect the other companies' policy type. E.g. Other company (Basic Policy $25 IPA), RCIS (DXS10 $50 IPA).
    - Inform the ACS that we are doubled.
    - ACS will contact companion company supervisor with this information. Get the name of the assigned adjuster, contact them and set a time to work the claim together.
    - If we can't get together with the other company, our adjuster will work the claim.
    - Provide loss figures to the ACS or the other company.

    b.  If the other company has high liability, let the other company manage the loss.

    - All effort to be present at all loss adjustments should be made unless otherwise directed by the ACS.
    - Inform insured that we may use other company's % of loss figures **and** we may require more tests to be taken based upon the fact that our policy descriptions might vary from the other company's policy.
    - Notify your ACS of other insurance.
    - Notify other company, if possible, on where to send loss paperwork.
    - If the companion company will not be able to get to the claim finalized in a reasonable amount of time, RCIS will work the claim and send our findings to the Companion company.

3.  On light loss, if one company has higher/lower deductible policy than the other, then the company with the most basic coverage or the company with the lowest deductible or minimum loss provision should work the loss.

| Company A | Company B | Who Works Claim |
|---|---|---|
| Basic 1% Min. | Basic 5% Min. | Company A |
| Basic | Deductible | Company A |
| Higher Deduct. | Lower Deduct. | Company B |

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 12 of 112
**CONFIDENTIAL**

RCIS 0750


4.  The chart above may vary if the IPA is higher for one company and the policies are different. If unsure of what to do, contact your ACS for guidance.

 Important: Even when we have less liability or a higher deductible than another company does, **we always retain our right to work the loss with or without the other company**. This is to protect ourselves if we are not comfortable with the other company's ability or desire to adjust the claim correctly.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 13 of 112
**CONFIDENTIAL**
FFIC 0753

13


## FACT SHEET

A "Fact Sheet" must be completed for all claims with a Non-Waiver and any time the adjuster needs to communicate to the company anything relevant about the claim.

A Quest fact sheet should be as thorough, directly to the point and factual as one written up and submitted manually.

Keep the following in mind:

1. Explain the reason for the Fact Sheet.

2. Include any statements that the insured or agent made pertaining to the policy or loss.

3. If necessary, use all available sources of information that could be helpful (FSA, neighbors, agent, etc.). If applicable, include copies of any data obtained.

4. Provide only factual information. Do not include hearsay.

5. Do not include any personal comments.

 Remember: Anyone can read the Fact Sheet. This includes the insured, an agent, or any person in the general public.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 14 of 112
**CONFIDENTIAL**


RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Fact Sheet**

| 1. TO: |
|---|

| 2. SUBJECT MATTER |
|---|

| 3. INSURED'S NAME | 4. POLICY NUMBER |
|---|---|

| 5. CROP | 6. UNIT(S) | 7. CROP YEAR |
|---|---|---|

| 8. COMMENTS: |
|---|

| 9. ADJUSTER'S SIGNATURE | 10. CODE NUMBER | 11. DATE |
|---|---|---|

MP-7000 (02-09)                    Page ____ of ____

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 15 of 112
CONFIDENTIAL
FFIC 0755

15


# NON-WAIVER AGREEMENT

A Non-Waiver Agreement is used any time there is a question regarding coverage and/or information indicated on the Proof of Loss.

The purpose of the Non-Waiver is to allow the adjuster to proceed with the adjustment without waiving any of the provisions and/or conditions of the policy or application.

Following are some of the reasons that most often require the use of a Non-Waiver:

1.  Late reported loss. Loss reported in excess of the time allowed in the policy.

2.  Legal description(s) or crop(s) different than those indicated on the Proof of Loss.

3.  A question regarding the effective date of insurance and/or date of loss.

4.  Insured has two policies and the combined coverage greatly exceeds the value of the crop.

5.  Hail occurred and it appears some of the damaged acreage had been previously hailed on, probably before the policy was written.

6.  While verifying information on a proof, a discrepancy was found (E.g. incorrect share, entity, etc.)

7.  Auto Crop claims before acreage reports.

If you are aware of any reason for a Non-Waiver, fill out the top portion of the form *prior* to entering the field. The insured *and* adjuster must both sign the top portion before proceeding with the adjustment (excluding auto crop).

If you become aware of some irregularity once an adjustment has begun, fill out the top portion of the form and get signatures before continuing the adjustment.

Explain to the insured why the Non-Waiver is being used and you are there solely to determine the percentage of loss. Inform the insured the company will determine what decision will be made with regard to the reason for the Non-Waiver.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 16 of 112
**CONFIDENTIAL**
RCIS 0756

16


If the insured refuses to sign the Non-Waiver, **STOP.** Do not proceed with the adjustment. **NOTIFY YOUR ACS**.

After adjustment has been made, complete the bottom portion of the Non-Waiver Loss Agreement form much the same as you would complete a Proof of Loss. At this point in the process, the non-waiver replaces the proof.

Be sure to include work sheets, appropriate maps, etc., and the adjusters special report or fact sheet. Any other policy items not subject to the Non-Waiver can be listed on the Proof of Loss.

 Both you and the insured must sign the non-waiver. Neither of you sign the Proof of Loss.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 17 of 112
CONFIDENTIAL
RRIC 0757


## QUEST - CONVERT PROOF OF LOSS TO A NON-WAIVER

In Quest, you can convert a Proof of Loss to a Non-Waiver if needed. With the claim opened in Quest, click **Tools** in the menu bar.



In the drop down list, click **Convert Proof to Non-Waiver**.

The Non-Waiver Agreement opens. Both you and the insured must sign the Non-Waiver.

Non-Waiver now displays in red on the Quest screen and Convert Non-Waiver to Proof is listed in the Tools drop down menu. This allows you to convert the Non-Waiver back to a Proof of Loss if required.



After the claim is worked, you must enter an explanation in the Fact Sheet for the non-waiver.

Case 5:13-cv-04106-CJW Document 149-11 Filed 03/13/17 Page 18 of 112
**CONFIDENTIAL**
FFIC 0758



---

### NON-WAIVER AGREEMENT

It being the desire of the parties hereto to ascertain and determine without delay the percentage of loss and damage alleged to have been sustained by HAIL to the crops as described on the blank below on this sheet.

IT IS HEREBY MUTUALLY STIPULATED AND AGREED that any action taken in ascertaining the percentage of loss and damage by hail which has occurred prior to and including the date and hour of the signing of this Agreement, as noted hereon, shall not waive nor invalidate any of the conditions of the policy, nor of the application on which said policy was issued, and shall not waive nor invalidate any rights whatever of any party to this Agreement.

NOTICE is hereby given and accepted, and is hereby mutually understood and agreed, that no representative of the Insurance Company has power or authority to waive or modify any of the conditions of the policy or application.

THE SOLE OBJECT AND INTENT of this agreement being to provide for the determination of the percentage of said loss and damage, and an investigation of the circumstances, without regard to the liability of the Insurance Company, and to preserve all the rights of all the parties hereto.

WITNESS our hands, this_____day of_____19_____ _____o'clock_____M.

Witness_____        _____Insured.

This Agreement must be witnessed and a copy        _____Insurance Co.
left with Insured.

By_____Adjuster.

---

### NON-WAIVER LOSS AGREEMENT

IN ACCORDANCE WITH THE WITHIN AGREEMENT it is hereby stipulated and agreed that the percentage of loss and damage sustained to crop or crops as described in Policy No._____of the_____

Insurance Company of_____Issued at_____

Agency, caused by HAIL on or prior to the_____day of_____19_____, subject to all the stipulations and agreements made in this NON-WAIVER AND SPECIAL LOSS AGREEMENT is as follows:

| ITEM NO. | SEC. | TWP. | C R C L E | C I R C L E | DIST. | KIND OF CROP | NO. OF ACRES | % OF LOSS & DAMAGE |
|---|---|---|---|---|---|---|---|---|
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |
| | | | N | E | | | | |
| | | | S | W | | | | |

(LOCATION / TOWNSHIP OR DISTRICT)

It is furthermore distinctly understood that this Agreement is in no manner a promise to pay any sum whatsoever, nor does it create any liability on the part of the Company.

Dated at_____this_____day of_____19_____, at_____M.

Witness_____        _____Insured.

This Agreement must be witnessed and a copy        _____Insurance Co.
left with Insured.

By_____Adjuster.

NCIS 6701 '65

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 19 of 112
CONFIDENTIAL



# 2012 Crop - Hail Loss Adjustment Manual

**Fact Sheet, Non-Waiver and Field Inspection**

## ADJUSTER REINSPECTION GUIDELINES

Never do or commit to a reinspection without being assigned the reinspection by your ACS or RCM.

No additional payment will be made unless additional damage is in excess of original by 5% or more.

When contacted by an insured or agent to do a reinspection:
1. Instruct the agent or insured to contact the ACS or RCM. This is not the responsibility of the adjuster.

## RCM / ACS REINSPECTION GUIDELINES

Inform the agent or insured a reinspection form from the insured must be sent to the RCM. The form must reach the company at least 10 days before the beginning of harvest in the requested field(s) and not later than October 15.

2. The Reinspection form must inform RCIS of the facts as to why reinspection should take place. Clearly state on the form what hail damage is now apparent that the original adjustment did not consider.

3. Inform the insured or agent that no reinspection will be done on crops without test strips left in the field. Additionally, no reinspection will be done when the request indicates yield comparisons; third party opinions or neighboring farm loss comparisons.

When you are assigned a reinspection:

## RCIS REINSPECTION PROCEDURE

**Re-inspection Requirements**
1. Complete the Re-inspection Non-Waiver form (HA-5013). The Re-inspection Non-Waiver must be competed on all re-inspections. If insured will not sign, contact your supervisor. We can't work the re-inspection without a signature.
2. Rework the loss and complete new survey sheets. Enter the Original Loss % and the RI Loss % into the RI worksheet.
3. No additional payment will be made on a test unless additional damage is more than 5% of the original loss.
4. Any test that meets the additional loss percent (more than 5%) will be added into the original test(s) that do not meet the min. additional loss percent to determine the gross additional loss percent for the Line Item.

---

RCIS Claims            7 of 14            February, 2012

20

**CONFIDENTIAL**

RCIS 0760


5. Review Policy Type to determine if field splits are required **(Does not apply to HPP)**.
6. Write a detailed **FACT SHEET** that documents the additional loss found, cause of loss other than hail damage or any other information relevant to the claim. Facts only, no opinions.
7. Inform the insured that the re-inspection is subject to company approval. The adjuster is only providing information to help determine if further payment is warranted.
8. Send all paperwork to ACS for review (RI Non-Waiver, RI Calc. Sheet, RI Request Form, Survey Sheets, Fact Sheet).
9. The ACS will review the information. If all calculations are correct, the re-inspection findings will be sent to the RCM for approval.
10. If approved, the RCM will contact the RSO to open a new claim for that Policy. The approval will be sent back to the ACS for processing. The ACS has the option to make the changes or assign the claim back to the adjuster that worked the re-inspection to make the changes in the newly opened claim.
11. If not approved, the RCM will send a letter to the insured explaining the reason(s) for denial.
12. All Re-inspection documentation (Insured Re-inspection Request, RI Non-Waiver, Survey Sheets, Re-inspection Worksheet, HD / Deferred Estimate, etc.) will be attached to the claim and uploaded for additional payment.
13. If applicable, adjuster must fill out High Dollar / Deferred Estimator to reflect the new loss totals **(Mandatory for HPP Re-inspection claims)**

## Re-inspection Requirements for Hail Production Plan (HPP)

1. Same as 1 – 13 above.
2. All Re-inspection documentation (documentation same as above) will be attached to the claim, put copies of the Re-inspection documentation in the claim file, defer all line items, and upload the claim.

## Filling out the Re-inspection Worksheet

1. Enter insured Policy information (PART A) and Line Item information (PART B).
2. Enter the original loss percentages (C1).
3. Adjust the Line Item following recognized NCIS Loss Adjusting Procedures.
4. Enter Re-inspection percent of loss (C2).
5. If Re-inspection loss percent is 5% or less, use the original loss percent (C1) in C6.
6. Determine if splits are required. If so, use another worksheet to determine additional loss. Make necessary changes (B1 - B2) **(Does not apply to HPP)**
7. Enter the total test(s) taken (D1).
8. Re-inspection results will be calculated in D2 – D4.
9. Enter test counts on the map.
10. Fill out FACT SHEET explaining your findings.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 21 of 112
**CONFIDENTIAL**

21

**Re-inspection Worksheet (No Split)**

## RCIS - REINSPECTION CALCULATION WORKSHEET

| INSURED | POLICY NO. | CLAIM NO. | DATE OF LOSS | REINSPECTION DATE |
|---|---|---|---|---|
| Joe Farmer | 00-111-222222 | | 6/22/2011 | 8/22/2011 |

| A1 | A2 | A3 | A4 | D1 | D2 | D3 |
|---|---|---|---|---|---|---|
| Line Item | Acres | Crop | Policy Type | Original Loss % | R.I. Loss % | Additional Loss % |
| 1.0 | 120.0 | Corn | Basic | 13.7 | 15.8 | 2.0 |

| A1 | A2 | A4 | A5 | D1 | D2 | D3 |
|---|---|---|---|---|---|---|
| Line Item | Acres | Crop | Policy Type | Original Loss % | R.I. Loss % | Additional Loss % |
| | | | | | 0.0 | |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (If additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | 13.2 | 18.4 | 5.2 | 18.2 | 18.4 | 18.4 |
| 2.0 | 12.1 | 13.9 | 1.8 | 17.1 | | 12.1 |
| 3.0 | 22.9 | 21.6 | -1.3 | 27.9 | | 22.9 |
| 4.0 | 8.7 | 13.7 | 5.0 | 13.7 | 13.7 | 13.7 |
| 5.0 | 11.7 | 16.6 | 4.9 | 16.7 | | 11.7 |
| Total | 68.6 | | | | Total | 78.8 |
| Tests | 5 | | C1 | | Tests | 5 |
| Average | 13.7 | | | | Average | 15.8 |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (If additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | | | 0.0 | | | 0.0 |
| 2.0 | | | 0.0 | | | 0.0 |
| 3.0 | | | 0.0 | | | 0.0 |
| 4.0 | | | 0.0 | | | 0.0 |
| 5.0 | | | 0.0 | | | 0.0 |
| Total | 0.0 | | | | Total | 0.0 |
| Tests | | | C1 | | Tests | 0 |
| Average | | | | | Average | |

**FACT SHEET**

Counts 1 and 4 meet the 5% min. requirement. Counts 2, 3 and 5 do not meet the 5% min. requirement. The additional loss percentage for the Line Item is calculated in D1 - D3.

| Line Item | QTR. | SEC. | TWNSHP | RNG. |
|---|---|---|---|---|
| 1.0 | NW | 12 | 31 | 22 |

| Line Item | QTR. | SEC. | TWNSHP | RNG. |
|---|---|---|---|---|
| 0.0 | | | | |

**Re-inspection Worksheet – (Split is Required, Same field as above. Split necessary because of Policy Type).**

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 22 of 112
CONFIDENTIAL



## RCIS - REINSPECTION CALCULATION WORKSHEET

| INSURED | | | POLICY NO. | | | CLAIM NO. | DATE OF LOSS | | REINSPECTION DATE | |
|---|---|---|---|---|---|---|---|---|---|---|
| Joe Farmer | | | 00-111-222222 | | | | 6/22/2011 | | 8/22/2011 | |

| A1 | A2 | A3 | A4 | D1 | D2 | D3 |
|---|---|---|---|---|---|---|
| Line Item | Acres | Crop | Policy Type | Original Loss % | R.I. Loss % | Additional Loss % |
| 1.0A | 72.0 | Corn | DXS5 | 12.1 | 15.6 | 3.6 |

| A1 | A2 | A4 | A5 | D1 | D2 | D3 |
|---|---|---|---|---|---|---|
| Line Item | Acres | Crop | Policy Type | Original Loss % | R.I. Loss % | Additional Loss % |
| 1.0B | 48.0 | Corn | DXS5 | 18.2 | 23.8 | 5.6 |

| | B1 | B2 | B3 | B4 | B5 | B6 |
|---|---|---|---|---|---|---|
| TEST | ORIGINAL GROSS LOSS % | RI GROSS LOSS % | ADD. GROSS LOSS % | MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | Test(s) with add. Loss % (Meets 5% Min.) | RI LOSS % (If additional is less than 5%, use Original Loss %) |
| 1.0 | 6.2 | 11.9 | 5.7 | 11.2 | 11.9 | 11.9 |
| 2.0 | 18.4 | 23.2 | 4.8 | 23.4 | | 18.4 |
| 3.0 | | | 0.0 | | | 0.0 |
| 4.0 | | | 0.0 | | | 0.0 |
| 5.0 | 11.6 | 16.6 | 5.0 | 16.6 | 16.6 | 16.6 |

| | B1 | B2 | B3 | B4 | B5 | B6 |
|---|---|---|---|---|---|---|
| TEST | ORIGINAL GROSS LOSS % | RI GROSS LOSS % | ADD. GROSS LOSS % | MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | Test(s) with add. Loss % (Meets 5% Min.) | RI LOSS % (If additional is less than 5%, use Original Loss %) |
| 1.0 | | | 0.0 | | | 0.0 |
| 2.0 | | | 0.0 | | | 0.0 |
| 3.0 | 17.4 | 23.6 | 6.2 | 22.4 | 23.6 | 23.6 |
| 4.0 | 18.9 | 23.9 | 5.0 | 23.9 | 23.9 | 23.9 |
| 5.0 | | | 0.0 | | | 0.0 |

23
Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 23 of 112
CONFIDENTIAL
EEIC 0763



---

RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Reinspection and Non-Waiver Agreement**

| 1. INSURED NAME | 2. POLICY NUMBER |
|---|---|
| | |

It is hereby agreed and understood between Rural Community Insurance Services, hereafter referred to as the "Company," and the undersigned insured that any and all loss to date to crops insured under the above policy has been finally settled, and that the Company is under no obligation under said policy or otherwise to undertake any reinspection or further adjustment of the above loss. In the event a reinspection is undertaken by the Company, any additional payment is subject to Company approval.

It is further understood between the parties that neither any election by the Company to reinspect, any actual reinspection by the Company, nor any subsequent payment by the Company to the insured as the result of any reinspection shall be construed in any way as a waiver, modification or invalidation of any prior settlement or any part thereof.

Dated at _____ on _____ 20___, at _____ o'clock ☐ AM ☐ PM

3. LOCATION    4. DATE

| 5. INSURED'S OR AUTHORIZED REPRESENTATIVE'S SIGNATURE | | DATE |
|---|---|---|
| 6. WITNESS' SIGNATURE | | DATE |
| 7. ADJUSTER'S SIGNATURE | CODE NUMBER | DATE |

8. FACT SHEET (Attach additional sheets if necessary)

9. ADJUSTER RECOMMENDATIONS

| 10. ADJUSTER'S SIGNATURE | CODE NUMBER | DATE |
|---|---|---|

HA-5013 (03-09)    White – Sales & Service Office    Yellow – Agent    Pink – Insured

---

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 24 of 112
**CONFIDENTIAL**



RURAL COMMUNITY INSURANCE COMPANY

**RURAL COMMUNITY INSURANCE SERVICES®**

**Reinspection Request**

## FAX REQUEST TO THE REGIONAL CLAIMS MANAGER

| 1. INSURED NAME |
|---|
| |

| 2. POLICY NUMBER | 3. CLAIM NUMBER |
|---|---|
| | |

This is a request to consider a reinspection of the above policy. Please fill out all the information below, stipulating the reason(s) for the reinspection and the item(s) and / or location(s) for the reinspection.

Requirements:
1. Representative Strips must be left to determine the additional loss.
2. No reinspection based on yield and/or loss percentage comparisons.

**4. REINSPECTION INFORMATION**

Clearly state what hail damage is now apparent that the original adjustment did not consider (Approved NCIS adjusting procedures will be used to determine any additional loss. A 5% minimum additional loss required).

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**5. ITEM(S) LEGAL DESCRIPTION(S)**

_____

_____

_____

_____

_____

_____

_____

| 6. INSURED'S SIGNATURE | DATE |
|---|---|
| | |

| HA-5025 (01-09) | Page 1 of 1 |

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 25 of 112
CONFIDENTIAL

25


# FIELD INSPECTION

### Prior Hail Damage

The adjuster will do the following:

1. The adjuster must have Temporary Policy Number (T-Policy No.) before setting up the inspection. This is generated when the policy is uploaded to the RSO, but is suspended because of the prior hail damage. Obtain information from the ACS.

2. Contact the agent to make an appointment to inspect the field(s).

3. Obtain information to work the inspection from the agent when necessary.

4. Complete all information in the header.

5. Fill in the :
   - County
   - Crop
   - Quarter, Section, Township, Range
   - Number of Acres on the line item (we will not split acres in most cases)
   - Determine loss percent
     **Note:** If a percent of loss cannot be determined, no insurance will attach. The insurance cannot attach until a percent of loss is determined.

6. Complete and sign the Field Inspection Prior Hail Damage form (HA-5016).

7. Complete a Fact Sheet to explain what they found, and any conditions that may be present. (E.g. Crop Condition, Bruising, Insect problems, etc) Explain anything that may cause problems with this crop during the growing season.

8. Send the Field Inspection Prior Hail Damage form (HA-5016) and survey sheets to your ACS:

9. Inform the Insured (and agent, if applicable) that when the inspection is complete, a decision of the findings will be provided to them as soon as possible.

 **Note:** If there is a percent of loss, a process must be followed for any subsequent loss.

CONFIDENTIAL



RURAL COMMUNITY INSURANCE COMPANY

# RCIS ℠

Field Inspection
Prior Hail Damage

| 1. INSURED NAME | | 2. PHONE NUMBER | 3. AGENCY | | | 4. PHONE NUMBER |
|---|---|---|---|---|---|---|
| 5. "T" / POLICY NUMBER | 6. DATE OF LOSS | | 7. DATE OF INSPECTION | | 8. CROP YEAR | |

**CROP CONDITIONS**

| 9. COUNTY | 10. ITEM NO. | 11. CROP | 12. QT | 13. SEC | 14. TWN | 15. RNG | 16. ACRES | 17. LOSS % | 18. EXCEL. | 19. GOOD | 20. FAIR | 21. POOR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

Review the findings with the insured and/or agent. Fax or Email this form along with Survey Sheets to the Supervisor. The Supervisor will review the adjusters findings and will forward the results to the RSO for processing.

**FACT SHEET - Fill in the information requested below.**

22. FIELD CONDITION(S)

23. INSECT / DISEASE CONDITION(S)

24. OTHER COMMENTS

| 25. ADJUSTER | CODE NUMBER | DATE |
|---|---|---|

HA-5016 (05-11)

Page 1 of 1


## How to Work the Loss

This is a per acre policy. Acres required to produce the bushels lost must be calculated.

1. Determined value of the crop at the time of the loss or number of acres destroyed.

2. Complete a Fact Sheet and include:

   - A loss description, a descriptive map of the destruction, the method used to measure and calculate the loss (such as receipts for the use of a mechanical means for clean-up, labor, etc) and if subrogation is possible, the responsible party names, addresses, insurance information, and phone numbers.

3. Obtain police, sheriff or any other report available.

4. Take pictures whenever possible.

5. Scan and attach all information including the subrogation receipt (NCIS 7004 '67) to the claim package.

6. Complete a Proof of Loss and have it signed by the insured.

7. Upload claim with all documents attached.

## Field Measurements

There are times when it is necessary for the adjuster to measure a field or parts of a field to determine the number of acres destroyed. All destroyed acres are rounded to the nearest tenth of an acre.

The following methods are approved for measuring acreage:

1. GPS

2. Wheel

   <u>Rectangle or Square</u>: Length (rotations x feet per rotation) X Width (rotations x feet per rotation) = Square feet divided by 43,560 = Acres destroyed.

   <u>Triangle</u>: (Same procedure as Rectangle or Square = Acres destroyed) Divided by 2.

   **Note**: Calculations will vary due to size difference in wheels. For a standard wheel with 1 rotation = 6.6 feet, a rectangle or square calculation would be: Wheels X Wheels & move decimal point left 3 places = Acres destroyed.

   **Example**: Rectangular fire measuring length 198 wheels and width 114 wheels. 198 X 114 = 22,572 square wheels. Acres destroyed = 22.6.

3. FSA Measurement from outlined area on FSA map

4. Aerial Photographs - This only applies to large fires. Approval is required.

Case 3:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 28 of 112
**CONFIDENTIAL**



## FIRE LOSS

We cover loss by fire and lightning before harvest and while the crop is still in the harvester except that fire and lightning will not apply to any crop that has been planted in current crop year small grain crop, stubble or residue.

---

RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Fact Sheet**

| 1. TO: |
| --- |
| RCIS |

| 2. SUBJECT MATTER |
| --- |
| Fire Loss |

| 3. INSURED'S NAME | 4. POLICY NUMBER |
| --- | --- |
| Joe Farmer | 15-090-55X555 |

| 5. CROP | 6. UNIT(S) | 7. CROP YEAR |
| --- | --- | --- |
| Wheat | | 201X |

| 8. COMMENTS: |
| --- |

Fire loss was reported on mm/dd/yy on item #1. SW 14-8-29 in Sheridan County. Kansas.

605 wheels x 632 wheels = 382,360
"move over 4 spaces = 38.2 acres

605

632 Wheels

The insured stated the fire was started by the custom cutters pickup. The custom cutter is: John Z Brown. PO Box 2306. Liberal Kansas 67666.

His insurance provider is Kansas State Farms Insurance. Agency is Smiths Agency. 620-555-5511. His policy# is ksd6749360z.

The fire department helped contain the fire (See $100 receipt). Insured agreed with our findings.

| 9. ADJUSTER'S SIGNATURE | 10. CODE NUMBER | 11. DATE |
| --- | --- | --- |
| *I.M. Adjuster* | 015-555 | mm/dd/yy |
| RCF-7000 (02-05) | Page ___ of ___ | |

---

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 29 of 112
**CONFIDENTIAL**

29




RURAL COMMUNITY INSURANCE COMPANY

Crop-Hail Loss Adjustment
Fire Worksheet

## GENERAL INFORMATION

| 1. INSURED NAME | 2. POLICY NUMBER | 3. CLAIM NUMBER |
|---|---|---|
| 4. TAX ID TYPE  ☐SSN ☐EIN ☐OTHER | 5. TAX ID NUMBER | 6. AGENCY NAME | 7. CODE NUMBER |

| 8. DATE OF LOSS | 9. CAUSE OF LOSS (HARVESTER, LIGHTNING, ETC.) |
|---|---|

**10. ASSIGNMENT OF INDEMNITY**

| 11. CROP | 12. POLICY LINE ITEM | 13. LEGAL DESCRIPTION | 14. TOTAL INSURED ACRES | 15. INSURED SHARE |
|---|---|---|---|---|

**16. METHOD(S) OF MEASURING DESTROYED ACRES (GPS, WHEEL, ETC.)**

## SUBROGATION INFORMATION (IF APPLICABLE)

| 17. RESPONSIBLE PARTY | 18. ADDRESS | 19. PHONE NUMBER |
|---|---|---|
| 20. WITNESS | 21. ADDRESS | 22. PHONE NUMBER |
| 23. LIABILITY CARRIER | 24. AGENCY | |
| 25. ADDRESS | | 26. PHONE NUMBER |

**27. There is NO OTHER INSURANCE on this crop, EXCEPT**

(Include any applicable reports, such as fire dept., policy reports, etc.)

## SPECIFY POLICY AND LOSS INFORMATION

| A | Acres on Policy Line Item | A | |
|---|---|---|---|
| B | Insured Value Per Acre | B | |
| C | Acres of Standing Crop Destroyed | C | |
| D* | Acres of Stubble Destroyed (if applicable) | D | |
| E* | Stubble Coverage (D x 10% of A not to exceed $10 x Share) | E | |
| F* | Stubble Coverage Converted into acres of standing crop Destroyed. (E / B) | F | |
| G | Total Acres Destroyed (C + F) | G | |
| H | Policy Loss Amount Payable (B x G) | H | |
| I | Fire Department Reimbursement (Up to $250) | I | |
| J | Convert Fire Department Charge into Acres Destroyed (I / B) | J | |
| K | Total Net Acres Destroyed (G + J) | K | |
| L | Deductions (Crop Hail = $0; Grain Fire Policy = $0)  ALWAYS $0 | L | |
| M | Total Payable Loss (K x B) | M | |

* D, E, and F applies to WA, ID, and OR only.

I agree with the agreed loss, subject to policy provisions, for damage to my insured crops. I declare that the facts stated are true and I understand that this worksheet and supporting papers are subject to audit and approval by the company.

| 28. INSURED'S SIGNATURE | 29. ADJUSTER'S SIGNATURE |
|---|---|
| 30. DATE | 31. ADJUSTER'S CODE | 32. DATE |

HA-5018 (06-11)                                        Page 1 of 1


## TRANSIT LOSS

Transit Coverage will cover the harvested crop while being transported to the first place of storage not to exceed 100 miles. This policy is extended to cover loss caused by:

1. Fire and lightning
2. Windstorm
3. Collision
4. Overturn
5. Collapse of bridges, docks and culverts

However, Transit Coverage is excess over any other valid and collectible insurance

FIRST PLACE OF STORAGE means any drying apparatus, drying bins or storage facility of any kind.

We will pay, up to a limit (See State Special Provision for maximum reimbursement) or your obligation assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect the unharvested crop. No excess Over Loss or Deductible will apply to this provision.

We will also pay charges that the insured incurred from the salvaging process (E.g. Renting a Vac-U-Vator to vacuum up the grain). Receipts are necessary.

31

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 31 of 112
**CONFIDENTIAL**
RCIS 0771



RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Fact Sheet**

| 1. TO: |
|---|
| Sam Supervisor |

| 2. SUBJECT MATTER |
|---|
| Transit |

| 3. INSURED'S NAME | | 4. POLICY NUMBER |
|---|---|---|
| Farmer Jack | | KS-090-55X555 |

| 5. CROP | 6. UNIT(S) | 7. CROP YEAR |
|---|---|---|
| Wheat | | 201X |

**8. COMMENTS:**

Contacted agent & insured. Met with them at the insured's farm. We went to the spot of the accident. The ditch had water standing in it and wheat was still present in the ditch. The farmer provided me with scale tickets to determine the average number of bushels hauled by the truck involved in the accident. He also provided me with load tickets of the bushels that were salvaged.

The tandem hauled approximately 630 bu. and 475 bu. were salvaged. That gives us a loss of 155 bushels. He figured his production on item #3, NW 6-8-29, Sheridan County. He averaged 45 bu. on 120 acres.

The formula for figuring acres destroyed:
155 bu. destroyed / 45 bu. yield = 3.4 acres destroyed.

The insured also incurred charges when renting a Vac-U-Vator to help with cleanup (See receipt). $50.00 for Vac-U-Vator.

The insurance per acre is $100. Add .5 acres to loss to pay for renting of the Vac-U-Vator ($50 / $100 = .5 acres).

| 9. ADJUSTER'S SIGNATURE | 10. CODE NUMBER | 11. DATE |
|---|---|---|
| *Joe Adjuster* | 015-555 | mm/dd/yy |
| MP-7000 (02-09) | Page ___ of ___ | |

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 32 of 112
CONFIDENTIAL
FFIC 0772

32



## 2012 Crop - Hail Loss Adjustment Manual

### Fire, Transit and Vandalism

---

RURAL COMMUNITY INSURANCE COMPANY

**RURAL COMMUNITY INSURANCE SERVICES®**
**Crop-Hail Loss Adjustment - Transit Worksheet**

#### General Information

| 1. CLAIM NUMBER | | 2. POLICY NUMBER | |
|---|---|---|---|
| **3. INSURED NAME** | | **4. TAX ID NUMBER** | **5. TAX ID TYPE** |
| **6. AGENCY NAME** | | | **CODE NUMBER** |
| **7. LOSS PAYABLE TO ME AND:** | | | |
| **8. POLICY ITEM NUMBER** | **9. CROP** | | **10. POLICY FORM CODE** |
| **11. OTHER INSURANCE** ☐ YES ☐ NO | **12. COMPANY NAME** | | **13. TYPE** |
| **14. AGENCY NAME** | | **16. ADDRESS** | |

(If other insurance, attach sheet showing computation of the amount of loss per acre under each policy.)

#### Subrogation Information (If Applicable)

| 17. RESPONSIBLE PARTY | 18. ADDRESS AND PHONE NUMBER |
|---|---|
| **19. WITNESSES** | **20. ADDRESS AND PHONE NUMBER** |
| **21. LIABILITY CARRIER** | **22. AGENCY** |
| **23. ADDRESS** | **24. PHONE NUMBER** |

**25. THERE IS NO OTHER INSURANCE ON THIS CROP, EXCEPT: (INSURANCE COMPANY)**

(Include any applicable reports, such as fire department, policy reports, ect.)

#### Loss Information

| | | | |
|---|---|---|---|
| A | Date of Loss: | | |
| B | Cause of Transit Loss | | |
| C | Location: | | |
| D | Amount of crop lost in transit | D | |
| E | Average yield per acre | E | |
| F | D / E (total number of acres damaged 100%) | F | |
| G | Insured value per acre | G | |
| H | Payable Loss (F X G) | H | |
| | | | |

If subrogation is necessary, complete subrogation information listed above.

I accept the agreed loss, subject to policy provisions, for damage to my insured crops. I declare that the facts stated are true and I understand that this worksheet and supporting papers are subject to audit and approval by the company.

| 26. INSURED'S SIGNATURE | DATE |
|---|---|
| **27. ADJUSTER'S SIGNATURE** | **CODE NUMBER** |

HA-5019 (01-09)          Page 1 of 1

---

33

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 33 of 112
CONFIDENTIAL
FFIC 0773


# VANDALISM & MALICIOUS MISCHIEF

If included in your state's Special Provisions, coverage is provided for willful and malicious damage to or destruction of growing farm fields listed on the Schedule of Insurance.

1. The company will be liable for the entire amount specified in the declaration and not exceeding the actual cash value.

2. See State Specific Special Provisions for coverage expiration date.

3. Deductible endorsements to the hail policy do not apply.



RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Fact Sheet**

| 1. TO: |
|---|
| RCIS |

**2. SUBJECT MATTER**

Vandalism

| 3. INSURED'S NAME | | 4. POLICY NUMBER |
|---|---|---|
| Joe Farmer | | 15-090-55X555 |

| 5. CROP | 6. UNIT(S) | 7. CROP YEAR |
|---|---|---|
| Corn | | 201X |

**8. COMMENTS:**

Line#1 - This is a 92.5 acre field. The southwest corner of the field was damaged.

The insured discovered that the neighbor kids decided to make a maze in this corn field. He found the neighbors lawn mower and weed wacker in the back of the field.

It was determined that 2 acres were damaged. Damage was determined by wheel measurements.

| 9. ADJUSTER'S SIGNATURE | 10. CODE NUMBER | 11. DATE |
|---|---|---|
| I.M. Adjuster | 015-555 | mm/dd/yy |

MP-7000 (02-09)   Page ___ of ___


## Subrogation

**Subrogation**  RCIS has the right to collect from the responsible party as well as issue a loss payment to the insured without a delay.

It is up to the adjusters to confirm if subrogation is a possibility and that all subrogation procedures are followed.  If you are unsure about a potential subrogation, contact your ACS and ask for their recommendation.

The purpose of subrogation is to make the person (or insurance carrier) who is at fault for a loss, pay for that loss.  If RCIS paid a claim for which it's insured is not responsible, then RCIS should be reimbursed by that person or their insurance company.  If the liable person has insurance coverage, that insurance carrier should be responsible.  If the liable person does not have insurance coverage, he/she may be held liable.

There are two options the insured has when subrogation is a possibility.  The first option is to defer the claim and let the insured try to collect for the loss themselves from the responsible party.  The other option is for RCIS to pay the claim, which is limited to the liability per acre.

**The Subrogation Receipt is required for all Fire, Transit and Vandalism Claims.  If not applicable (cause of loss was lightning or other natural cause(s)), a detailed Fact Sheet explaining the reason(s) must be attached to the claim.**

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 36 of 112
**CONFIDENTIAL**

RCIS 0776

36


When subrogation applies, the following information must be attached to the claim package:

1. A Fact Sheet that includes:

   • A loss description, a descriptive map of the destruction, the method used to measure and calculate the acres destroyed and if subrogation is possible, the responsible party names, addresses, insurance information, and phone numbers.

   • Determined value of the crop at the time of the loss including;

      – The yield potential at the time of loss

      – The price per bushel at the time of the loss based on the contract price of the crop or; the local market price

2. Crop-Hail Loss Adjustment – Complete Subrogation information on Transit Worksheet (HA-5019 1-09), Fire Worksheet (HA-5018 2-10), or Fact Sheet for Vandalism claims.

3. Subrogation Receipt (NCIS 7004 -'67) signed by the insured. This form is required for all Fire, Transit and Vandalism claims.

4. Police, sheriff or other reports available.

5. For a fire loss, a description of how the fire started.

   • If cause was not insured or act of nature, a Subrogation Receipt must be completed and signed.

   • If cause was an act of nature (lightning) subrogation does not apply. (Must explain the reason(s) a Subrogation Receipt was not signed and in the claim package.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 37 of 112
**CONFIDENTIAL**

37



## SUBROGATION RECEIPT

*Know All Men By These Presents:*

*That,* In consideration of the sum of _____ Dollars,

($ _____ ), paid to the Undersigned by the _____ ,

hereinafter referred to as Insurer, under Policy No. _____ , in full settlement of all claims and demands

by reason of loss which occurred on _____ , to _____

(Automobile, Building, Stock, etc.)

the Undersigned hereby assign, set over, transfer and subrogate to the said Insurer, all the rights, claims, interest, choses or things in action to the extent of the amount paid as aforesaid, which the Undersigned may have against any person, persons, or corporation, who may be liable, or hereafter adjudged liable for the loss or damage aforesaid, and hereby authorize and do empower the said Insured to sue, compromise, or settle in the name of the Undersigned or otherwise, and the said Insurer is hereby fully substituted in the place of the Undersigned and subrogated to all rights in the premises to the amount so paid.

The Undersigned Warrants that no settlement has been made with the wrongdoer for the aforesaid loss or damage.

It is expressly stipulated that any action taken by the said Insurer shall be without charge or cost to the Undersigned.

*In Witness Whereof,* the hand and seal of the Undersigned is set hereunto this _____ day of

_____ , 19 ____ .

Witness: _____    _____ L.S.
                                                          Signature

Address: _____    Address: _____

Witness: _____    _____ L.S.
                                                          Signature

Address: _____    Address: _____

NCIA 7004 '67

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 38 of 112

**CONFIDENTIAL**



# 2012 Crop - Hail Loss Adjustment Manual

## DEFERRAL GUIDELINES

A policy item must be deferred if the loss cannot be determined by using the loss instructions set forth by National Crop Insurance Services. This may include:

1. Small grains damaged after jointing and before heading

2. Severe bruising to the plant (stock, stem, ear)

3. Excessive cut-offs in beans

4. Early hail damage to fruit

5. Insured's refusal to sign does not signify a deferred claim. It is a Snagged Claim and the adjuster will fill out the fact sheet documenting the reason for the Snag. Contact the ACS for assistance.

6. All Claims should be closed or deferred when finished with the inspection and uploaded that evening to be processed.

7. At no time should dollar amounts be discussed.

8. Deferred Line percentages should not be discussed.

9. Never instruct an insured to call if he wants us to come back and look at a closed claim later in the season. The re-inspection process must be followed in these instances.

## DEFERRED CLAIMS

 If an adjuster defers a crop(s) on a claim, enter a deferred loss estimate amount in the Estimated Deferred Loss Amt field. Determine the Estimate of Deferred Loss Amount:

1. Multiply: Acres x IPA x Estimated Loss Percent (%) = Estimated Loss Dollars.

2. Estimated Deferred Loss – Fill out the High Dollar / Deferred Estimator Worksheet. This determines both High Dollar and Deferred Loss Amount.

3. Download from Claims Admin. Site.

| ACTUAL "PROCESS" LOSS AMOUNT | | | | | | | | $15,500 | |
| ESTIMATED "DEFERRED" LOSS AMOUNT | | | | | | | | $81,700 | |
| ESITMATED TOTAL LOSS AMOUNT | | | | | | | | $97,300 | |

| Hail Line Item | A Crop | B Claim Status | C Optional Provision (Basic, DXS10, ETC.) | D Acres on Line Item | E Insurance Per Acre (IPA) | F Net % of Hail % Loss / Estimate | | | G Actual "Process" Loss Payment | H Estimated "Deferred" Loss Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Corn | DEFERRED | Basic | 100.0 | $500 | 25.0% | | | $0 | $12,500 |
| 2.0 | Corn | DEFERRED | Basic | 240.0 | $500 | 33.0% | | | $0 | $39,600 |
| 3.0 | Corn | PROCESS | Basic | 240.0 | $500 | 13.0% | | | $15,600 | $0 |
| 4.0 | Corn | DEFERRED | Basic | 160.0 | $500 | 37.0% | | | $0 | $29,600 |

HPP High Dollar / Deferred Estimator

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 39 of 112

CONFIDENTIAL

39



# 2012 Crop - Hail Loss Adjustment Manual

## Deferral Guidelines

1. Fill out the worksheet for every claim, email to your supervisor, scan into the claim and put a copy in the HPP Loss File.

| ACTUAL "TO PRODUCTION" LOSS AMOUNT | $43,573 |
|---|---|
| ESTIMATED "DEFERRED" LOSS AMOUNT | $58,965 |
| ESTIMATED TOTAL LOSS AMOUNT | $102,538 |

The adjuster will get a copy of the insured's application from the agent to fill out the information below. This must be done to determine two things: (1) Possible High Dollar Claim, (2.) Deferred Estimate of Loss. A copy will be left in the Claim File Folder, and a copy will be emailed to the ACS and RCIS.

FILLING OUT THE WORKSHEET: This must be done to determine the "ESTIMATE" amount the adjuster must complete before uploading the Quest Claim for processing. The adjuster will fill in each column. Column "B" is the status of the Line Item (going To Production or Deferred to look at later in the season for additional damage). Column "I" is the determined % loss if going To Production, or the estimated % of loss if Line Item is Deferred. Column "J" is the trigger for a total payout % for this Line Item. Column "K" is the determined loss amount for To Production Line Items and column "L" is the estimated loss amount for the Deferred Line Items. Results are totaled in lines 10, 11 and 12 above.

| Hail Line Item | A Crop | B Claim Status | APH | D Share % (100%,67%, 50% etc.) | E MP Level (50% - 85%) | F HPP Level (100,110,115 120,125,130) | G MP Price Selection | H Acres In Unit | I Hail % Loss / Estimate | | J Max % Payout | K Actual Crop Hail Loss Payment | L Estimated "Deferred" Loss Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Corn | DEFERRED | 200.00 | 100% | 70% | 125% | $4.00 | 100.0 | 16.0% | | 41.7% | FALSE | $23,040 |
| 2.0 | Corn | DEFERRED | 189.00 | 100% | 70% | 125% | $4.00 | 240.0 | 11.0% | | 41.7% | FALSE | $35,925 |
| 3.0 | Soybeans | TO PRODUCTION | 57.00 | 100% | 75% | 125% | $13.00 | 100.0 | 22.2% | | 48.0% | $20,378 | FALSE |
| 4.0 | Soybeans | TO PRODUCTION | 61.00 | 65% | 75% | 125% | $13.00 | 240.0 | 15.2% | | 48.0% | $23,195 | FALSE |

The High Dollar / Deferred Estimator can be downloaded from the Claims Admin. Site.

4. Mark the line deferred in the survey sheet and enter an explanation in the Remark field.



5. Work each damaged line to determine the loss and defer if necessary.

## IMPORTANT:

- Do **not** split a deferred line.
- The insured must sign the Proof of Loss
- Never defer if potential Snag may exist. Contact the ACS.

Case 5:13-cv-04106-CJW  Document 149-11  Filed 03/13/17  Page 40 of 112
CONFIDENTIAL


## ANNUAL ADJUSTER REVIEWS

Annual Adjuster Reviews will be done electronically. The ACS will do the review online and the adjuster will make any comments they feel is appropriate, and sign off on the review. The ACS will contact each adjuster to discuss the review.

Those losses that are assigned for a "Field Review" are determined by either the ACS or RCM. The ACS or a designated lead employee adjuster will be the lead person on the field review. The original adjuster, when requested, will also be present.

The purpose of a "Field Review" is:

1. To point out and commend good work.
2. To determine if an error was made.
3. To achieve uniformity among company adjusters.
4. To identify any additional adjuster training needed.
5. To determine proper application of industry procedures

## Field Review Guidelines

A. The reviewer is to contact the agent prior to entering the field and explain the purpose of the review. It is preferred not to have the agent or insured along on the review.

B. The reviewer shall record on new *Survey Sheets*, the results of the field review counts.

C. Make the counts in the field as near to the location of the original counts as is possible.

D. Make a sufficient number of counts to assure that the percentage of loss determined represents an average of the field.

E. If errors on the original adjustment are determined, talk with the adjuster to determine what they were evaluating to come up with the results. The reviewer will need to assure the ACS/RCM that retraining, when applicable, has been completed.

Case 5:13-cv-04106-CJW    Document 149-11    Filed 03/13/17    Page 41 of 112
**CONFIDENTIAL**


F.  Field reviews must be conducted as quickly as possible after the original adjustment so that climatic conditions and/or re-growth do not hinder an accurate review.

G.  A crop-hail "Field Review Report" is to be completed and included with the new *Survey Sheets*.  A copy of the report is given to the adjuster, ACS and RCM.

**CONFIDENTIAL**

42



**≋RCIS™**

**Electronic Submission Only**

## Crop Hail Field Review

| Insured Name | Type of Review: | Date of Loss: | Date of Adj: | Review Date: |
|---|---|---|---|---|
| | | | | |
| Policy No: | Authorized Signature Name: | Claim No: | Crop Year: | Crop: |
| | | | | |
| ACS: | RCM: | | Adj. Name: | Adj. Code: |
| | | | | |

Please use drop down arrow in each box to fill in answer:

A.   Is Staging Correct?

B.   Were the correct charts/factors used?

C.   Do the acres reflect the percent of damage?

D.   Is complete documentation included for Non-Waiver situations?

E.   Are all facts noted in the fact sheet?

F.   Were the minimum number of counts taken?

G.   Was loss uploaded or mailed on a timely basis?

H.   Were NCIS procedures followed?

I.   Was the insured or authorized representative signature verified?

J.   Was agent contacted by adjuster before and after the loss was completed?

K.   Are all signatures, reviews, and pictures included?

Date Reviewed with Adjuster: _____

Comments:

Reviewer: _____
Code No: _____
Date Completed: _____
Re-Inspection Date _____

43

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 43 of 112

**CONFIDENTIAL**

RFIG 0783



**Rural Community Insurance Services**  Employee Adjuster Performance Appraisal

| Adjuster Code: | | Employee Status | FLX | PT | REG | Employee Number: | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Employee Name: | | | | Appraisal Period: | | | | to |

\*\*Flex = less than 17.5 standard hrs/wk.    PT = 17.5 – 29 standard hrs/wk.    REG = 30+ standard hrs/wk.\*\*

**Instructions**: Supervisor, use the following rating scale to note the performance level for the applicable performance outcomes/responsibilities. Where a specific responsibility is irrelevant note N/A. Assign overall performance rating based upon the total performance rating for each major area of responsibility.

### Performance Rating

*1 = unsatisfactory - work is clearly below expectations*
*2 = marginal - work is marginally acceptable*
*3 = fully satisfactory - work consistently meets standards of acceptance*

*4 = superior - work clearly exceeds standards/expectations*
*5 = outstanding - work continuously is of exceptional quality and substantially exceeds standards*

## PERFORMANCE OUTCOMES/RESPONSIBILITIES

| EFFICIENCY | # | RATING | COMMENTS |
| --- | --- | --- | --- |
| Number of Units (MPCI)/Claims (Crop Hail) Worked | | | |
| Number of Crop Hail Claims Deferred - Crop Hail | | | |
| Suspension rate: # suspensions ÷ number of units processed - MPCI | | | |
| Turn around time: (signature to office) | | | |
| **QUALITY** | | RATING | COMMENTS |
| Audit/Field Review findings/results | | | |
| Accuracy: procedural knowledge, legible forms, documentation | | | |
| **OTHER FACTORS** | | RATING | COMMENTS |
| Availability (able to work when called) | | | |
| Flexibility (work outside of designated territory) | | | |
| **CUSTOMER RELATIONS** | | RATING | COMMENTS |
| Responsiveness to supervisor, customers, agents, co-workers | | | |
| Initiative to learn, excel, and "ask" versus "wait" | | | |
| Professionalism: (Tactfulness-agents, insureds, co-worker) | | | |
| Conflict of Interest awareness and/or prevention | | | |
| **DEVELOPMENT AREAS** | | RATING | COMMENTS |
| 1) | | | |
| 2) | | | |
| 3) | | | |
| 4) | | | |

### SUMMARY:

Type here....

| OVERALL RATING | | 1 | 2 | 3 | 4 | 5 |
| --- | --- | --- | --- | --- | --- | --- |
| Place an "X" in cell | | | | | | |

Order of signatures: (1, 2, 3)

### Signature

| (3) Employee Signature\* | | Date |
| --- | --- | --- |
| (2) ACR/CHCs Signature | | Date |
| (1) Regional Manager Signature (Type and date interim signature below) | | Date |

\* (Employee signature does not necessarily indicate agreement, but acknowledges that the appraisal has been discussed with employee)

| Employee Comments: | |
| --- | --- |

2/04


**High Dollar Claims**

There are a number of different reviews that we do to accomplish this. RCIS management evaluates the numbers and types of reviews that are being conducted and may revise these from time to time. All High Dollar Claims must be reported immediately to your ACS. RCIS procedure for Crop-Hail High Dollar Claims, paper audit and field reviews will be as follows.

| | |
|---|---|
| $100,000 - $249,999 | Requirements:<br>• 2 adjuster signatures or<br>• 1 adjuster signature PLUS ACS, RCS, RCM or QAM signature before signing proof.<br>• Pictures from all adjusters |
| $250,000 and above | Requirements:<br>• 2 adjuster signatures and<br>• QAM or Designee. Field review will be done by this individual.<br>• Pictures from all adjusters |

- Field reviews shall be performed by designated lead as specified above.

- For high dollar claims – do not have the insured sign the proof until both Adjuster and/or field reviews have been completed.

If a second adjuster is not available to sign the proof at the time you are working the loss, contact your ACS for instructions on where to leave the claim file.

AT NO TIME ARE DOLLAR AMOUNTS REVIEWED OR PROMISED TO THE INSURED.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 45 of 112
**CONFIDENTIAL**
RCIS 0785

45


## POLICY DESCRIPTIONS

The insured application and rate of premium determines if crop hail insurance coverage can be amended by selecting a state optional policy provisions. Available policies vary based on the policy state.

Please refer to the state specific Crop - Hail Rates and Rules manual for a complete description of available policy descriptions.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 46 of 112
**CONFIDENTIAL**



# 2012 Crop - Hail Loss Adjustment Manual

## Policy Provision Splits Charts

# Policy Provision Splits



Basic 1 = AR, CA, CO, IA, ID, KS, MN, MO, MT, ND, NE, NM, NV, OK, OR, SD, TX, UT, WA, WY (CLA is 0.5% for each 1% over 70%)

Basic 2 = IL, IN, MI, OH, WI (CLA is 0.25% for each 1% over 50%)

Basic 3 = CA, NM, NV, TX, UT (5% Minimum Loss, CLA is 0.5% for each 1% over 70%)

Basic 4 = AL, AZ, CT, DE, FL, GA, LA, MA, MD, MS, NJ, NC, NY, SC, VA, WV (5% Minimum Loss No CLA)

DXS5 1 = AK, IA, ID, KS, MN, MO, ND, NE, SD, WA (CLA is 0.5% for each 1% over 70%)

DXS5 2 = KY, TN (NO CLA)

DXS5 3 = IL, IN, MI, OH, WI (CLA is 0.25 for each 1% over 50%)

| Basic 1 (0 Min) | 0 | 0.1 - 70.0 | | 70.1 - 89.9 CLA (0.5) | 90+ |
| Basic 2 (0 Min) | 0 | 0.1 - 50.0 | | 50.1 - 89.9 CLA (0.25) | 90+ |

| Basic 3 (5 Min) | 0 - 4.9 | 5.0 - 70.0 (Deductible payable in full at 5%) | | 70.1 - 89.9 CLA (0.5) | 90+ |
| Basic 4 (5 Min) | 0 - 4.9 | 5.0 - 100.0 (Deductible payable in full at 5%) | | | |

| DXS5 1 | 0 - 5 | 5.1 - 24.9 (Loss - 5) x 1.25 | 25.0 - 70.0 | 70.1 - 89.9 CLA (0.5) | 90+ |
| DXS5 2 | 0 - 5 | 5.1 - 24.9 (Loss - 5) x 1.25 | 25.0 - 100.0 | | |
| DXS5 3 | 0 - 5 | 5.1 - 24.9 (Loss - 5) x 1.25 | 25.0 - 50.0 | 50.1 - 89.9 CLA (0.25) | 90+ |

| DXS10 | 0 - 10 | 10.1 - 49.9 (Loss - 10) x 1.25 | 50 - 70.0 | 70.1 - 89.9 CLA (0.5) NOT AZ | 90+ |

▼ DXS10 - CLA DOES NOT APPLY TO ARIZONA

| DXS25 | 0 - 25 | 25.1 - 74.9 (Loss - 25) x 1.5 | 75.0 - 100.0 |

| XS10 | 0 - 10 | 10.1 - 100 (Payable with Deductible, Max Pay of 90%) |

| XS15 | 0 - 15 | 15.1 - 100 (Payable with Deductible, Max Pay of 85%) |

| XS5P | 0 - 5 | 5.1 - 85.0 | 85.1 - 94.9 Add Additional 1% | 95+ |

| XS10IP | 0 - 10 | 10.1 - 70 | 70.1 - 89.9 Add Additional 1% | 90+ |

| XS15IP | 0 - 15 | 15.1 - 70 | 70.1 - 87.9 Add Additional 1.5% | 88+ |

| XS20IP | 0 - 20 | 20.1+ (Loss - 20) x 1.25 |

| Yellow | = No payable loss |
| Orange | = Payable with deductible times applicable factor |
| Green | = Payable with deductible |
| Pink | = Payable with minimum |
| Gray | = Increasing payment (see policy descriptions) |
| Blue | = Payable without deductible - no factor applies |
| White | = Payable without deductible, but with Catastrophic Loss Award |
| Red | = Total loss |

04 - 2011

47

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 47 of 112
CONFIDENTIAL

EEIC 0787


# Policy Provision Splits



| | | |
|---|---|---|
| Yellow | = | No payable loss |
| Orange | = | Payable with deductible times applicable factor |
| Green | = | Payable with deductible |
| Pink | = | Payable with minimum |
| Gray | = | Increasing payment (see policy descriptions) |
| Blue | = | Payable without deductible - no factor applies |
| White | = | Payable without deductible, but with Catastrophic Loss Award |
| Red | = | Total loss |
| Purple | = | Payable as if Basic policy |

04 - 2011

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 48 of 112

CONFIDENTIAL

FFIC 0788



2012 Crop - Hail Loss Adjustment Manual

Policy Provision Splits Charts

# Policy Provision Splits



| BDD20 | 50% of Liability is Basic | 50% of Liability is DD20 |
| BDDB | 50% of Liability is Basic | 50% of Liability is DDB |
| BDXS-10 | 50% of Liability is Basic | 50% of Liability is DXS-10 |

| Blue | = Payable without deductible - no factor applies |
| Orange | = Payable with deductible times applicable factor |

| COMP 50 | 0 | 0.1 - 10.00 Basic Policy | 10.01 - 54.99 (Loss - 5 x 2) | 55.00 + |
| COMP 55 | 0 | 0.1 - 9.00 Basic Policy | 9.01 - 49.99 (Loss - 5 x 2.25) | 50.00 + |
| COMP 60 | 0 | 0.1 - 8.33 Basic Policy | 8.34 - 44.99 (Loss - 5 x 2.50) | 45.00 + |
| COMP 65 | 0 | 0.1 - 7.70 Basic Policy | 7.71 - 39.99 (Loss - 5 x 2.85) | 40.00 + |
| COMP 70 | 0 | 0.1 - 7.17 Basic Policy | 7.18 - 34.99 (Loss - 5 x 3.30) | 35.00 + |
| COMP 75 | 0 | 0.1 - 6.67 Basic Policy | 6.68 - 29.99 (Loss - 5 x 4) | 30.00 + |
| COMP 80 | 0 | 0.1 - 6.25 Basic Policy | 6.26 - 24.99 (Loss - 5 x 5) | 25.00 + |
| COMP 85 | 0 | 0.1 - 5.88 Basic Policy | 5.89 - 19.99 (Loss - 5 x 6.70) | 20.00 + |

| Yellow | (=) No payable loss |
| Purple | (=) Payable as if Basic policy |
| Orange | (=) Payable with deductible times applicable factor |
| Red | (=) Total loss |

04 - 2011

RCIS Claims      4 of 4      February, 2012

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 49 of 112

**CONFIDENTIAL**

FFIG 0780

49


# MANDATORY ENDORSEMENT

## Harvested Stored Grain Endorsement

- Includes a different method of payment than the Special Provisions for handling fire, transit and vandalism losses. Basis of settlement will be adjusted using the **actual cash value of grain** at the time of loss. The actual cash value is determined as the highest closing local market cash price of the insured grain within 10 days following the day of loss

- Insures transit and theft.

- Provides coverage after a crop has been harvested and put into first place of storage.

- Is secondary (not "primary") if the insured has a farm policy.

- A $50 deductible applies.

- Subrogation may apply.

**Adjuster Procedure:**

1. Determined value of the crop at the time of the loss or number of acres destroyed.
2. Complete a Fact Sheet and include:
   - A loss description, a descriptive map of the destruction, the method used to measure and calculate the loss (such as receipts for the use of a mechanical means for clean-up, labor, etc) and if subrogation is possible, the responsible party names, addresses, insurance information, and phone numbers.
3. Obtain police, sheriff or any other report available.
4. Take pictures whenever possible.
5. Scan and attach all information including the subrogation receipt (NCIS 7004 '67) if applicable, to the claim package.
6. Complete a Proof of Loss and have it signed by the insured.
7. Upload claim with all documents attached.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 50 of 112

**CONFIDENTIAL**


CROP-HAIL INSURANCE
MANDATORY ENDORSEMENT

## HARVESTED STORED GRAIN ENDORSEMENT

We cover your insurable interest in the crop(s) and acreage as listed in the Schedule of Insurance of your underlying Crop-Hail Policy, and while under the care and custody of either you or your tenant, against loss from the following named perils, subject however to special exclusions, conditions, limits of insurance, deductible and coinsurance as hereafter set forth. Note: The coverage extended through this endorsement is excess only offering coverage above and beyond that which is due you from other insurance, not to exceed the applicable amount of insurance as set forth in the Schedule of Insurance.

### PERILS INSURED AGAINST:

1.  FIRE AND LIGHTNING

2.  WINDSTORM OR HAIL, when loss to the insured grain occurs as a result of damage caused by the direct force of wind or hail to a permanent grain storage structure housing the insured grain. The structure must be sealed and secure with the floor, walls and roof consisting of either concrete, wood or metal.

3.  EXPLOSION, but excluding loss by explosion of steam boilers, alcohol stills, steam pipes or steam engines.

4.  VEHICLES OR AIRCRAFT, meaning only direct loss resulting from actual physical contact of a land vehicle or aircraft with the covered property or the building containing the covered property and direct loss by objects falling from the aircraft, but excluding loss caused by any vehicle owned or operated by you or your tenant.

5.  UPSET OR OVERTURN, meaning loss to insured grain as a result of upset or overturn of a vehicle, other than a common carrier, transporting the grain within 100 miles of the location where the insured crop is stored.

6.  SMOKE, meaning only direct loss from smoke due to a sudden, unusual and faulty operation of any heating or drying unit, but excluding loss caused by smog, agricultural smudging or industrial operations.

7.  VANDALISM OR MALICIOUS MISCHIEF, meaning only the willful and malicious damage to or destruction of the insured grain which is reported to local, county, state or federal law enforcement.

8.  THEFT, meaning any act of theft, larceny or robbery of grain, all only while under the care and custody of either you or your tenant and which is reported to local, county, state or federal law enforcement. **NOT COVERED** are mysterious disappearance, inventory shortage, embezzlement or employee dishonesty, wrongful conversion, action of rodents, birds, animal or vermin, shrinkage or unaccountable shortage, or any circumstances not involving evidence of felonious entry or trespass at the location where the insured crops are stored. Upon knowledge of loss under this peril the insured shall give notice as soon as is practicable to the Company or its authorized agent and to the policy authorities.

### SPECIAL EXCLUSIONS: Coverage does not apply to loss:

9.  Caused directly or indirectly by nuclear reaction, meaning nuclear reaction, radiation or radio-active contamination; or

10.  Resulting directly or indirectly from war or undeclared war.

11.  Stored in or being processed in public elevators or warehouses, seed houses, drying plants or manufacturing plants.

12.  Mixed or ground with another grain, product or material and/or commingled with like grain harvested from acreage not listed in the Schedule of Insurance.

**SPECIAL CONDITIONS:** The following additional conditions apply to this endorsement:

13.  Protections of Grain After Loss - The insureds, their agents, employees or assigns, shall undertake reasonable care and measures to salvage grain after loss, including safeguarding of undamaged grain to minimize further grain loss. In consideration thereof, the company will pay actual labor and other necessary cost incurred in an amount not to exceed the sums per bushel set forth below for each specific type of grain. **Provided However,** the total amount payable for salvaging of grain shall not exceed five percent of the limit of insurance applicable to the type of crop for which loss is claimed.

| Type of Grain | Amount Payable/Bushel Salvage Rate |
|---|---|
| (a) Corn | .15/bushel |
| (b) Soybeans | .25/bushel |
| (c) All other Grains | .10/ bushel |

14.  OTHER INSURANCE PROVISION: The insurance provided by the endorsement is excess over any other valid and collectible insurance. We will cover only such amount of your loss, after application of co-insurance, as may exceed the amount due you from other insurance, not to exceed the applicable amount of insurance.

15.  LIMIT OF INSURANCE: The limit of liability for this endorsement is as set forth in the Schedule of Insurance less any prior claim payments made under the crop-hail policy or endorsements thereto, whichever is less. In no event shall the company be liable for more than the amount of insurance for a specific crop as set forth in the Schedule of Insurance. Additionally, if the cash value of the crop is less than the available amount of insurance when such loss occurs, then the cash value figure will be used in the settlement of the loss.

16.  BASIS OF SETTLEMENT: All losses will be adjusted using the actual cash value of the insured grain at the time of loss. The actual cash value is determined as the highest closing local market cash price of the insured grain within ten (10) days following the day of loss. In no event, however, shall the company be liable for more than the amount of insurance for a specific crop as set forth in the Schedule of Insurance, irrespective of the actual cash value of the crop. Therefore, if a loss occurs on the insured grain, then the loss settlement will be based upon the actual cash value of the crop or the limit of liability as set forth in the Schedule of Insurance less any prior claim payment under the subject crop-hail policy or endorsements thereto, whichever is less. Additionally, the company shall be entitled to a credit for any grain salvaged.

17.  DEDUCTIBLE CLAUSE: Each claim for loss shall be adjusted individually and from the amount of each adjusted loss fifty ($50.00) dollars shall be deducted.

18.  POLICY PERIOD: Coverage becomes effective at the same time that coverage on the underlying crop-hail policy becomes effective and expires once your policy has been suspended, canceled or replaced by another crop-hail policy or your crops have been sold or delivered to a public elevator or warehouse or are no longer in the care or custody of you or your tenant.

19.  All other terms and conditions of the policy not in conflict herewith shall remain unchanged.

HA-2052A (02-09)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 51 of 112
**CONFIDENTIAL**



2025 Crop - Hail Loss Adjustment Manual

Harvested Stored Grain Endorsement



RURAL COMMUNITY INSURANCE COMPANY
**RURAL COMMUNITY INSURANCE SERVICES®**
**Fact Sheet**

**1. TO:**
Jack Supervisor

**2. SUBJECT MATTER**
Harvest Stored Grain

**3. INSURED'S NAME**
Joe Farmer

**4. POLICY NUMBER**
15-090-55X555

**5. CROP**
Wheat

**6. UNIT(S)**

**7. CROP YEAR**
201X

**8. COMMENTS:**

Contacted agent and insured and met with them at the insured's farm. We went to the spot of the accident. The ditch had water standing in it and wheat was still present in the ditch.

The farmer provided me with scale tickets to determine the average number of bushels hauled by the truck involved in the accident. He also provided me with load tickets of the bushel that were salvaged.

The tandem hauled approximately 630 bu. with 475 bu. salvaged. That gives us a loss of 155 bushels.

The highest local market cash price within 10 days following the date of the accident for wheat was $3.50. There was no price reduction on salvage grain. Accident report and pictures are attached.

```
      155    Bushels Lost
X  $3.50    Cash Price
   $542.50  Total Loss
-  $50.00   Deductible
   $492.50  Indemnity
```

Total indemnity on Proof of Loss - Line #1

**9. ADJUSTER'S SIGNATURE**
*I.M. Adjuster*
MP-7000 (02-09)

**10. CODE NUMBER**
015-555

**11. DATE**
mm/dd/yy

Page ___ of ___

RCIS Claims    3 of 3    February, 2012

52

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 52 of 112
CONFIDENTIAL
RCIS 0702


RURAL COMMUNITY INSURANCE COMPANY

**RURAL COMMUNITY INSURANCE SERVICES®**
**Crop-Hail Loss Adjustment**
**Harvested Stored Grain Worksheet**

| General Information | |
|---|---|
| 1. CLAIM NUMBER | 2. POLICY NUMBER |

| 3. INSURED NAME | | 4. TAX ID NUMBER | 5. TAX ID TYPE |
|---|---|---|---|

| 6. AGENCY NAME | CODE NUMBER | 7. LOSS PAYABLE TO ME AND: |
|---|---|---|

| 8. LEGAL DESCRIPTION | 9. CROP | 10. STAGE OF GROWTH |
|---|---|---|

| 11. DATE OF LOSS | 12. CAUSE OF LOSS (lightning, etc.) | 13. POLICY ITEM NUMBER |
|---|---|---|

| 14. TOTAL INSURED ACRES | 15. INSURED SHARE | 16. METHOD(S) OF MEASURING DESTROYED STRUCTURE |
|---|---|---|

| Subrogation Information (if applicable) | |
|---|---|
| 17. RESPONSIBLE PARTY | 18. ADDRESS AND PHONE NUMBER |
| 19. WITNESSES | 20. ADDRESS AND PHONE NUMBER |
| 21. LIABILITY CARRIER | 22. AGENCY |
| 23. ADDRESS | 24. PHONE NUMBER |

25. There is NO OTHER INSURANCE on this crop, EXCEPT: (Insurance Company)
(Include any applicable reports, such as fire department, policy reports, etc.)

| | Specific Policy and Loss Information | |
|---|---|---|
| A | Bushels Totally Destroyed / Non-recoverable | A |
| B | Cash Value per Bushel (The highest daily avg 10 days following occurrence at local elevator). | B |
| C | Gross Value of Destroyed Grain (A X B) | C |
| D | Total Salvaged Bushels (if applicable) | D |
| E | Gross Value of Salvaged Grain (D X B) | E |
| F | Actual Salvage Per Bu. (Amount Received from Elevator per BU.) | F |
| G | Amount Received for Salvaged Grain (D X F) | G |
| H | Net Loss on Salvaged Grain (E - G) | H |
| I | Total Loss of Damaged Grain (H + C) | I |
| J | Deductible ($50) | J |
| K | Loss Payable (I - J) | K |
| L | Total Salvaged Bushels (Item D) | L |
| M | Salvage Rates (Corn - 0.15; Soybeans - 0.25; Other Grains - 0.10) | M |
| N | Maximum Salvage Expense (L X M) | N |
| O | Actual Salvage Expense to Protect Grain | O |
| P | Salvage Payment (Lesser of N or O) | P |
| Q | TOTAL PAYMENT (K + P) | Q |

I accept the agreed loss, subject to policy provisions, for damage to my insured crops. I declare that the facts stated are true and I understand that this worksheet and supporting papers are subject to audit and approval by the company.

| 26. INSURED'S SIGNATURE | | DATE |
|---|---|---|

| 27. ADJUSTER'S SIGNATURE | CODE NUMBER | DATE |
|---|---|---|

HA-5020 (01-10)                    Page 1 of 1


## OPTIONAL ENDORSEMENTS

### Grain Fire Only Endorsement

Review Policy information as the Grain Fire is in addition to fire coverage covered under the policy.

New for 2011, Grain Fire Only Endorsement will pay basic coverage with no minimum or CLA provisions. It will display on its own line with a policy form code of GRFIRE.

Grain Fire can be a policy on its own or it can be on a policy with hail.

Calculation will be: **ACRES x IPA x LOSS% = PAYABLE LOSS**

If the IPA is greater than the actual value of the crop we will use the actual cash value in our loss adjustment. You will need to adjust acres so payment is not greater than crop value.

Subrogation may apply.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For a complete layout of the details of this endorsement please refer to the full description that follows the example.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 54 of 112
**CONFIDENTIAL**

RCIS 0704

54



A 100 acre field has 25 acres destroyed by fire. Here is what the screen looks like prior to entering the grain fire loss.



Here is what the screen looks like after entering the loss on the 25 acres destroyed by fire.



CONFIDENTIAL

EFIC 0705


**CROP-HAIL INSURANCE
GRAIN FIRE ENDORSEMENT**

### GRAIN FIRE ONLY

This endorsement amends your Crop Hail policy for all lines shown on the schedule of insurance with the policy form description of GRFIRE (Grain Fire coverage). In consideration of the premium charged the coverage provided for the GRFIRE lines are amended as follows:

**PERILS INSURED AGAINST:** The perils insured against section of the special provisions is deleted in its entirety and is replaced with:

We will insure for direct loss to the crop(s) described on the Schedule of Insurance for the following causes of loss:
1) **Fire and Lightning:** We cover crop loss by fire and lightning before harvest and while crop(s) is (are) still in the harvester;
2) **Fire Department Service Charge:** We will pay up to $250 for your obligation assumed by contract or agreement for the fire department charges incurred when fire department is called to save or protect your unharvested covered crops(s);

**EXCLUSIONS** Coverage will not apply:
1) While the harvested crop is being transported to the first place of storage;
2) For insured crop loss caused by intentional, dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives, or anyone to whom acted upon your instructions;
3) For fire damage to an insured crop that was planted into current year crop residue.
4) To the crop after it has reached its first place of storage;

**INSURANCE PERIOD**
Inception and expiration of the coverage provided by this endorsement shall be in accordance with the provisions of the underlying policy.

**LOSS PAYMENT**
Payable Indemnity
1) The amount payable per acre will be the liability on the date of the loss multiplied by the acres destroyed by a covered peril.
2) However, the amount payable may not exceed the actual cash value of the portion of the crop destroyed by a covered peril.

**UNDERWRITING**
Application for coverage under this endorsement must accompany the Crop-Hail policy application.

HA-2286 (01-11)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 56 of 112
**CONFIDENTIAL**

56



## 2012 Crop - Hail Loss Adjustment Manual

### Optional Endorsements

Crop-Hail Insurance
Optional Endorsement

### Sugar Beet Wind, Freeze and Soil Crusting Coverage Endorsement

In consideration of the additional premium this endorsement amends the General and Special Provisions of your policy as follows:

**Coverage:** We cover loss to Insured Sugar Beets for direct loss caused by:
1. Wind
2. Freeze; and
3. Soil Crusting.

**Exclusions:** We do not cover:
1. Loss caused, either directly or indirectly, by plant disease, insect and chemical damage;
2. Wind, freeze or crusting occurring prior to the inception of coverage under this endorsement; and
3. Wind, freeze or crusting occurring after the expiration of coverage under this endorsement.

**Insurance Period:** Coverage attaches on the later of:
1. At the time of initial planting of the insured Sugar Beets, or
2. April 1st.

Coverage terminates at 12:01 a.m. on October 1 of the current crop year.

**Deductible:** We will not cover any loss under this endorsement until the percentage of loss due to an insured cause of loss exceeds five percent (5%) on a minimum of five acres of Insured Sugar Beets. The percentage per acre then payable will be the percent of loss in excess of five percent (5%). The percentage per acre payable is the percent in excess of 5% multiplied by 1.25. Once the percentage of loss exceeds 25% the 5% deductible and 1.25 multiplier will no longer apply.

**Limits of Insurance:** The most we will pay for loss under this endorsement is the lesser of:
A. The Limit of Insurance per acre as shown in the Schedule of Insurance; or
B. The percentage of the Limit of Insurance per acre determined to be in effect at the time of the loss from the Calendar Date Table below.

### Calendar Date Table

Regardless of when coverage attaches, the Limit of Insurance and the Limit of Insurance per acre will be determined at the time of loss by the calendar date and the crop value stage. Five crop value stages make up the entire insurance period and the length of each stage is listed by the calendar dates listed below. Stage 1 begins on April 1st and ends at 12:01 a.m. on the first day of the next stage. The limit of insurance for each stage is determined by multiplying the Limit of Insurance per acre shown in the Schedule of Insurance by the following maximum percentage by stage shown in the table below.

| Calendar Date | Stage | Liability Enforce |
|---|---|---|
| April 1 - April 28 | stage 1 | 33.3% |
| April 29 - May 25 | stage 2 | 66.7% |
| May 26- August 15 | stage 3 | 100.0% |
| August 16- September 10 | stage 4 | 66.7% |
| September 11-September 30 | stage 5 | 33.3% |

HA-2292 (1-11)                    Page 1 of 1


## Green Beans, Sweet Corn and Peas - Reject Coverage

This insurance covers loss incurred when the above crops are rejected for canning purposes because of spoilage as a direct result of hail damage.

It does not cover spoilage due to "wet" weather or other factors.

The amount payable under this endorsement shall not exceed 75% of the amount of insurance.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For a complete layout of the details of this endorsement please refer to the full description on the next page.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 59 of 112
**CONFIDENTIAL**

59


CROP-HAIL INSURANCE
OPTIONAL ENDORSEMENT

## GREEN BEANS FOR CANNING - REJECT COVERAGE

## Minnesota

In consideration of the additional premium at which this insurance is written and subject to all other considerations of this policy, application and endorsements attached, this insurance is extended to cover loss when canning green beans are rejected for canning purposes because of spoilage as a direct result of hail damage.

The amount payable under this endorsement due to rejection of green beans for canning insured under this policy will be 75% of the amount of insurance shown on the application. In no event, however, will the total payment for loss under this endorsement plus the loss under the policy exceed the amount of insurance shown on the application.

## SPECIAL PROVISIONS

ACRES INSURED: It is warranted that the Insured will insure all acreage of canning green beans in which he has an insurable interest and this Company will not be liable for more than the proportion of loss that the acreage insured bears to the total acreage of canning green beans in which the Insured has an insurable interest during the current season.

NOTICE OF LOSS: For purposes of coverage provided by this endorsement the Insured will notify the Company within 24 hours of receipt of notice that the insured crop has been rejected.

EXCLUSION: This insurance does not insure loss due to rejection of the crop by the canning company for reasons other than spoilage as a direct result of hail damage.

LOSS ADJUSTMENT: When hail damage occurs, but the canning crop is not rejected, the loss will be determined by using National Crop Insurance Services (NCIS) loss adjusting procedures for the insured crop.

SALVAGE: If the crop is rejected, the value of the crop, if any, for ensilage and/or livestock feed will be considered as salvage when loss adjustment is made.

HA-2048 MN (01-99)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 60 of 112
**CONFIDENTIAL**


Crop-Hail Insurance
Optional Endorsement

## FRESH MARKET SWEET CORN ENDORSEMENT

**Coverage will be available only under the _basic_ hail policy.**

In consideration of 50% additional premium to the standard sweet corn rate charged, this insurance is extended to cover hail damage to sweet corn grown for resale as sweet corn. This loss adjustment shall be amended as follows:

**DIRECT DAMAGE:** Any ear(s) damaged by hail to the extent that such ear(s) cannot be used for fresh market Sweet Corn shall constitute total destruction as respects to the percentage of loss.

**INDIRECT DAMAGE:** The Company shall not be liable for loss or damage to stalks, leaves or tassels unless such loss or damage shall affect the product hereof, and then only to the extent that the product thereof has been affected, as determined by NCIS corn procedures.

**CATASTROPHE LOSS AWARD:** When a loss exceeds 25% on any acre of the insured crop, an additional amount of seven tenths of the percent of loss that is in excess of 25% shall be paid. However,

The total amount payable per acre shall not exceed the amount of insurance applying at the time of loss.

**NOTICE OF LOSS:** For purposes of coverage provided by this endorsement the insured shall notify the insurance company within 48 hours after crop has been damaged by hail.

**SALVAGE:** If the crop is rejected for reason of direct hail damage, the value of the Fresh Market Sweet Corn for ensilage and/or livestock feed shall be considered as salvage when loss adjustment is made.

**IT IS FURTHER UNDERSTOOD AND AGREED** that the insured shall upon request of the Company, furnish copies or extracts of all inspection reports concerning the insured crops which have been submitted to the insured during the growing season.

**COVERAGE UNDER THIS SPECIAL HAIL ENDORSEMENT SHALL EXPIRE 90 DAYS AFTER THE SWEET CORN IS PLANTED.**

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 61 of 112
**CONFIDENTIAL**
RFIC 0801

61


CROP-HAIL INSURANCE
OPTIONAL ENDORSEMENT

## SWEET CORN FOR CANNING - REJECT COVERAGE

## Minnesota

In consideration of the additional premium at which this insurance is written and subject to all other considerations of this policy, application and endorsements attached, this insurance is extended to cover loss when canning corn is rejected for canning purposes because of spoilage as a direct result of hail damage.

The amount payable under this endorsement due to rejection of sweet corn for canning insured under this policy will be 75% of the amount of insurance shown on the application. In no event, however, will the total payment for loss under this endorsement plus the loss under the policy exceed the amount of insurance shown on the application.

# SPECIAL PROVISIONS

ACRES INSURED: It is warranted that the Insured will insure all acreage of canning corn in which he has an insurable interest and this Company will not be liable for more than the proportion of loss that the acreage insured bears to the total acreage of canning corn in which the Insured has an insurable interest during the current season.

NOTICE OF LOSS: For purposes of coverage provided by this endorsement the Insured will notify the Company within 24 hours of receipt of notice that the insured crop has been rejected.

EXCLUSION: This insurance does not insure loss due to rejection of the crop by the canning company for reasons other than spoilage as a direct result of hail damage.

LOSS ADJUSTMENT: When hail damage occurs, but the canning crop is not rejected, the loss will be determined by using National Crop Insurance Services (NCIS) loss adjusting procedures for the insured crop.

SALVAGE: If the crop is rejected, the value of the crop, if any, for ensilage and/or livestock feed will be considered as salvage when loss adjustment is made.

HA-2049 MN (01-99)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 62 of 112
**CONFIDENTIAL**


CROP-HAIL INSURANCE
OPTIONAL ENDORSEMENT

# PEAS FOR CANNING - REJECT COVERAGE

## Minnesota

In consideration of the additional premium at which this insurance is written and subject to all other considerations of this policy, application and endorsements attached, this insurance is extended to cover loss when canning peas are rejected for canning purposes because of spoilage as a direct result of hail damage.

The amount payable under this endorsement due to rejection of peas for canning insured under this policy will be 75% of the amount of insurance shown on the application. In no event, however, will the total payment for loss under this endorsement plus the loss under the policy exceed the amount of insurance shown on the application.

## SPECIAL PROVISIONS

ACRES INSURED: It is warranted that the Insured will insure all acreage of canning peas in which he has an insurable interest and this Company will not be liable for more than the proportion of loss that the acreage insured bears to the total acreage of canning peas in which the Insured has an insurable interest during the current season.

NOTICE OF LOSS: For purposes of coverage provided by this endorsement the Insured will notify the Company within 24 hours of receipt of notice that the insured crop has been rejected.

EXCLUSION: This insurance does not insure loss due to rejection of the crop by the canning company for reasons other than spoilage as a direct result of hail damage.

LOSS ADJUSTMENT: When hail damage occurs, but the canning crop is not rejected, the loss will be determined by using National Crop Insurance Services (NCIS) loss adjusting procedures for the insured crop.

SALVAGE: If the crop is rejected, the value of the crop, if any, for ensilage and/or livestock feed will be considered as salvage when loss adjustment is made.

HA-2050 MN (01-99)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 63 of 112
CONFIDENTIAL


## Green Snap Adjusting Procedures

**Green Snap Definition: New for 2012**

- Defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects, disease, chemical damage or any cause other than the cause specified in this endorsement.

Emergence through 10 leaf stage of development

- Green snap is counted in with Stand Reduction

11 leaf stage of development through Maturity

- Count 50 consecutive plants, step over 3 to 5 rows (Stair Step Method). Repeat this process until 250 plants have been evaluated.

- Plants must be detached below the ear to be considered for Green Snap.

- Determine the average number of Green Snap plants for a 100 plant sample (Green Snap plants divided by 250 = Average Green Snap loss % for 100 plants)

- Take counts in a proportional manner until the Line Item acres have been evaluated.

## Green Snap Extra Harvested Expense (EHE) Adjusting Procedure

**Green Snap Extra Harvested Expense (EHE) Definition:**

- Defined as stalks that are blown down such that the angle between the stalk and the ground is less than 20 degrees and the distance from the shank end of the highest ear on the stalk to the ground is less than 12 inches.

Adjustment Procedures

- Count 50 consecutive plants, step over 3 to 5 rows (Stair Step Method). Repeat this process until 250 plants have been evaluated.

- Determine the average number of Green Snap EHE plants for a 100 plant sample (Green Snap EHE plants divided by 250 = Average Green Snap EHE % of loss for 100 plants).

- A minimum of 20% of the plants in the test must meet the EHE qualification (See requirements) before those acres can be included for EHE consideration.

Case 5:13-cv-04106-CJW    Document 149-11    Filed 03/13/17    Page 64 of 112
**CONFIDENTIAL**


## Green Snap Corn Wind Endorsement (HA-2281)

Must be in excess of 10% loss to be payable.

Deductible disappears at a 50% loss.

Deductible is calculated on the worksheet, not on the proof.

See endorsement for expiration date.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For a complete layout of the details of this endorsement please refer to the full description on the next page.



Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 65 of 112
**CONFIDENTIAL**
RCIS 0805


# Green Snap Corn Wind Endorsement (HA-2281)

**CROP-HAIL INSURANCE**

### GREEN SNAP CORN WIND
### OPTIONAL ENDORSEMENT

In consideration of the additional premium your coverage is amended to include Green Snap Wind Loss to corn, popcorn, seed corn and sweet corn.

Coverage under this endorsement is reduced by any payments made under the underlying Crop-Hail policy and cannot exceed the Limit of Liability as stated on the Schedule of Insurance.

For the crop(s) you have selected to apply this endorsement to, it will apply to all acres on the underlying Crop Hail policy.

**INSURANCE PERIOD**
Coverage under this endorsement expires the earlier of harvest of the crop or 12:01 a.m. on September 15th of the current crop season.

**PERIL INSURED**
GREEN SNAP WIND LOSS is defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects, disease, chemical damage or any cause other than the cause specified in this endorsement.

**AMOUNT PAYABLE**
The amount payable for green snap coverage is on a policy line item basis and will be as follows:
EXCESS OVER 10 PERCENT LOSS – DISAPPEARING AT 50 PERCENT – DXS10. We will not cover any loss until the percentage of loss per acre exceeds 10 percent. The loss payment shall be that percent of loss in excess of 10.0% multiplied by 1.25. Once the percentage of loss equals or exceeds 50 percent this provision will no longer apply.

HA-2281 (01-12)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 66 of 112
CONFIDENTIAL


## Green Snap Extra Harvested Expense Corn Wind Endorsement (HA-2280)

This endorsement provides coverage for corn blow down and green snap wind.

All corn lines on the policy include this coverage if endorsement is added.

To qualify for Green Snap Plus coverage, you must first confirm the 20/20 rule is met. (20 acres or 20% of the field must be damaged.)

See endorsement for expiration date.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For an example of a complete layout of the details of this endorsement, please refer to the full description on the next page.



# Green Snap Extra Harvest Expense (EHE) Corn Wind Endorsement (HA-2280)

### GREEN SNAP WITH EXTRA HARVEST EXPENSE OPTIONAL ENDORSEMENT

In consideration of the additional premium your coverage is amended to include Green Snap Wind Loss to corn. popcorn. seed corn and sweet corn.

Coverage under this endorsement is reduced by any payments made under the underlying Crop-Hail policy and cannot exceed the Limit of Liability as stated on the Schedule of Insurance.

For the crop(s) you have selected to apply this endorsement to. it will apply to all acres on the underlying Crop Hail policy.

### INSURANCE PERIOD
Coverage under this endorsement expires the earlier of harvest of the crop or 12:01 a.m. on October 15th of the current crop season.

### PERIL INSURED
GREEN SNAP WIND LOSS is defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects. disease. chemical damage or any cause other than the cause specified in this endorsement.

### AMOUNT PAYABLE
The amount payable for green snap coverage is on a policy line item basis and will be as follows:
EXCESS OVER 10 PERCENT LOSS – DISAPPEARING AT 50 PERCENT – DXS10. We will not cover any loss until the percentage of loss per acre exceeds 10 percent. The loss payment shall be that percent of loss in excess of 10.0% multiplied by 1.25. Once the percentage of loss equals or exceeds 50 percent this provision will no longer apply.

### EXTRA HARVEST EXPENSE
An amount will be paid for Extra Harvest Expense if the stalks are blown down such that the angle between the stalk and the ground is less than 20 degrees and the distance from the shank end of the highest ear on the stalk to the ground is less than 12 inches.

### AMOUNT PAYABLE FOR EXTRA HARVEST EXPENSE
The company shall have no liability for any acre(s) blown down from windstorm until the acres which are down are the lesser of (1) 20% of the field or (2) 20 acres. and then the Company shall then have liability for 8.0% of the insurance per acre times the acres down in excess of the lesser of (1) 20% of the field or (2) 20 acres times 1.40. except that the total paid on the field shall not exceed 8.0% of the insurance on the acres blown down.

HA-2280 (01-12)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 68 of 112
**CONFIDENTIAL**


# Green Snap Extra Harvested Expense (EHE) Worksheet Instructions

The information found in the worksheet heading is standard for most claims. Green Snap EHE is worked on a per field basis and that is the reason for total acres in the field as well as line item acres being recorded. Make sure that the acres for the individual fields do not exceed the acres for the line item.

## Section 1 – Part A

This part calculates the dollar payment for the claim. Enter only the acres down in the field being inspected. The deductible for that field is applied to arrive at the gross damaged acres. The next line of the worksheet is the formula to arrive at the dollar loss. Gross damaged acres $\times$ 1.4 (disappearing deductible factor) = gross/net factor $\times$ insurance per acre $\times$ .08 (percentage of payment guaranteed by the endorsement) = dollars of the gross loss amount.

## Section 1 – Part B

This part is included to guarantee that the maximum payment is not exceeded. The maximum payment for any claim is 8% of the liability for the field.

## Section 1 – Payable equals the lesser of Part A or Part B

The last line in this section states that the payment will be the lesser of Part A (Gross Loss Amount) or Part B (Maximum Payable).

Make sure that the location of the down acres is recorded on the map and that the Fact Sheet on this worksheet is completed.

The examples at the bottom of the page are good explanations of how to complete Section 1 – Part A.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 69 of 112
**CONFIDENTIAL**



RURAL COMMUNITY INSURANCE COMPANY

**RURAL COMMUNITY INSURANCE SERVICES®**

**Green Snap Plus Formula**

| 1. POLICY NUMBER | | 2. LOSS NUMBER | |
|---|---|---|---|
| 3. INSURED NAME | | 4. AGENCY NAME | |
| 5. LINE ITEM | 6. ACRES (Total Acres in FIELD) | | 7. IPA |
| 8. LINE ITEM ACRES | | | |

## SECTION 1

**9. PART A**

_____ - _____ = _____
Acres Down (in field) - Deductible = Gross Damaged Acres
  Lesser of: 20 acres or
  20% of Total Acres in FIELD

_____ X 1.4 = | _____ Net* X _____ X .08 = $ _____
Gross Damaged Acres X Factor = Gross    Net*  X  IPA  X .08 = Gross Loss Amount
                                    * Cannot Exceed Acres Down

**10. PART B**

_____ X _____ X .08 = $ _____
Total Acres in Field X IPA X .08 = Maximum Payable

| QTR | SEC | TWP | RGE |
|---|---|---|---|
| | | | |

**11. Payable equals the lesser of Part A (Gross Loss Amount) or Part B (Maximum Payable)**

Amount Payable = _____    $ _____

## SECTION 2

**12. FACT SHEET: Please explain how acres were determined:**

_____

_____

_____

**13. EXAMPLES:**

**Example #1** - Item A:  Total Line Item Acres = 100    TOTAL ACRES IN FIELD = 58    Acres Down (in field) = 18
18 - 11.6 x 1.4 = 9 | 9 x 360 x .08 = $259
Acres Down - Deductible x Factor = Gross Net* x IPA x .08 = Gross Loss Amount
(in field)   Lesser of:                                                  Amount
             20 acres or 20% of
             Total Acres in Field
                              * Cannot Exceed Acres Down

**Example #2** - Item A:  Total Line Item Acres = 100    TOTAL ACRES IN FIELD = 100    Acres Down (in field) = 100
100 - 20 x 1.4 = 112 | 100 x 360 x .08 = $2,880
Acres Down - Deductible x Factor = Gross Net* x IPA x .08 = Gross Loss Amount
(in field)   Lesser of:                                                  Amount
             20 acres or 20% of
             Total Acres in Field
                              * Cannot Exceed Acres Down

| 14. INSURED'S SIGNATURE | DATE |
|---|---|
| | |
| 15. ADJUSTER'S SIGNATURE | DATE |
| | |

HA-5017 (02-08)    Page ____ of ____

Case 5:13-cv-04106-CJW  Document 149-11  Filed 03/13/17  Page 70 of 112
CONFIDENTIAL
EFIG 0810

70



# Green Snap Policy Match Corn Wind Endorsement

Special Green Snap Corn Wind Endorsement pays exactly the same as hail based on the policy form code selected on the line.

For example: XS10IP – 10% deductible with an increasing payment of one percent for each percent of loss in excess of 70.0%.

The payable loss on a 20 percent special green snap loss would pay the same as it would for a 20 percent hail loss:

> 20% loss - 10.00 deductible = 10% loss payable

If the loss were to exceed 70.0%, the provision states to apply an increasing payment of 1.0% for each percent over 70%. This provision would also apply to Green Snap Special the same as if the loss were hail.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For an example of a complete layout of the details of this endorsement, please refer to the full description on the next page.

## Green Snap Policy Match Wind Endorsement Survey Sheet

In the Quest Corn Survey Sheet for Green Snap Policy Match, you will see a Spec GS Hail Loss % column (M) and Spec GS Wind Loss% column (N). These are adjuster entry fields.

The adjuster must enter their best estimate of what percent of the loss applies to Hail in column M, and what percent of the loss applies to Wind in column N.

**NOTE:** Programming is being done to delete this process for 2012. If the programming is in place, the columns at the right of the screen shot will be deleted and no further action is needed on the adjuster's part.

Here is an example of a correctly completed survey sheet for special green snap.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 71 of 112
**CONFIDENTIAL**



# 2012 Crop - Hail Loss Adjustment Manual

## Optional Endorsements



Test 1= 3 green snap, no hail, making it 100% green snap.
(3/3=100%)

T 2= 5 greensnap, 5 hail, making it 50% green snap 50% hail.
(5/10=50%)

T 3= 10 greensnap, 20 hail, making it 33% greensnap, 67% hail.
(10/30=33%)

T 4= 26 greensnap, 24 hail making it 52% greensnap, 48% hail.
(26/50=52%)

T5= 5 greensnap, 15 hail making it 25% greensnap, 75% hail.
(5/20=25%)

T6= 45 greensnap, 15 hail making it 75% greensnap, 25% hail.
(45/60=75%)

T7= 6 greensnap, 3 hail making it 66% greensnap, 34% hail.
(6/9=66%)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 72 of 112
CONFIDENTIAL



## 2012 Crop - Hail Loss Adjustment Manual

### Optional Endorsements

# Green Snap Policy Match Corn Wind Endorsement (HA-1069)

**CROP-HAIL INSURANCE**

### GREEN SNAP POLICY MATCH CORN WIND
### OPTIONAL ENDORSEMENT

In consideration of the additional premium your coverage is amended to include Green Snap Wind Loss to corn, seed corn, and sweet corn. Coverage will apply to all acres of the insured crop on the underlying Crop Hail policy.

Coverage under this endorsement is reduced by any payments made under the underlying Crop-Hail policy and cannot exceed the Limit of Liability as stated on the Schedule of Insurance for the acreage.

For the crop(s) you have selected to apply this endorsement to, it will apply to all acres on the underlying Crop Hail policy.

**You may choose to purchase Coverage A or Coverage B.**

### *Coverage A: Green Snap Coverage*

**INSURANCE PERIOD**
Coverage under this endorsement expires the earlier of harvest of the crop or 12:01 a.m. on September 15th of the current crop season.

**PERIL INSURED**
GREEN SNAP WIND LOSS is defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects, disease, chemical damage or any cause other than the cause specified in this endorsement.

**AMOUNT PAYABLE**
The amount payable for green snap coverage is on a policy line item basis and will be as follows: We will not cover any loss until the % of loss per acre exceeds your policy form type deductible if applicable (Basic, DXS10, Companion, etc) minimum % of loss for the policy line item(s).

### *Coverage B: Green Snap with Extra Harvest Expense Coverage*

**INSURANCE PERIOD**
Coverage under this endorsement expires the earlier of harvest of the crop or 12:01 a.m. on October 15th of the current crop season.

**PERIL INSURED**
GREEN SNAP WIND LOSS is defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects, disease, chemical damage or any cause other than the cause specified in this endorsement.

**EXTRA HARVEST EXPENSE**
An amount will be paid for Extra Harvest Expense if the stalks are blown down such that the angle between the stalk and the ground is less than 20 degrees and the distance from the shank end of the highest ear on the stalk to the ground is less than 12 inches.

**AMOUNT PAYABLE**
The amount payable for green snap coverage is on a policy line item basis and will be as follows: We will not cover any loss until the % of loss per acre exceeds your policy form type deductible if applicable (Basic, DXS10, Companion, etc) minimum % of loss for the policy line item(s).

The company shall have no liability for **Extra Harvested Expense** for any acre(s) blown down from windstorm until the acres which are down are the lesser of (1) 20% of the field or (2) 20 acres, and then the Company shall then have liability for 8.0% of the insurance per acre times the acres down in excess of the lesser of (1) 20% of the field or (2) 20 acres times 1.40, except that the total paid on the field shall not exceed 8.0% of the insurance on the acres blown down.

HA-1069 (01-12)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 73 of 112
CONFIDENTIAL


# Green Snap Lodging, Loss of Production Corn Wind Optional Endorsement (HA-9617)

### Green Snap, Lodging & Loss of Production
### Corn Wind
### Optional Endorsement

In consideration of the additional premium your coverage is amended to include all the coverages listed below for corn, seed corn and sweet corn. Coverage will apply to all acres of the insured crop on the underlying Crop Hail policy.

Coverage under this endorsement is reduced by any payments made under the underlying Crop-Hail policy and cannot exceed the Limit of Liability as stated on the Schedule of Insurance for the acreage.

For the crop(s) you have selected to apply this endorsement to, it will apply to all acres on the underlying Crop Hail policy.

**INSURANCE PERIOD**
Coverage under this endorsement expires the earlier of harvest of the crop or 12:01 a.m. on October 15th of the current crop season.

### Green Snap Coverage

**PERIL INSURED**
GREEN SNAP WIND LOSS is defined as stalks that are severed below the ear due to wind so the ears cannot be harvested. We do not cover loss due to insects, disease, chemical damage or any cause other than the cause specified in this endorsement.

**AMOUNT PAYABLE**
The amount payable for green snap coverage is on a policy line item basis and will be as follows: EXCESS OVER 10 PERCENT LOSS – DISAPPEARING AT 50 PERCENT – DXS10. We will not cover any loss until the percentage of loss per acre exceeds 10 percent. The loss payment shall be that percent of loss in excess of 10.0% multiplied by 1.25. Once the percentage of loss equals or exceeds 50 percent this provision will no longer apply.

### Extra Harvest Expense Coverage

**EXTRA HARVEST EXPENSE**
An amount will be paid for Extra Harvest Expense if the stalks are blown down such that the angle between the stalk and the ground is less than 20 degrees and the distance from the shank end of the highest ear on the stalk to the ground is less than 12 inches.

**AMOUNT PAYABLE**
The company shall have no liability for Extra Harvest Expense for any acre(s) blown down from windstorm until the acres which are down are the lesser of (1) 20% of the field or (2) 20 acres, and then the Company shall then have liability for 8.0% of the insurance per acre times the acres down in excess of the lesser of (1) 20% of the field or (2) 20 acres times 1.40, except that the total paid on the field shall not exceed 8.0% of the insurance on the acres blown down.

### Lodging Loss of Production Coverage

All Provisions listed below apply only to the LODGING loss of production coverage.

**PERIL INSURED**
LODGING will be paid for the loss of production if the corn stalks are blown down such that the angle between the stalk and the ground is less than 20 degrees and the distance from the shank end of the highest ear on the stalk to the ground is less than 12 inches for the unit.

HA-9617 (01-12)                                                                                              Page 1 of 4

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 74 of 112
**CONFIDENTIAL**

74


**Unit**
The unit for coverage under this section of the endorsement will be the same as the unit structure in effect for the crop and county(ies) being insured under your MPCI policy as shown on the Schedule of Insurance. If the underlying MPCI policy has enterprise, or basic units elected, the unit may be modified if we agree in writing to a request by you to insure such areas on an MPCI optional unit basis. In order to qualify for coverage under these additional units, you must provide separate records of production for the current crop year on the basis of such unit structure. **This portion of the endorsement does not provide coverage on an acre basis.**

**Approved Yield** – This per-acre yield will be the same as the "approved yield" calculated in accordance with your underlying MPCI policy. However, any reduction in coverage to your MPCI policy due to late planting will reduce the applicable approved yield in an equivalent percentage amount.

**Adjusted Approved Yield** –This per-acre yield will be the approved yield adjusted downward by the % of loss paid on the unit for the perils of hail and/or green snap.

**MPCI Production to Count** – Means the total for the unit of any actual harvested production, appraised production of any unharvested acreage including any appraisals for causes of loss not covered by your underlying MPCI policy, and an amount of production equal to your approved yield per acre for any acreage which, if determined in accordance with your underlying MPCI policy is abandoned, damaged solely by an uninsured cause of loss or destroyed by you without consent.

Provision **1. COVERAGE** of the General Provisions is amended by the addition of the following:

a. Acreage Insured:
The planted crop acreage insured under this endorsement must also be insured under an MPCI policy with RCIS. Any subsequent cancellation or termination of the MPCI coverage for a crop(s) and/or county(ies), during the same crop year for which coverage is obtained under this endorsement, will result in automatic cancellation of the coverage provided under this endorsement for that same crop(s) and/or county(ies).

b. Any loss of production due to lodging paid under the terms of this endorsement is limited to the lesser of the lodging deficiency or the production deficiency, not to exceed 20% of the liability.

c. The limit of insurance for each unit under this endorsement will be determined from the information reported by you for your MPCI policy for the same acreage. If you do not report all of the required information from your MPCI policy by the published acreage report due date(s), we reserve the right to determine, by unit, the required information or to deny coverage on such units. If you have misreported any information to us, or if we determine any information is incorrect or has changed, we reserve the right to adjust the limit of insurance accordingly based on the information we determine to be correct.

Provision **3. DUTIES AFTER LOSS** of the General Provisions is amended by the addition of the following:

a. *Your Duties Are*:

(9) You must provide us with the total harvested and/or appraised production for each unit. If you fail to satisfactorily provide separate records of production for each unit, as determined by us, we reserve the right to combine such units or determine the production to count for any such unit for purposes of determining the MPCI production to count.

b. *Our Duties Are*:

(3) Since a payable loss can only be determined once the crop has been harvested (or appraised if the crop acreage is unharvested or put to another use), we can only reach agreement with you upon receipt of acceptable harvested and/or appraised production records for each unit.

HA-9617 (01-12)                                                                                                    Page 2 of 4

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 75 of 112
**CONFIDENTIAL**

75



c. *Adjustment Procedures*:

(1) The percentage of loss due to insured perils will be determined using the crop-hail loss adjustment procedures published by National Crop Insurance Services, or in the absence of such procedures, other procedures as determined by us, for the particular crop insured and the applicable crop year.

(2) The MPCI production to count will be determined in accordance with the procedures published by the Federal Crop Insurance Corporation (FCIC) for determining production to count for the applicable crop(s) insured under your MPCI policy. However, an amount of production equal to your approved yield per acre will be the MPCI production to count for any acreage which, if determined in accordance with your underlying MPCI policy is abandoned, damaged solely by an uninsured cause of loss or destroyed by you without consent.

Provision 4. **LOSS PAYMENT** of the General Provisions is amended by replacing 4.a., adding 4.c., and 4.d.:

a. There will never be a payable loss for any unit if the MPCI production to count equals or exceeds the Adjusted Approved Yield. The actual % of loss payable due to lodging for the unit can't exceed 20% of the liability. Any and all Hail or Green Snap % of loss will reduce the Approved Yield accordingly.

c. The amount payable for the Unit will be determined as follows:

(1) Deduct from the Approved Yield all hail and or green snap agreed % of losses creating the Adjusted Approved Yield.

(2) Multiply the Adjusted Approved Yield times the determined lodging percent of loss not to exceed 20% to obtain the lodging deficiency.

(3) Calculate the Production Deficiency by subtracting the MPCI production to count from the Adjusted Approved Yield to determine the yield deficiency. Divide this amount by the Adjusted Approved Yield to determine the yield % of loss.

(4) The amount payable for the unit will be the lesser of: 1) the lodging deficiency for the unit calculated in 5.c. (2) or, the production deficiency for the unit calculated in 5.c. (3).

d. In no event will the loss payable exceed 20% of the Limit of Insurance shown on your Schedule of Insurance for the Unit.

**Loss Examples**

**Policyholder's MPCI Approved Yield is 200 bushels per acre with Crop Hail liability of $1,200 per acre. The example unit contains 100 acres.**

**Example #1**
- Hail, Green Snap & Lodging damage
- Net Hail & Green Snap damage 15% for the unit
- Lodging: 80% of the field is 100% lodged; remaining 20% of field has no lodging = average lodging 80% on the unit
- Adjusted Approved Yield 170 (200 x 85% remaining after hail & green snap loss %)
- Corn is harvested with a unit yield of 180 bu/acre
Hail & Green Snap = $18,000  (15% x $120,000)
Extra Harvest Expense = $7,680 (80 acres x $1,200 x 8%)
Lodging Loss of Production payment is -0- because corn produced above Adjusted Approved Yield of 170
**Total indemnity payment: $25,680 ($18,000 + $7,680)**

HA-9617 (01-12)



**Example #2**
- No Hail or Green Snap damage, lodging only damage
- Net Hail & Green Snap damage 0%
- Lodging: 80% of the field is 100% lodged; remaining 20% of field has no lodging = average lodging 80% on the unit
- Adjusted Approved Yield (same as Approved Yield due to no hail or green snap loss)
- Corn is harvested with a unit yield of 177 bu/acre

Hail & Green Snap = 0%
Extra Harvest Expense = $7,680 (80 acres x $1,200 x 8%)
Lodging Loss of Production payment is 11.5% for a payable indemnity of $13,800 (100 acres x $1,200 x 11.5%; this is the lesser of production % of loss or lodging % of loss)
**Total Indemnity payment: $21,480 ($7,680 + $13,800)**

# Green Snap, Lodging Loss of Production Corn Wind Endorsement (HA-9617)

**Perils Covered:**
> Crop Hail
> Green Snap (DXS 10 Policy Only)
> Green Snap EHE
> Loss of Production (NEW for 2012)

**Adjustment Procedure**
- This endorsement is available for all Crop Hail Policies. Not available for HPP.
- The loss for Crop Hail, Green Snap and Green Snap EHE will be determined and paid before harvest (no different from other Crop Hail Policies).
- The Loss of Production will be determined after production has been established (harvest or appraisal) and will be based on the MP Unit structure.
- The Loss of Production (LOP) will pay the lesser of Lodging Deficiency % or Production Deficiency %, not to exceed 20%.

**Example:**
- Combined Crop Hail and Green Snap Loss = 20%
- Green Snap EHE Loss: Percent (%) of lodging for all counts will be used to determine the Lodging Deficiency (The Lodging Deficiency is **ALWAYS** based on **UNIT ACRES**, not field acres).
- APH for the Unit = 200 bu.
- Adjusted Yield = 200 bu. x 80% (crop remaining) = 160 bu. (Adjusted Yield)
- Production Yield = 150 bu. (Determined by harvest or Appraisal)
- Production Reduction: 160 bu. (Adjusted Yield) – 150 bu. (Production Yield) = 10 bu. (Production Reduction)
- Production Deficiency %: 10 bu. (Prod. Reduction) divided by 160 bu. (Adjusted Yield) = 6.3% (Production Deficiency)
- Pay the lesser of Lodging Deficiency (30%) or Production Deficiency (6.3%), not to exceed 20%.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 77 of 112
**CONFIDENTIAL**


- The Loss of Production (LOP) = 11.4%

**Loss of Production (LOP) Problem Answer:**

**PART C - Loss of Production Calculation**

| UNIT | ACRES | INDEMNITY | (/) | LIABILITY | (=) | CROP HAIL AND GREEN SNAP UNIT LOSS % |
|------|-------|-----------|-----|-----------|-----|--------------------------------------|
| 1.0 | 250.0 | $35,680 | (/) | $250,000 | (=) | 14.3% |

**Adjusted Yield Calculation**

| APH | (X) | CROP REMAIN. | (=) | ADJUSTED YIELD |
|-----|-----|--------------|-----|----------------|
| 188.0 | (X) | 85.7% | (=) | 161.1 |

**Production Deficiency % Calculation**

| ADJUSTED YIELD | (-) | PROD. YIELD | (=) | PROD. REDUCTION | (/) | ADJUSTED YIELD | (=) | PROD. DEFICIENCY % |
|----------------|-----|-------------|-----|-----------------|-----|----------------|-----|--------------------|
| 161.1 | (-) | 142.7 | (=) | 18.4 | (/) | 161.1 | (=) | 11.4% |

**Lodging Deficiency % Calculation**

| EHE Percent (%) Lodged Acres (Average of all EHE Tests) | 16.8% |
|----------------------------------------------------------|-------|

**PART D - Greater of Lodging Deficiency % and Production Deficiency %, not to exceed 20%**

| LOSS OF PRODUCTION % | MAXIMUM |
|----------------------|---------|
| 11.4% | 20.0% |

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 78 of 112
CONFIDENTIAL


CROP-HAIL INSURANCE
OPTIONAL ENDORSEMENT

## AUTO CROP SCHEDULE (ACS)

In consideration of your request, subject to all other terms and conditions of the policy, this endorsement amends your annual crop-hail policy as follows:

**INTENT OF ENDORSEMENT:** If you have a Multiple-Peril Crop Insurance (MPCI) Policy administered through us, you can request us to annually revise your current season Crop-Hail Schedule of Insurance from the information provided by you and contained on your current year MPCI Acreage Report. This annual revision of your Crop-Hail Schedule of Insurance is called Auto Crop Schedule (ACS).

**DETERMINATION OF COVERAGE:** Your Crop-Hail Schedule of Insurance will be determined each year by multiplying the current season acreage, listed on your MPCI Acreage Report, by the Insurance Per Acre and current season rate for those ACS crops listed on your previous season Schedule of Insurance or listed on your current season crop-hail application.

Crops listed on your MPCI Acreage Report but not listed on your previous season Crop-Hail Schedule of Insurance or added prior to the suspension date(s) listed in the Term of Policy provision in your policy, WILL NOT be added to your current season Crop-Hail Schedule of Insurance.

**ENDORSEMENT PERIOD AND UNDERWRITING:** This endorsement will remain in effect from year to year unless you notify us in writing to cancel ACS prior to the suspension date(s) in the Term of Policy provision in your policy. This ACS endorsement will cancel at such time that you cancel your MPCI policy or your MPCI policy is no longer administered through us. Changes each year to the Insurance Per Acre and policy type listed in your current Crop-Hail Schedule of Insurance can be made per the crop-hail underwriting guidelines of the company.

HA-2148 (01-01)


## Auto Crop

**Adjuster Duties are as follows:**

1. Request previous years Acreage Report (Get the needed information from the agent or insured to work the loss). This will supply the adjuster with Unit structure, acres and legal locations to assist in the building of the policy lines.

2. Until the insured reports their MPCI acres, no Line Items or Acres will be on the Proof of Loss.

3. Timely adjustment of all crops is very critical even if the acres have not been reported.

4. Encourage the agents to report MPCI acres as soon as possible after reporting a crop hail loss.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 80 of 112
**CONFIDENTIAL**


## Rural Community Insurance Services - Auto Crop

**Underwriting Guidelines**

The Auto Crop Schedule (ACS), HA-2148 Crop-Hail Insurance Optional Endorsement may be added to any RCIS Crop-Hail Policy when the insured has an accompanying Multiple-Peril Crop Insurance (MPCI) policy and both policies are administered through Rural Community Insurance Services (RCIS).

New and existing policyholders who desire to have their Crop-Hail Schedule of Insurance generated from their MPCI Acreage Report can do so by adding the ACS optional endorsement to their RCIS Crop-Hail Policy. When completing the Schedule of Insurance, indicate the crop, policy type, interest in the crop, insurance per acre and the form number(s) of any optional endorsements. **Indicate (HA-2148) to add the ACS endorsement.**

The ACS endorsement is available for the crops listed on the Crop Classification page of this manual.

**ACS Requirements**

- The share interest for a crop(s) on the Crop-Hail Policy **must** match exactly the share interest for the same crop on the MPCI acreage report.

- The deadline for **adding or deleting** the ACS Optional Endorsement to your Crop-Hail Policy is the suspension date(s) listed in the Term of Policy provision in your policy.

- Losses that occur PRIOR to processing the current year MPCI acreage report will be adjusted using the information (policy type, insurance per acre, etc.) contained in the Crop-Hail Schedule of Insurance. **The MPCI acreage report MUST be processed before the crop-hail loss can be keyed.**

ACS coverage does allow Insurance Per Acre (IPA) differentials for irrigated and non-irrigated practices. All other ASC Requirements apply to irrigated and non-irrigated practices.

81
Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 81 of 112
**CONFIDENTIAL**
FFIC 0821



## Wind and Tornado on Wheat Endorsement

- Provides coverage to include direct loss to wheat fields as described in the Schedule of Insurance.

- Coverage for damage caused by wind and tornado when hail destroys 5% or more of crop during the same occurrence.

- See endorsement for definition of wind.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For an example of a complete layout of the details of this endorsement, please refer to the full description on the next page.





CROP-HAIL INSURANCE
OPTIONAL ENDORSEMENT

## ENDORSEMENT

### ADDED PERILS: WIND AND TORNADO ON WHEAT

In consideration of the additional premium, your coverage is amended to include direct loss to Wheat described in the Schedule of Insurance caused by:

### WIND AND TORNADO

The coverage under this policy shall include damage by wind and tornado when hail destroys five percent (5%) or more of the crop during the same occurrence.

Wind loss will be interpreted to mean injury to the plant above ground only, by the breaking off or over of straws by wind or tornado.


# Wheat Added Perils Endorsement - General Form Policy

**(Oklahoma Only)**

Provides coverage for:
- Wind and Tornado
- Lightning & Falling Aircraft
- Fire

See endorsement for detailed coverage definitions.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

For an example of a complete layout of the details of this endorsement, please refer to the full description on the next page.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 84 of 112

FFIC 0834



Endorsement: Crop Hail Insurance

## WHEAT
## ADDED PERILS ENDORSEMENT
## GENERAL FORM POLICY

In consideration of the additional premium charged, the following provisions are applicable to the insurance afforded by this Policy:

1. **Wind and Tornado.** The coverage under this policy shall include damage by wind and tornado when such damage is accompanied by hail damage equal to 5% or more on each acre damaged by wind/or tornado.
   Wind Loss will be interpreted to mean injury to the plant above ground only, by the breaking off or over of straws by wind or tornado.

2. **Lightning and Falling Aircraft.** The coverage under this policy shall include damage to any insured acre, or portion thereof, as a result of lightning or falling aircraft.

3. **Fire.** The fire coverage per acre in this policy is increased by the amount originally written to a total insurance per acre not to exceed the actual cash value of the insured crop, or twice the amount shown in the schedule of insurance, which ever amount is least.

Premium Charges for Added Perils coverage is $1.00 per hundred dollars insurance.

Hail, Wind, Tornado, Etc. Liability $_____ X $1.00 = _____.

Fire Insurance liability          $_____ Included above.

Attached is and forming part of Crop Hail Policy No. _____.

of the _____Insurance Company of _____.

Date _____, Year _____.        _____
                                                    (Applicant)

                                            _____
                                                    (Agent)

**INSTRUCTIONS:** Prepare in triplicate and attach to the crop-hail application. Should be signed by agent and applicant.

HA-2141 (01-08)


Crop-Hail Insurance
Optional Endorsement

FYI: IDAHO ONLY

## WINDSHATTER COVERAGE FOR WHEAT, BARLEY, PEAS AND LENTILS

In consideration of the additional premium charged your coverage is amended to include direct shatter loss caused by wind on any insured unit of standing wheat, barley, peas or lentils.

**WINDSHATTER LOSS** shall be interpreted to mean removal of individual kernels, heads or partial heads, above the first node of the Rachis (stem) only, also peas and pods.

Any wind loss resulting from the stem being broken-off below the first node of the Rachis (stem) is not covered or payable under this Endorsement.

**INSURED UNIT** will be defined as all acreage of insured crop described in any one line item on the schedule of insurance.

### EXCESS OVER 15% LOSS
We will not cover any windshatter loss until the percentage of loss on the insured unit exceeds 15% of the original crop liability as shown on the schedule of insurance.

The amount then payable will be on the gross amount of loss (% of loss) less 15% of the original crop liability as shown on the schedule of insurance.

### EXCLUSIONS
We do not cover any loss resulting from damage or breakage of stems, stalks, culms or tillers caused by wind except as provided for above.

We do not cover any loss caused by wind when the insured crop is in the bundle, shock, swath, or windrow.

### EXPIRATION OF INSURANCE
Windshatter coverage under this endorsement shall cease at 12:01 a.m. on September 15 for wheat and barley and September 1 for peas and lentils of the current year.

HA-2130 (01-06)

Case 5:13-cv-04106-CJW Document 149-11 Filed 03/13/17 Page 86 of 112

CONFIDENTIAL

FFIC 0836


**CROP-HAIL INSURANCE**                                                                        **2007 – NCIS 457**
**OPTIONAL ENDORSEMENT**

## OPTIONAL FIRE AND LIGHTNING COVERAGE ON CROPS
## PLANTED IN SMALL GRAIN CROP, STUBBLE OR RESIDUE

In consideration of the additional premium charge, your Fire and Lightning coverage is extended to crops that have been planted in small grain crop, stubble or residue. This endorsement only applies to those crops for which fire and lightning coverage is provided for in the Special Provisions or State Amendatory Endorsement.

© 2006 National Crop Insurance Services, Inc.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 87 of 112
**CONFIDENTIAL**

81


## Seed Corn Endorsement

When a loss exceeds 30%, an additional 0.8% is paid for every 1% in excess of 30%.

> **Example:**  An actual loss of 31% would pay 31.8% with this endorsement.

Any ear damaged by hail to the extent that it cannot be used for seed shall constitute total destruction as respects to the percentage of loss.

For a complete layout of the details of this endorsement please refer to the full description on the next page.

Refer to the specific State Crop – Hail Rates and Rules manual to review the endorsement provisions.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 88 of 112
**CONFIDENTIAL**
RCIS 0838



Crop-Hail Insurance
Optional Endorsement

### CROP-HAIL INSURANCE SPECIAL SEED CORN ENDORSEMENT

In consideration of the additional premium charged to the seed corn rate, this insurance is extended to cover hail damage to corn grown as hybrid seed corn. The field corn loss adjustment procedure shall be amended as follows:

**DIRECT DAMAGE:** Any ear(s) damaged by hail to the extent that such ear(s) cannot be used for seed shall constitute total destruction as respects to the percentage of loss.

**INDIRECT DAMAGE:** The Company shall not be liable for loss or damage to stalks, leaves or tassels unless such loss or damage shall affect the product thereof, and then only to the extent that the product thereof has been affected.

**CATASTROPHE LOSS AWARD:** When a loss exceeds 30% on any acre of the insured crop, an additional amount of eight tenths of the percent of loss that is in excess of 30% shall be paid. However:

a. The total amount payable per acre shall not exceed the amount of insurance applying at the time of loss.
b. In the event a deductible has been elected under the Basic Hail Policy, the Catastrophe Loss Award will be added after the deductible has been calculated.

**APPRAISAL OF LOSS:** In case the insured and this Company shall fail to agree as to the amount of loss, such disagreement shall, at the request of either the Company or the insured, be referred to an Arbitration Committee. Such Committee shall be composed of:

a. A regular employee as designated by the insured.
b. A regular employee of the Company or Independent Crop-Hail Adjuster as designated by the Company.
c. Upon request of either party, an agronomy specialist from a state agricultural college, agreeable to both parties, may be obtained as a consultant.

**COVERAGE & ACREAGE CHANGES:** The insured has until June 1st of the current year to revise acreages for all coverage. After June 1st, the hail premium shall be fully earned.

Coverage under the Special Hail Endorsement shall expire immediately upon rejection of the Growers Contract by the insured.

**IT IS FURTHER UNDERSTOOD AND AGREED** that the insured shall, upon request of the Company, furnish copies or extracts of all inspection reports concerning the insured crops which have been submitted to the insured during the growing season.

HA-2054 (01-95)

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 89 of 112

**CONFIDENTIAL**


## REFRESH

The night before or at the beginning of the day, the adjuster should use the refresh feature prior to working claims. This pulls any recent policy changes into the claim package.

 **Note:** Refresh will overwrite all information in the current claim package. You must print all needed claim information (Proof, Survey Sheets, Fact Sheets, etc) before you refresh and request updated claims.

1.  In Quest, click the down arrow to access the Download Claims screen where you retrieve claims.



2.  In the Download Claims screen, click the **Request Updated Claims Packages** button.



90

**CONFIDENTIAL**

EFIC 0830



# 2012 Crop - Hail Loss Adjustment Manual

**Miscellaneous**

3. The Policy Claim Package Refresh screen lists all selected claims. Click **Refresh**.



4. The selected policies were successfully updated and you are warned that re-downloading updated claims will overwrite any previously completed work resulting in claim package information to be lost. Click **OK.**



5. You are returned to the Download Claims window. Select policies and click **Download** *only* if all documents needed for the claim package have been printed. Click **Close** if you have not to return to Quest and print them.



Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 91 of 112
**CONFIDENTIAL**


6. Click **Yes** to the following message.



**Note:** Even if you click **No,** the download is already done and cannot be cancelled. All claim package information is now gone.

The download finishes and the newly refreshed claims are now available in your Quest Claims folder.

### Insured Signature

You must obtain an approved signature for all claims. Reviewers will not release any claims for payment without the proper signature or documentation in the claim package.

An approved signature obtained on hard copy must be scanned and added as an attachment in the Quest claim package. The insured signature box must indicate where to find the approved signature.

### Snag Claims

A snag claim is a claim with a disagreement between the adjuster and the insured. Documentation of the dispute as well as contacting an outside third party such as the ACS, and potentially another adjuster are necessary steps needed to resolve this disagreement. The adjuster must:

- call the ACS
- complete a fact sheet
- mark the claim as snagged under manual status override
- upload the claim

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 92 of 112
**CONFIDENTIAL**
FFIC 0832


## MULTIPLE CLAIM PACKAGES

When multiple claim packages exist on a policy, a subsequent claim cannot be released for payment until the first claim is closed.

Multiple claim packages can happen when the first opened claim is not closed or withdrawn before the second claim is opened.

The adjuster must:

- Move all information from the older claim to the most recent claim. This includes deferred lines. Deferred lines must be manually copied from the older claim to the most recent claim.
- Withdraw the older claim(s).
- Upload all claim packages.

## REPLANT INFORMATION

Labor costs for replanting is $15.00

-------------------------------------------------------------------------

**Replant Scenario 1:** Parent and child lines have different policy form codes. The parent line has Comp 2 and the child line has DD30.

**Question:** Can the insured choose Option B on the parent line and Option A on the child line?

**Answer:** Yes, each line can choose a different option only because each line has a different policy form codes.

-------------------------------------------------------------------------

**Replant Scenario 2:** On a previous loss, Option B was selected for a replant claim (we paid a 30.0% loss). The remaining liability is still listed and available for the replanted crop.

**Question 1:** When the insured has a 1st loss on the 2nd replanted crop, would we take the deductible again?

**Answer 1:** Yes, since this is a new crop and basically a new policy, we would take the deductible on the 2nd loss. If a 3rd loss occurs, we would not take the deductible.

**Question 2:** When Option B is selected, is the IPA reduced for subsequent claims?

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 93 of 112
**CONFIDENTIAL**

93

   

**Answer 2:** Yes, the IPA is reduced.

-------------------------------------------------------------------------------

**Replant Scenario 3:** A 93% hail loss occurs on a policy with Basic coverage. The insured has selected Option B.

**Question**: Do we pay CLA on this replant claim?

**Answer:** Yes. CLA would apply on this claim.

**Replant - Companion Plan**

The replant endorsement for the Companion plan only applies to soybeans.

When the policy holder selects option A

- Replant costs will be compensated under MPCI policy
- Delay costs will be compensated under the Hail policy

-------------------------------------------------------------------------------

Replant costs will not be considered on an HPP claim however, we will insure the replanted crop as long as they have separate production for the current year.

Case 5:13-cv-04106-CJW   Document 149-11   Filed 03/13/17   Page 94 of 112


**Rural Community Insurance Services**
**Crop-Hail Replant Worksheet**
**(one per field)**

| Policyholder's Name | | | Policy No. | | Claim No. |
|---|---|---|---|---|---|

| Policy Item No. | Percent Deductible % | Crop | No. Acres | No. Acres Replanted |
|---|---|---|---|---|

### Actual Cost of Replanting

Labor $ _____ x _____ = $ _____
   Cost Per Acre        No. Acres

Seed $ _____ x _____ = $ _____
   Cost Per Acre        No. Acres
   (Receipts Required)

Other $ _____ x _____ = $ _____
   Cost Per Acre        No. Acres
   (Receipts Required)

Total Actual Cost of Replanting = $ _____
   (Sum of *Labor, Seed,*and *Other*)

A. $ _____ / _____ = $ _____
   (Cost of Replanting)   (Acres Replanted)   (Cost Per Acre)

### Policy Maximum Per Acre

Insurance Per Acre                          $ _____

Policy Maximum Percentage              x _____ %

B. Maximum Policy Payment Per Acre     $ _____

The replant payment per acre is the *lesser* of A or B and is $ _____ per acre.

### Soybean Late Planting Allowance

Original Planting Date _____ Replant Date _____

Based on the dates above and the Soybean Replant Chart on the back of this form, the payment is _____ % of the liability per acre. This payment *does* reduce the liability remaining by an equal amount per acre.

| Policyholder's Signature | | Date |
|---|---|---|

| Adjuster's Signature | Code No. | Date |
|---|---|---|

HA-5006 (05-00)

95


## SOYBEAN YIELD DECREASE CAUSED BY DELAYED PLANTING

**Illinois, Indiana, Iowa, Michigan, Minnesota (except counties in the Red River Valley), Missouri, Nebraska, Ohio and South Dakota (Charts for Wisconsin, North Dakota and Minnesota Red River Counties at bottom of page)**

### Percent Yield Loss

| Planted | 16 | 18 | 20 | 22 | 24 | 26 | 28 | 30 | J1 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 25 | 27 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| May 15 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 14 | 16 | 18 | 20 | 22 | 24 | 27 | 29 | 32 | 35 |
| May 16 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 15 | 17 | 19 | 21 | 23 | 26 | 29 | 32 | 35 |
| May 17 | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 26 | 28 | 31 | 34 |
| May 18 | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 13 | 15 | 17 | 19 | 21 | 23 | 26 | 28 | 31 | 34 |
| May 19 | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 12 | 14 | 16 | 18 | 20 | 22 | 25 | 27 | 30 | 33 |
| May 20 | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 12 | 14 | 16 | 18 | 20 | 22 | 25 | 27 | 30 | 33 |
| May 21 | | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 24 | 26 | 29 | 32 |
| May 22 | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 11 | 13 | 15 | 17 | 19 | 21 | 24 | 26 | 29 | 32 |
| May 23 | | | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 10 | 12 | 14 | 16 | 18 | 20 | 23 | 25 | 28 | 31 |
| May 24 | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 10 | 12 | 14 | 16 | 18 | 20 | 23 | 25 | 28 | 31 |
| May 25 | | | | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 22 | 24 | 27 | 30 |
| May 26 | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 9 | 11 | 13 | 15 | 17 | 19 | 22 | 24 | 27 | 30 |
| May 27 | | | | | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 8 | 10 | 12 | 14 | 16 | 18 | 21 | 23 | 26 | 29 |
| May 28 | | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 8 | 10 | 12 | 14 | 16 | 18 | 21 | 23 | 26 | 29 |
| May 29 | | | | | | | | 0 | 1 | 2 | 3 | 4 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 20 | 22 | 25 | 28 |
| May 30 | | | | | | | | | 1 | 2 | 3 | 4 | 5 | 7 | 9 | 11 | 13 | 15 | 17 | 20 | 22 | 25 | 28 |
| May 31 | | | | | | | | | 0 | 1 | 2 | 3 | 4 | 6 | 8 | 10 | 12 | 14 | 16 | 19 | 21 | 24 | 27 |
| June 1 | | | | | | | | | | 1 | 2 | 3 | 4 | 6 | 8 | 10 | 12 | 14 | 16 | 19 | 21 | 24 | 27 |
| June 2 | | | | | | | | | | 0 | 1 | 2 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 18 | 20 | 23 | 26 |
| June 3 | | | | | | | | | | | 1 | 2 | 3 | 5 | 7 | 9 | 11 | 13 | 15 | 18 | 20 | 23 | 26 |
| June 4 | | | | | | | | | | | 0 | 1 | 2 | 4 | 6 | 8 | 10 | 12 | 14 | 17 | 19 | 22 | 25 |
| June 5 | | | | | | | | | | | | 1 | 2 | 4 | 6 | 8 | 10 | 12 | 14 | 17 | 19 | 22 | 25 |
| June 6 | | | | | | | | | | | | 0 | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 16 | 18 | 21 | 24 |
| June 7 | | | | | | | | | | | | | 1 | 3 | 5 | 7 | 9 | 11 | 13 | 16 | 18 | 21 | 24 |
| June 8 | | | | | | | | | | | | | 0 | 2 | 4 | 6 | 8 | 10 | 13 | 15 | 17 | 20 | 23 |
| June 9 | | | | | | | | | | | | | | 1 | 3 | 5 | 7 | 9 | 11 | 14 | 17 | 20 | 23 |
| June 10 | | | | | | | | | | | | | | 0 | 2 | 4 | 6 | 8 | 10 | 13 | 16 | 19 | 22 |
| June 11 | | | | | | | | | | | | | | | 2 | 4 | 6 | 8 | 11 | 14 | 16 | 19 | 22 |
| June 12 | | | | | | | | | | | | | | | 0 | 2 | 4 | 6 | 8 | 11 | 14 | 17 | 20 |
| June 13 | | | | | | | | | | | | | | | | 2 | 4 | 6 | 9 | 11 | 14 | 17 | 20 |
| June 14 | | | | | | | | | | | | | | | | 0 | 2 | 4 | 6 | 9 | 12 | 15 | 18 |
| June 15 | | | | | | | | | | | | | | | | | 2 | 4 | 6 | 9 | 12 | 15 | 18 |
| June 16 | | | | | | | | | | | | | | | | | 0 | 2 | 4 | 7 | 10 | 13 | 16 |
| June 17 | | | | | | | | | | | | | | | | | | 2 | 4 | 7 | 10 | 13 | 16 |
| June 18 | | | | | | | | | | | | | | | | | | 0 | 2 | 5 | 8 | 11 | 14 |
| June 19 | | | | | | | | | | | | | | | | | | | 2 | 5 | 8 | 11 | 13 |
| June 20 | | | | | | | | | | | | | | | | | | | 0 | 3 | 6 | 8 | 11 |
| June 21 | | | | | | | | | | | | | | | | | | | | 3 | 5 | 8 | 10 |
| June 22 | | | | | | | | | | | | | | | | | | | | 0 | 3 | 6 | 8 |
| June 23 | | | | | | | | | | | | | | | | | | | | | 2 | 5 | 6 |
| June 24 | | | | | | | | | | | | | | | | | | | | | 0 | 3 | 5 |
| June 25 | | | | | | | | | | | | | | | | | | | | | | 2 | 5 |
| June 26 | | | | | | | | | | | | | | | | | | | | | | 0 | 3 |
| June 27 | | | | | | | | | | | | | | | | | | | | | | | 2 |
| June 28 | | | | | | | | | | | | | | | | | | | | | | | 0 |
| June 29 | | | | | | | | | | | | | | | | | | | | | | | |
| June 30 | | | | | | | | | | | | | | | | | | | | | | | 0 |

### SOYBEAN REPLANT

To determine allowance for replanting, find date of original planting in the diagonal date column on the left of the chart; locate date of replanting on upper section of the chart. Follow original planting column to the right and replanting column down until the two columns intersect. This point will display the percentage allowance for shrinkage due to late planting. Notice the replant dates list every other day; dates not listed require simple interpolation.

### EXAMPLE

Beans planted June 1 and replanted June 26; June 25 = 21%, June 27 = 24%, 24% − 21% = 3% 3% ÷ 2 = 1 ½%, 21% + 1 ½% = 22 ½% Allowance for June 26 replant.

**North Dakota & Minnesota Counties in Red River Valley** Use May 15 or planting date after 15th Yield Loss/Day 0.8%

**Wisconsin** After May 15 or planting date after 15th Yield Loss/Day 1.0%

Case 5:13-cv-04106-CJW Document 149-11 Filed 03/13/17 Page 96 of 112

**CONFIDENTIAL**

EEIG 08??

96

# HAIL PRODUCTION PLAN

The purpose of this Hail Production Plan (HPP) endorsement is to cover, on a Common Crop Insurance Policy (CCIP) unit basis, the insurable crop acreage value not insured under your CCIP policy, identified as the difference between the Approved Actual Production History (APH) average yield or percent thereof and the selected CCIP level of coverage yield guarantee. Therefore, the terms and conditions of your Crop Hail policy are amended by the following provisions and conditions.

**Unit of Insurance**
The unit of insurance is the CCIP unit of insurance as defined by the policy provisions and shown on your CCIP schedule of insurance. For CCIP policies qualifying for and utilizing the enterprise unit option the unit structure will be the optional or basic units as defined by the CCIP policy provided you maintain the record requirements for the current and previous years as described by in the policy. For irrigation systems, the unit of insurance may be modified to cover each center pivot as long as the length of the pivot arm is at least a quarter (1/4) mile, or if shorter covers the entire quarter of section and the production records are maintained separately.

**Price Election**
The insured will select a percentage of the CCIP price election or a percentage of your projected price as applicable, not to exceed 100% of the price.

**HPP Coverage Plan**
This is the Hail Production Plan coverage Plan (1.00, 1.10, 1.15, etc.) you have selected of your approved APH yield.

**Limit of Insurance**
The Limit of Insurance per unit shall be calculated in the following manner:
- Approved APH yield times the HPP Coverage Plan times the price election, times the insurable acres times the share less the CCIP Production Guarantee.
- Any reduction in coverage to the CCIP guarantee for acreage of the unit due to late planting shall reduce the HPP guarantee in any equivalent amount.

**Determination of Coverage**
The Crop Hail Schedule of insurance will be determined each year by information on the CCPI Acreage Report, selected price election, and coverage plan selected.

**Eligibility**
Insured must have an active CCIP for the crop(s) and acreage administered by Rural Community Insurance Services (RCIS).

**Endorsement Period**
The endorsement will remain in effect from year to year unless cancelled by the insured prior to the CCIP cancellation date or the insured has cancelled the CCIP with RCIS.

**Loss Payment**
- The adjuster will establish a percent of loss for the unit due to the insurable peril.
- The yield percent of loss will be determined by subtraction the actual harvested, and or the unharvested appraised production of the insured crop from the unit guarantee and dividing the amount by the unit guarantee.
- The percent of loss payable for the unit will be the lesser of the insurable peril percent of loss or the yield percent of loss. In no event will the amount payable exceed the limit of insurance for the unit.

91

CONFIDENTIAL

FFIC 0837

## HPP ENTERPRISE UNITS

When production is reported with enterprise units, the adjuster can use the **Production Worksheet Summary** to verify production by sub unit.

Aligning the acres with the line numbers in Quest; match the production to the acres as shown below. The Total Production amount shown must equal total production reported and must match the value entered in box B1 of the HPP Production Worksheet.



**RURAL COMMUNITY INSURANCE SERVICES®**
**Production Worksheet Summary**

| INSURED NAME | AGENCY NAME / CODE | CROP YEAR | POLICY NUMBER |
|---|---|---|---|
| JOE FARMER | NEBRASKA AGENCY | 20-XX | NE-090-9X7X64 |

| CORN - CRC | Unit: 001-00 | Legal Description: 16-024N-025W | FSN: | Type of Claim: Final |
|---|---|---|---|---|

| CAUSE OF LOSS | LOSS % | DAMAGE DATE | NOTICE DATE(S) | HARVEST DATE |
|---|---|---|---|---|
| HAIL-021 | 100% | 06/13/09 | 09/23/09, 12/09/09 | 12/02/09 |

**Acreage, Appraised Production and Adjustments**

| ACRES | | SHARE | PRAC/TYPE | APRSD PTNL | MULTI-CROP CODE | MST % | SHELL/ QUAL FACT | UNINS CAUSE | REPLANT or OTHER | PROD | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 127.7 | 4 H | 1.000 | 002/016 | | NS | | | | | | 0.0 |
| 1.6 | 5 H | 1.000 | 003/016 | | NS | | | | | | 0.0 |
| 129.0 | 1 H | 0.500 | 002/016 | | NS | | | | | | 0.0 |
| 182.9 | 2 H | 1.000 | 002/016 | | NS | | | | | | 0.0 |
| 94.6 | 3 UH | 1.000 | 002/016 | 4.30 | NS | | | | | 3 | 406.8 |
| | | | | | | | | | | | 406.8 |

**Harvested Production Information**

| V SHR/V TYP | L/D/A | WIDTH | DPTH | DEDCT | BU/TON LBS/CW | PROD. NOT TO COUNT | SHELL/ SGR FCT | FM % | MST % | TW | VALUE / MKT PRICE | FACT | PROD | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.000 | ticket | | | | 15177.7 | | | | 20.3 | | | 0.959 | 4 | 13,629.7 |
| 1.000 | ticket | | | | 75 | | | | 20.3 | | | 0.959 | 5 | 67.3 |
| 0.500 | ticket | | | | 12185.8 | | | | 24.7 | | 0.5 / 0 | 0.500 | 1 | 5,383.7 |
| 1.000 | ticket | | | | 22467.3 | | | | 20.3 | | | 0.959 | 2 | 20,175.8 |
| | | | | | | | | | | | | | | 39,256.5 |

TOTAL PROD: 39,683.30
NARRATIVE: acres by FSA map and visually inspected, TIN, entity and share verified

Type 016 Prac 002 Acres 94.6
Appraisal Date: 6/30/2009

Similar damage in area? ☒ Yes ☐ No    Assignment of Indemnity exists? ☐ Yes ☒ No    Transfer of Rights exists? ☐ Yes ☒ No

## HPP SPLIT ACRES 

Splitting acres on an HPP claim is only acceptable for:

- Enterprise unit acres – Acres can be split only when the insured has maintained separate production records on an optional unit basis for the last 5 years and has separate production for the current year.

- Pivot irrigation acres – Acres where pivot irrigation systems are used and they have separate production for the current year.

  – The adjuster is responsible to determine which the better coverage is; splitting acres or not splitting acres. Once determined, provide the findings to the insured to decide if they want acres split or not split.

  – This applies to dry land as well.

98

CONFIDENTIAL

FFIC 0838

Acres should never be split for:

- Zero counts
- Separate load records
- Vandalism
- Fire

**NOTE:** Rebuilding a claim or creating a new claim package will not resolve a split acre problem when the original claim acres were split.

## HPP DEFERRED LINES

In Quest, for a deferred HPP claim, the adjuster must open each survey sheet for every line with a loss and check the defered box.

## REPLANT – HAIL PRODUCTION PLAN (HPP)

Replant costs will not be considered on an HPP claim however, we will insure the replanted crop as long as they have separate production for the current year.

## HAIL PRODUCTION PLAN – FIRST LOSS (Review this process through Quest practice claims)

Building the Claim

It is very important for the adjuster to get the policy information (Legal locations, unit structure and acres) correct on the initial visit. The HPP policy is built by the **reviewers** and many times the information from the loss does not match up to the Acreage Report information. The adjuster should request the previous year acreage report from the ACS or agent. This will show the correct unit structure, acres, practice and type to assist in building the HPP policy. The adjuster must ask if land has been added or changes have been made so any additions or corrections can be made at loss time. The previous year Acreage Report will be scanned into the Quest Claim Package for further use if needed. **VERY IMPORTANT: THIS IS A UNIT POLICY, NOT A PER ACRE POLICY. THE ADJUSTER MUST INCLUDE ALL ACRES OF THAT CROP IN THAT UNIT AS ONE LINE ITEM. IF THE INSURED DIVIDED THE IRRIGATED AND NON-IRRIGATED ACRES ON THE ACREAGE REPORT, THE ADJUSTER WILL FOLLOW THE ACREAGE REPORT FORMAT.**

Claim Process – Process for building the HPP policy and working the claim
1. Request Acreage Report to review policy information
2. Follow Auto Crop Process to build policy information (if Acreage Report has not generated).
3. Adjust loss using National Crop Insurance Services (NCIS) recognized Loss Adjusting Procedures.
4. Determine the minimum number of counts required and take them in a proportional manner across acreage.
5. **DO NOT SPLIT OR DIVIDE FIELDS!** Loss is determined on a Unit Basis (this is contrary to regular Crop Hail Policy Procedure).

CONFIDENTIAL
FFIC 0830

6. Designate the lines to be deferred due to bruising, ties, etc., in the comments section of the Line Item. **This is the ONLY way of knowing that the Line Item needs further inspection later in the year.**
7. Print a Proof of Loss for the insured and for the Claim Folder. The loss percentage for the non-deferred lines will be recorded on the printed Proof of Loss.
8. Go back into the policy and defer each line item. Remember, a Line Item will not be paid until production has been determined. The Defer process is the only way to stop any payment to be made.
9. Get the Authorize Signature (Note that you have **VISUALLY VERIFIED THE SIGNATURE** in the Note Pad in Quest. **THIS IS A MANDATORY REQUIREMENT**).
10. A copy of all Documents (Survey sheets, Proof of loss, High Dollar or Deferred Estimate spreadsheet, prior years Acreage Report, etc.) will be put into a **Claim Folder that will follow all losses that occur on that policy for the entire year. THIS IS A MANDATORY REQUIREMENT.**
11. Scan the prior year's Acreage Report into the Quest Package.
12. **ALL LINE ITEMS MUST BE DEFERRED BEFORE UPLOADING.**

Hail Production Plan losses will not be finalized until production has been determined either by appraisal or harvest. Claims will not be paid until the production for all units have been determined (at this time, we do not pay partials, which is also different from Regular Crop Hail).

The adjuster must get an Authorized Signature for each loss. The adjuster will leave a copy of his findings (Proof of Loss) with the insured. Do not leave a copy of the survey sheets with the insured nor the agent.

## SUBSEQUENT LOSSES (2nd, 3rd, 4th, etc.)

The loss information will not transfer forward from the previous loss. The adjuster will be responsible for transferring the previous loss information to the most recent claim. This will be done even if the line item has not been damaged on the most recent storm. After working the most recent claim and transferring all information forward, the adjuster will leave a copy of the Proof of Loss with the insured. The adjuster will withdraw the previous claim and then upload both claims. This will close the previous loss and only leave the most recent claim Deferred to be finalized at a later date (unless another storm occurs, at which time the adjuster will repeat the above process for the next storm).

**Here is the list of the Adjuster responsibilities for working subsequent claims:**
1. Transfer all previous loss information forward to the most recent claim. This is done for each Line Item.
2. Follow Auto Crop Process to build policy information (if applicable)
3. Adjust loss using National Crop Insurance Services (NCIS) recognized Loss Adjusting Procedures.
4. Determine the minimum number of counts required and take them in a proportional manner across acreage.
5. **DO NOT SPLIT OR DIVIDE FIELDS!** Loss is determined on a Unit Basis (this is contrary to regular Crop Hail Policy Procedure).
6. Designate the lines to be deferred due to bruising, ties, etc... (Comment Section)
7. Run a Proof of Loss for the insured and for the Claim Folder. The loss percentage for the non-deferred lines will be recorded on the printed Proof of Loss.

**CONFIDENTIAL**

FFIC 0840

8. Go back into the policy and defer each line item. Remember, a Line Item will not be paid until production has been determined. The Defer process is the only way to stop any payment to be made.
9. Get the Authorize Signature (Note that you have **VISUALLY VERIFIED THE SIGNATURE** in the Note Pad in Quest. **THIS IS A MANDATORY REQUIREMENT**).
10. A copy of all Documents (Survey sheets, Proof of loss, prior years Acreage Report, High Dollar / Estimate of Deferred Spreadsheet, etc.) will be put into a Claim Folder and will follow any loss that occurs on that policy for the entire year. **THIS IS A MANDATORY REQUIREMENT.**
11. **ALL LINE ITEMS MUST BE DEFERRED BEFORE UPLOADING.**

The adjuster will follow the procedures above for each and every loss until production has been determined and the claim can be finalized.

## HPP Green Snap Wind Coverage A Endorsement (DXS 10 for Green Snap No Longer applies to HPP)
1. The Green Snap will be added into the Survey Sheet in the Green Snap Column and the Gross amount will be factored back against the crop remaining and added into the Crop Hail loss percentage.
   Example: 10% Crop Hail Loss, 10% Green Snap, 90% of Crop Remaining.
   10% (Green Snap) x 90% (Crop Remaining) = 9% Net Green Snap Loss
   10% (Crop Hail Loss) + 9% (Net Green Snap Loss) = 19% Actual Loss (Final Loss percentage, includes both perils)
2. The Final loss percentage will show on the Proof of Loss. These perils are not split on the Proof as is our procedure with our regular Green Snap (DXS10).

## HPP Green Snap Extra Harvest Expense (EHE) Wind Coverage B (Same as Green Snap Plus for 2011)
1. The adjuster will open the survey sheet and click on the GS EHE box at the top of the page to build the Line Item for the wind damage.
2. Determine Total Field Acres (The only time to use Field Acres and not Line Item Acres is if the field with the damage is less than 100 acres. If over 100 acres, the 20 acre deductible will apply and dividing Fields into individual Line Items is not necessary).
3. 20% of the plants in a test must meet the EHE requirements to be considered for a loss.
4. Account for all acres in the Line Item.
5. Determine the acres down in the Field or Line Item and put that in open box "Acres Down (in Field)".
6. The worksheet will apply the 20 / 20 rule and calculate the net acres and indemnity to be paid.
7. Draw a map.
8. Click OK.
9. Additional Line Item(s) (WIND) will appear on the Policy page of Quest to account for EHE Endorsement.

## FINALIZING THE HAIL PRODUCTION CLAIM
1. ACS will assign the claim to be finalized.
2. Adjuster will contact the agent to let them know that they have the claim.
3. The adjuster will get the production information from the agent to finalize the claim.
4. The production must be on one of the required forms (Must have the "I Certify" statement) See "Accepted Production Forms".

CONFIDENTIAL

FFIC 0841

5. The adjuster will open the Quest Claim, go to the Line Item to be finalized, un-defer the line item to be worked (must do this to activate the HPP Final Worksheet), and click the check mark in the HPP WS column of the Line Item and open the HPP Final Worksheet to input the production for the Line Item.
6. The adjuster will input the production for the Line Item in B1. The payable loss percentage for both production and the Crop Hail will be calculated and the lesser of will be determined in F1. The payment will be recorded in B2.



| **HPP Worksheet** | | | | | | | | | | | |

**Insured Name:** PRODUCTION PLAN     **Crop Year:** 2010     **Policy Number:** MN-090-993572     **Claim Number:** 175926-01     **Crop:** CORN     **Line Number:** 1.0

**Liability Information**

| Unit # | A APH | B Share (1.000, .500, etc.) | C MP Level % | D MP Guar /A (Bu or Lb) (A×C) | E HPP Level (1.20, 1.15, 1.10 or 1.00) | F HPP Guar/Ac (Bu or Lb) (A×E) | G HPP/Ac Guar (Bu or Lb) (F-D)×B | H MP Price Elect | I HPP % Of Price | J HPP $/Ac Liability (G×H) | K Acres in Unit | L HPP Tot $ Liability (K×J) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100-01 | 136.0 | 1.000 | 70 | 95.2 | 1.20 | 163.2 | 68.00 | $1 | 0.00 | $68 | 12.6 | $857 |

**Production Information**          **Payment Information***

| Unit # | A1 HPP Tot Unit Guar. (Bu or Lb (F×K) | B1 Total Net Production (Bu or Lb) (MP Pw) | C1 Total Lost (Bu or Lb) (A1 - B1) | D1 Production % Loss of Bu or Lb (C1/A1) | E1 Hail % Loss (Hail SS) | F1 Smaller % Loss (D1 or E1) | A2 Calc Payment (A1×F1×H×%1) | B2 Actual Payment (Lesser of A2 or L) |
|---|---|---|---|---|---|---|---|---|
| 100-01 | 2056 | 1650.0 | 406.0 | 19.7 | 21.5 | 19.7 | $405 | $405 |

     Save      Cancel

7. The only time that we are allowed to divide the Unit, is if pivots are involved. All other acres will be worked together (Ex. 400 acre Line Item: 2 pivots, 120 acres each, 160 acres flood irrigation). The splitting of the Line Item is done in the same manner as regular Crop Hail. A new HPP Final Worksheet will be generated for each split.
8. Review the loss information from all storms to be sure that no Line Items have been overlooked.
9. Repeat the steps above until all line items are accounted for.
10. Scan all Production documents into the Quest Package.
11. Print the Proof of Loss and Print Screen copies of all HPP Final Worksheets.
12. Give a copy of the Proof of Loss and HPP Final Worksheets to the insured, but cross out the Loss Amount in columns A2 and B2.
13. Get the Proof of Loss Signed (Authorized Signature Only).
14. Before uploading the claim for payment, print off the Signed Proof of Loss, Survey Sheet(s) and a copy(s) of the HPP Final Worksheet(s). Put copies in the Claims Folder along with all other loss information for the policy for the year.

Case 5:13-cv-04106-CJW Document 149-11 Filed 03/13/17 Page 102 of 112
**CONFIDENTIAL**
FFIC 0842

**Accepted Production Forms (These contain the "I Certify" Statement).**

## HAIL PRODUCTION PLAN (HPP)

HPP places hail coverage on the portion of a producer's crop that is above their Multi-Peril Crop Insurance. A policyholder can have a standard hail policy and an HPP hail policy.

One of the following acceptable HPP production reporting forms must to be attached to the Quest claim package:

- **MP Production Worksheet Summary MP - 5081** (if MP claim exists) - signed and dated by the insured and MP adjuster (Form can be found in CIfyi. Click the Claim Center tab and then click the Claim Status Inquiry link)

- **Schedule of Insurance /Production Report MP – 4006as (02-10)** – signed and dated by the insured

- **Schedule of Insurance (Estimate) Production Report MP-4006** – signed and dated by the insured

- **2008 NCIS 765** - signed and dated by the insured. This form can be used when a signed MP Production Work Sheet Summary is not available because there is no MP loss.

- **Production and Yield Report Worksheet MP-3006WS (5-10)** - signed and dated by the insured

- **Production and Yield Report MP-3006 (5-09)** - signed and dated by the insured

- **Farm Credit Services of American Form 1501** – signed and dated by the insured

**Important:** Acceptable HPP production forms must be signed and have the following statement:

I certify that to the best of my knowledge and belief all of the information on this form is correct. I understand this form may be reviewed or audited and that information inaccurately reported or failure to retain records to support information on this form may result in a recomputation of the approved APH yield. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 u.s.c. §1006 and §1014; 7 u.s.c. §1506; 31 u.s.c. §3729, §3730 and any other Applicable Federal Statutes).

CONFIDENTIAL

FFIC 0843

## Opening the HPP Final Worksheet

1. Line Item 1.0 has been un-deferred and the HPP Final Worksheet column is highlighted.
2. Click on the HPP WS checked box to open the worksheet.



## HPP Final Worksheet

1. Enter the production for the Line Item into B1.
2. The Production % of Loss is determined in D1 and Crop Hail % of Loss in E1.
3. Payable Loss % (lesser of Production or Crop Hail % of Loss) is determined in F1.
4. Payment information is calculated in B2.



CONFIDENTIAL

The Proof of Loss can be printed off but the HPP Final Worksheet can't be printed. The adjuster will have to do the Print Screen Procedure to copy and paste the HPP Final Worksheet to an open Word Document.

Process for using Print Screen Option:

1. Open a Word Document
2. Open the HPP Final Worksheet
3. Hold down the "FN – ALT –PRNT SCRN (F11)" keys all at one time. In most cases, but not all, this will copy the screen on the computer but will hide the background on the screen when pasting into the open word document.
4. Go to the open word document and right click the mouse and click on paste. This will paste the HPP Worksheet into the word document. You will be able to paste two HPP Final Worksheets per page.
5. Make a copy of the Proof of Loss and two copies of the HPP Final Worksheet. Cross out the Payment information on one copy to leave with the insured along with the Proof of Loss.
6. Get the Proof of Loss Signed (Authorized Signature Only).
7. Print off a Signed Proof of Loss and copies of the HPP Final Worksheet. Put in the Claims Folder along with all other loss information for the policy for the year.

**GREEN SNAP - (This process is being programmed for 2012. Subject to change).**

Green Snap is entered into the survey sheet.

1. Enter the Green Snap percent (%) of loss into the "% Plants Destroyed" cell.



2. The Green Snap loss will be factored back against the crop remaining and will be added to the Hail percent of loss in Column L. The loss in Column L will be the Hail and Green Snap losses combined.

CONFIDENTIAL

FFIC 0845

**GREEN SNAP EXTRA HARVEST EXPENSE (EHE)**

Green Snap Extra Harvest Expense (EHE) worksheet will be used to determine the EHE loss.

1. Open the EHE worksheet (this process may change as the programming for this process is determined.)



2. Click in the ellipsis box under the PERIL column.



3. Click on **WIND**          Click on **GRN SNAP**          Fill in **Unit** or **Field Acres.**

4. Quest will not allow the adjuster to continue until all Unit acres are accounted for.

5. After accounting for all acres, click OK.

CONFIDENTIAL

EEIC 0846

6. This will take you back to the Policy page. Additional Line Item(s) will be generated for WIND.



7. Open the WIND line to work the EHE loss
8. Enter the EHE acres in Part A, "Acres Down (In Field)".



9. The worksheet will calculate the loss.
10. Draw a map and add remarks if applicable.

CONFIDENTIAL

EFIC 0847

## HAIL PRODUCTION PLAN (HPP) FIRE LOSS PROCEDURE

A Hail Production Plan Fire Loss can't be processed through Quest at this time. The adjuster will have to fill out an HPP FIRE WORKSHEET. The fire loss will be converted to a percent (%) of loss and will be added to the crop hail loss. The loss for both perils will be calculated in the worksheet.

**NOTE: The Fire Loss will not be added to the Hail Loss until production has been determined (harvest or appraisal).**

1. Enter the required information into the Hail Production Plan Fire Worksheet.
2. Add the Acres on Line Item (A), Line Item Liability (B), Fire Dept. Charges (E) (if applicable) and Crop Hail Loss (J).
3. The Loss Percent (%) on Line L will be the combined loss for both perils (Hail and Fire).
4. Note in the Survey Sheet comments section that the Fire loss must be added to the Crop Hail loss after production has been determined (harvest or appraisal).

| | SPECIFY POLICY AND LOSS INFORMATION | | |
|---|---|---|---|
| A | Acres on Line Item | A | 100.0 |
| B | Line Item Liability | B | $50,000 |
| C | Insurance Per Acre (For Calculation Purposes Only)  (A / B) | C | $500 |
| D | Acres of Standing Crop Destroyed | D | 20.0 |
| E | Fire department service charge as shown on receipt for payment | E | $250.00 |
| F | Convert Fire Dept. Charge into Acres Destroyed  (E / C) | F | 0.5 |
| G | Total Net Acres Destroyed  (D + F) | G | 20.5 |
| H | Total Payable Loss  (C X G) | H | $10,250 |
| | HPP Acre Conversion into Percent (%) of Loss | | |
| I | Convert amount payable, H, to Percent (%) of loss   (H / B x 100) | I | 20.5 |
| J | Crop Hail Loss % (From Survey Sheet) | J | 13.2 |
| K | Fire Loss Net Percent (%)  (100 - J) x I x100) | K | 17.8 |
| L | Total Loss (Crop Hail and Fire Loss)  (J + K) | L | 31.0 |

5. Get Subrogation Receipt signed.
6. Fill out the FACT SHEET explaining reason(s) for the fire and how acre determination was made.
7. Compile all Insurance information for Subrogation purposes.
8. A receipt for Fire Department charge is required.
9. Scan all documentation into the Quest Claim Package.
10. Put a copy of the Fire Loss in the Claim Folder.
11. Get Authorized Signature.
12. Defer all Line Items and upload.

CONFIDENTIAL

FFIC 0848

## HAIL PRODUCTION PLAN (HPP) TRANSIT LOSS PROCEDURE

Hail Production Plan Transit Loss can't be processed through Quest at this time. The adjuster will have to fill out a Hail Production Plan Transit Worksheet. The Transit loss will be converted to a percent (%) of loss and will be added to the crop hail loss. The loss for both perils will be calculated in the worksheet, Line Q.

1. Enter the required information into the Hail Production Plan Transit Worksheet (Field to first place of storage).
2. Add the Unit Acres (D), Unit Liability (E), Amount of Crop Lost in Transit (G), Average Yield per Acre (H), Misc. Costs (J) and Crop Hail Loss Percent (%) from Survey Sheet (O).
3. The Loss Percent (%) on Line Q will be the combined loss for both perils (Hail and Transit).
4. Adjust the loss in the Crop Hail Survey Sheet to reflect the Total Loss percent on line Q.

| SPECIFY POLICY AND LOSS INFORMATION | | | | |
|---|---|---|---|---|
| A | Date of Loss | | | |
| B | Cause of Transit Loss | | | |
| C | Location | | | |
| D | Unit Acres | | D | 200.0 |
| E | Unit Liability | | E | $100,000 |
| F | Insured Value Per Acre (IPA) | | F | $500 |
| G | Amount of Crop Lost in Transit | | G | 200.0 |
| H | Average Yield Per Acre | | H | 50.0 |
| I | Crop Lost Converted to Acres Destroyed (G / H) | | I | 4.0 |
| J | Misc. Cost to Salvage Grain (Vac-u-vator, tarps, hired help, etc...) | | J | $250 |
| K | Misc. Cost to Salvage Grain Converted to Acres Destroyed (J / F) | | K | 0.5 |
| L | Total Acres Destroyed | | L | 4.5 |
| M | Total Payable Loss  (Crop Loss and Misc. Charges (J + (L x F)) | | M | $2,250 |
| HPP Acre Conversion into Percent (%) of Loss | | | | |
| N | Convert amount payable, M, to Gross Transit Percent (%) of Loss (M / E) | | N | 2.3 |
| O | Crop Hail Loss Percent (%) (From Survey Sheet) | | O | 20.0 |
| P | Transit Net Loss Percent (%)  (100 - O) x N | | P | 1.8 |
| Q | Total Loss Percent (%) (Crop Hail + Transit Loss)  (P + Q) | | Q | 21.8 |

5. Get Subrogation Receipt signed.
6. Fill out the FACT SHEET explaining reason(s) for the Transit loss and how bushels destroyed was determined.
7. Compile all Insurance information for Subrogation purposes.
8. A receipt for Misc. charge(s) is required.
9. Scan all documentation into the Quest Claim Package.
10. Put a copy of the Fire Loss in the Claim Folder.
11. Get Authorized Signature.
12. Defer all Line Items and upload.

**CONFIDENTIAL**

# RCIS REINSPECTION PROCEDURE

## Re-inspection Requirements

1. Complete the Re-inspection Non-Waiver form (HA-5013). The Re-inspection Non-Waiver must be competed on all re-inspections. If insured will not sign, contact your supervisor. We can't work the re-inspection without a signature.
2. Rework the loss and complete new survey sheets. Enter the Original Loss % and the RI Loss % into the RI worksheet.
3. No additional payment will be made on a test unless additional damage is 5% or more of the original loss.
4. Any test that meets the additional loss percent (5% min.) will be added into the original test(s) that do not meet the min. additional loss percent to determine the gross additional loss percent for the Line Item.
5. Review Policy Type to determine if field splits are required **(Does not apply to HPP).**
6. Write a detailed **FACT SHEET** that documents the additional loss found, cause of loss other than hail damage or any other information relevant to the claim. Facts only, no opinions.
7. Inform the insured that the re-inspection is subject to company approval. The adjuster is only providing information to help determine if further payment is warranted.
8. Send all paperwork to ACS for review (RI Non-Waiver, RI Calc. Sheet, RI Request Form, Survey Sheets, Fact Sheet).
9. The ACS will review the information. If all calculations are correct, the re-inspection findings will be sent to the RCM for approval.
10. If approved, the RCM will contact the RSO to open a new claim for that Policy. The approval will be sent back to the ACS for processing. The ACS has the option to make the changes or assign the claim back to the adjuster that worked the re-inspection to make the changes in the newly opened claim.
11. If not approved, the RCM will send a letter to the insured explaining the reason(s) for denial.
12. All Re-inspection documentation (Insured Re-inspection Request, RI Non-Waiver, Survey Sheets, Re-inspection Worksheet, HD / Deferred Estimate, etc.) will be attached to the claim and uploaded for additional payment.
13. If applicable, adjuster must fill out High Dollar / Deferred Estimator to reflect the new loss totals **(Mandatory for HPP Re-inspection claims)**

## .nspection Requirements for Hail Production Plan (HPP)

1. Same as 1 – 13 above.
2. All Re-inspection documentation (documentation same as above) will be attached to the claim, put copies of the Re-inspection documentation in the claim file, defer all line items, and upload the claim.

## Filling out the Re-inspection Worksheet

1. Enter insured Policy information and Line Item information (A1 – A4).
2. Enter the original loss percentages (B1).
3. Adjust the Line Item following recognized NCIS Loss Adjusting Procedures.
4. Enter Re-inspection percent of loss (B2).
5. If Re-inspection loss percent is less than 5% min., use the original loss percent (B1) in B5.
6. Determine if splits are required. If so, use another worksheet to determine additional loss. Make necessary changes (A1 - A2) **(Does not apply to HPP)**
7. Enter the total test(s) taken (C1).
8. Re-inspection results will be calculated in D1 – D3.
9. Enter test counts on the map.
10. Fill out FACT SHEET explaining your findings.


**CONFIDENTIAL**    FFIC 0860

Re-inspection Worksheet (No Split)

## RCIS - REINSPECTION CALCULATION WORKSHEET

| INSURED | | | POLICY NO. | | | CLAIM NO. | DATE OF LOSS | | REINSPECTION DATE | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Joe Farmer | | | 00-111-222222 | | | | 6/22/2011 | | 8/22/2011 | | |

| A1 Line Item | A2 Acres | A3 Crop | A4 Policy Type | D1 Original Loss % | D2 R.I. Loss % | D3 Additional Loss % | | A1 Line Item | A2 Acres | A4 Crop | A5 Policy Type | D1 Original Loss % | D2 R.I. Loss % | D3 Additional Loss % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | 120.0 | Corn | Basic | 13.7 | 15.8 | 2.0 | | | | | | | 0.0 | |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (if additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | 13.2 | 18.4 | 5.2 | 18.2 | 18.4 | 18.4 |
| 2.0 | 12.1 | 13.9 | 1.8 | 17.1 | | 12.1 |
| 3.0 | 22.9 | 21.6 | -1.3 | 27.9 | | 22.9 |
| 4.0 | 8.7 | 13.7 | 5.0 | 13.7 | 13.7 | 13.7 |
| 5.0 | 11.7 | 16.6 | 4.9 | 16.7 | | 11.7 |
| Total | 68.6 | | | Total | | 78.8 |
| Tests | 5 | | C1 | Tests | | 5 |
| Average | 13.7 | | | Average | | 15.8 |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (if additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | | | 0.0 | | | 0.0 |
| 2.0 | | | 0.0 | | | 0.0 |
| 3.0 | | | 0.0 | | | 0.0 |
| 4.0 | | | 0.0 | | | 0.0 |
| 5.0 | | | 0.0 | | | 0.0 |
| Total | 0.0 | | | Total | | 0.0 |
| Tests | | | C1 | Tests | | 0 |
| Average | | | | Average | | |

**FACT SHEET**

Counts 1 and 4 meet the 5% min. requirement. Counts 2, 3 and 5 do not meet the 5% min. requirement. The additional loss percentage for the Line Item is calculated in D1 - D3.

| Line Item | QTR. | SEC. | TWNSHP | RNG. |
|---|---|---|---|---|
| 1.0 | NW | 12 | 31 | 22 |



| Line Item | QTR. | SEC. | TWNSHP | RNG. |
|---|---|---|---|---|
| 0.0 | | | | |

Re-inspection Worksheet – (Split is Required, Same field as above. Split necessary because of Policy Type).

## RCIS - REINSPECTION CALCULATION WORKSHEET

| INSURED | | | POLICY NO. | | | CLAIM NO. | DATE OF LOSS | | REINSPECTION DATE | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Joe Farmer | | | 00-111-222222 | | | | 6/22/2011 | | 8/22/2011 | | |

| A1 Line Item | A2 Acres | A3 Crop | A4 Policy Type | D1 Original Loss % | D2 R.I. Loss % | D3 Additional Loss % | | A1 Line Item | A2 Acres | A4 Crop | A5 Policy Type | D1 Original Loss % | D2 R.I. Loss % | D3 Additional Loss % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0A | 72.0 | Corn | DXS5 | 12.1 | 15.6 | 3.6 | | 1.0B | 48.0 | Corn | DXS5 | 18.2 | 23.8 | 5.6 |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (if additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | 6.2 | 11.9 | 5.7 | 11.2 | 11.9 | 11.9 |
| 2.0 | 18.4 | 23.2 | 4.8 | 23.4 | | 18.4 |
| 3.0 | | | 0.0 | | | 0.0 |
| 4.0 | | | 0.0 | | | 0.0 |
| 5.0 | 11.6 | 16.6 | 5.0 | 16.6 | 16.6 | 16.6 |

| TEST | B1 ORIGINAL GROSS LOSS % | B2 RI GROSS LOSS % | B3 ADD. GROSS LOSS % | B4 MINIMUM LOSS NEEDED FOR ADD. LOSS % TO BE PAID | B5 Test(s) with add. Loss % (Meets 5% Min.) | B6 RI LOSS % (if additional is less than 5%, use Original Loss %) |
|---|---|---|---|---|---|---|
| 1.0 | | | | 0.0 | | 0.0 |
| 2.0 | | | | 0.0 | | 0.0 |
| 3.0 | 17.4 | 23.6 | 6.2 | 22.4 | 23.6 | 23.6 |
| 4.0 | 18.9 | 23.9 | 5.0 | 23.9 | 23.9 | 23.9 |
| 5.0 | | | | 0.0 | | 0.0 |

CONFIDENTIAL

EFIC 0851



## Burkhart, Larry (RCIS)

| | |
|---|---|
| **From:** | Kevorkian, Steven A (RCIS) |
| **Sent:** | Monday, January 14, 2013 7:33 AM |
| **To:** | Burkhart, Larry (RCIS) |
| **Subject:** | FW: Bruhn |

**From:** Grieme, Larry L (RCIS)
**Sent:** Sunday, January 13, 2013 1:14 PM
**To:** Kevorkian, Steven A (RCIS)
**Subject:** RE: Bruhn

Curt Thompson-Curt Winquist-Craig Woodford-Don Carlson and myself were there to help. Non of us were in contact with the insured nor did we try. We only made counts and gave them to Gaylen to enter.

FFIC 0551