IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

BRUHN FARMS JOINT VENTURE                                          PLAINTIFF

v.                                                        Case No. 13-CV-4106-CJW

FIREMAN'S FUND INSURANCE COMPANY                                   DEFENDANT

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, CONSTITUTIONAL
REDUCTION OF PUNITIVE DAMAGES AWARD**

I.   RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

   A.   FFIC had an objectively reasonable basis to pay what it did.

In order to establish a triable issue as to the objective element of bad faith, it was incumbent on Plaintiff to prove that FFIC had ***no reasonable basis*** for its decision to pay the sum of $417,637. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 568, 473 (Iowa 2005). Stated another way, Plaintiff had to prove that it ***was not*** "fairly debatable" that Defendant owed more than it paid. *Id.* Regardless of whether more money was owed—and in this instance the jury found that Plaintiff was owed an additional $32,700—if there was any credible evidence in support of FFIC's decision as to the amount due, the claim was fairly debatable. *See Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991).

To support its bad faith claim, Plaintiff points to evidence that the adjustment was delayed, that the crop was improperly staged, that not all of the fields were adjusted, that the claim review was flawed, and that Plaintiff was allegedly led down a "primrose path." It was undisputed that the claim was reported on September 26 and adjusted on October 29 and 30. Assuming that this delay was unreasonable, there was no testimony that the delay caused an underpayment. In fact, the proof showed that any delay in adjustment would result in a higher percentage of loss due to continuing natural shatter. The staging issue was hotly contested, with FFIC presenting testimony that it would

have been impossible for the beans to have been immature on the date of loss and also (1) suffer shatter loss and (2) be ready for harvest commencing on September 26. At a minimum, the staging issue was controverted; and there was certainly evidence (which the jury apparently accepted) that Plaintiff's position as to staging was incorrect. Likewise, the issue of whether RCIS adjusters inspected all of the loss fields was contested, with Plaintiff asserting that all of its fields were presented for inspection and Defendant presenting proof that the adjusters were only requested to adjust the southern fields. Again, given the amount of the contractual award, it is apparent that the jury did not believe Plaintiff's testimony in this regard. The sufficiency of the quality control review conducted by Larry Grieme was also challenged by the Plaintiff, but this was merely a review of what the adjusters had done; and of course Defendant presented evidence that both the review and the adjusters' original findings were correct. The reconsideration process was a second review of the original claim determinations. There was nothing about the reconsideration that unequivocally established an underpayment. To summarize, the jury was presented with significant evidence in support of Defendant's position that the Plaintiff received every cent it was owed. While the jury determined that the payment was short by $32,700, this has no bearing on bad faith. Again, the relevant question for objective bad faith is not whether the insurer's decision was correct but whether there was a valid reason for the insurer to take the position that it did.

Absent proof of objective bad faith, the Court need not consider the subjective element. Here, Plaintiff presented evidence (contested by FFIC) challenging the adequacy of the adjusters' inspections and subsequent company reviews. Such evidence is probative of subjective bad faith. However, if the insurer has an objectively arguable basis for its actions, such evidence cannot be asserted as a stand-alone basis for bad faith. *Reuter*, 469 N.W.2d at 254. It was shown at trial that FFIC had an arguable basis for paying what it did. Thus, the Court must grant judgment in Defendant's favor on the bad faith claim.

2

## B. There was no proof of legal malice.

Aside from failing to prove bad faith, the Plaintiff also failed to prove the requisite legal malice to support an award of punitive damages under Iowa Code § 668A.1. Plaintiff argues that FFIC undertook a course of conduct to intentionally delay adjustment, underpay the claim, deny Plaintiff its right to an appraisal, and then justify its actions. All of these contentions are based on pure conjecture. There was no proof of intentional delay in adjusting the loss or issuing payment. Just over two months after the loss was reported, Plaintiff received a check for over 92.7% of what the jury determined was owed. There was also no evidence that Defendant denied Bruhn's right to an appraisal. Bruhn was provided with the adjusters' findings on November 5 and could have demanded an appraisal at any time thereafter.

The remaining evidence alluded to by Plaintiff concerns events occurring after the claim had already been adjusted and paid. Specifically, Plaintiff points to various yield-based calculations performed by Larry Burkhart and Terry Nielsen as evidence that the claim was knowingly underpaid. Messrs. Burkhart and Nielsen both testified that they were merely attempting to determine what Plaintiff was seeking in the way of additional payments, as Plaintiff never indicated how or why it believed the adjusters' findings were in error.[1] Plaintiff also points to a number of informal email exchanges between Larry Burkhart and others as evidence that RCIS somehow "had it in" for Bruhn. The evidence shows that RCIS engaged in significant post-claim discussions with Alan Bruhn to address his concerns and even went so far as to have its National Field Claims Manager, Mr. Burkhart, meet with the insured and undertake an extensive claim review. The emails simply document Mr. Burkhart's efforts to obtain information.

---

[1] In fact, Plaintiff appeared to claim at trial that the Defendant breached an agreement with Plaintiff to settle the claim for $900,000. Such a claim was never pled by Plaintiff, and obviously the jury did not believe that such an agreement was ever reached.

3

There is no proof of "willful or wanton disregard." The evidence shows that there was a legitimate dispute over the amount owed in connection with this claim and that RCIS went to significant efforts to ensure that the Plaintiff had received what it was due. Ultimately, the jury determined that the claim was underpaid by just over 7%.

II. MOTION TO REDUCE PUNITIVE DAMAGES

    A. **The pre-*Gore* cases cited by Plaintiff are inapposite.**

Prior to addressing the constitutionality guideposts mandated by *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589 (1996), Plaintiff argues that FFIC was on "fair notice" of a potential $1.5M punitive damages award based on *Owens v. International Bus. and Merc. Reass. Co.*, 940 F.2d 1538 (10th Cir.1991) (Unpublished), and *A.W.G. Farms, Inc. v. Fed. Crop Ins. Corp.*, 757 F.2d 720 (8th Cir.1995). In *Owens*, the Tenth Circuit affirmed punitive damages that were less than two times compensatory damages (actual damages of $959,563 and punitives of $1.5M for first plaintiff and actual damages of $272,617 and punitives of $500,000 for second plaintiff).[2] This case was decided five years prior to *Gore* and offers no insight as to current due process standards for punitive damages. In *AWG Farms*, there was no award of punitive damages. Rather, the "primrose path" analogy was invoked to preclude the federal government from invoking a contractual coverage defense.

    B. **The *Gore* guideposts mandate a reduction in punitive damages.**

        *1. Degree of reprehensibility*

Plaintiff wrongfully asserts that there was evidence to support three of the "reprehensibility" factors. First, Plaintiff contends that FFIC's conduct involved repeated actions directed at Plaintiff rather than an isolated incident. It is well established that multiple alleged actions directed at a

---

[2] Plaintiff wrongly suggests that the ratio of actual damages to punitive damages was much higher by focusing only on the contract amounts and failing to note the other compensatory damages.

plaintiff in connection with one extended transaction do not satisfy the "repeated conduct" requirement. Rather, "repeated conduct" refers to specific instances of similar conduct directed at **other parties**. *See Willow Inn, Inc. v. Public Service Mut. Ins. Co.*, 399 F.3d 224, 232 (3rd Cir.2005). In this case, there was no evidence concerning the manner in which Defendant worked claims of other insureds. Second, Bruhn argues that there was evidence that Defendant's claim handling showed indifference to or a reckless disregard of Bruhn's "health or safety." On this point, Plaintiff cites *Zimmer v. Travelers Ins. Co.*, 521 F.Supp.2d 910 (S.D.Iowa2007). *Zimmer* involved the bad faith denial of a workers' compensation claim. There, the court held that the denial of such a claim "when a worker is injured and unable to work" may "reasonably be seen to evince an indifference to, or reckless disregard for the health and welfare of the worker." *Id.* at 952. Contrary to *Zimmer*, the present case involved a property insurance claim submitted by a farming entity. There was no evidence of bodily injury, and no one's health or welfare was at jeopardy based on the handling of the claim. Finally, Plaintiff argues that its harm was the result of "intentional malice, trickery, or deceit." However, the only evidence of such identified by Plaintiff are various internal emails (which merely document Larry Burkhart's efforts to obtain information relating to the underlying claim) and a conclusory statement that Defendant "intentionally" breached the insurance contract. There emails certainly do not evince any sort of malice or trickery.[3] None of the reprehensibility factors are present in this case.

## 2. *Proportionality of punitive damages to compensatory damages*

In addressing proportionality between compensatory damages and punitive damages, Plaintiff argues that the Court should not only consider the $32,700 in contract damages awarded by the jury but also any "potential" damages that Plaintiff may have suffered. While potential harm

---

[3] Plaintiff further suggests that this claim involved substantially more deceit and trickery than the claim at issue in *Zimmer*. In *Zimmer*, however, the court did not find that there was deceit or trickery. In that case, the determined "reprehensibility" factors were disregard for the health and welfare of the worker and financial vulnerability. *Zimmer*, 921 F.Supp.2d at 952.

5

may be the appropriate point of comparison under certain scenarios, this is not a potential harm case. Potential harm is appropriately considered in those cases (usually fraudulent in nature) where more damages would have been incurred but for the defendant having failed to succeed in its planned malfeasance. *See TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460-61, 113 S.Ct. 2711, 2722 (1993). *See also Willow Inn*, 399 F.3d at 234 ("The lesson of *TXO Production* is that punitive damages amounts need not be tethered to the small actual harm frauds visited upon their victims.") The only "harm" at issue in this case was Plaintiff's alleged deprivation of amounts due under the insurance contract. The jury determined that this amount was $32,700, which is the sum total of Plaintiff's actual and potential damages.

Plaintiff also argues that its attorneys' fees and expenses should be considered in determining the reasonableness of the punitive damage award. The only authority cited by Plaintiff on this point is *Willow Inn*. However, in that case, the plaintiff **recovered** fees and expenses of $135,000 as part of its compensatory (i.e. "bad faith") damages. *Willow Inn*, 399 F.3d at 235. The court then compared the bad faith damages to punitive damages, resulting in a ratio of 1:1. *Willow Inn* is inapposite because Bruhn was <u>not</u> awarded damages other than for breach of contract.

Finally, Plaintiff argues that the ratio of compensatory damages to punitive damages of 45.8:1 should not be deemed excessive based on other reported decisions. Several of the cited cases involve nominal damages, and it is generally accepted that the proportionality requirement is of limited use when only nominal damages are involved. *See*, *e.g.*, *Sherman v. Kasotakis*, 314 F.Supp.2d 843, 874-75 (N.D.Iowa 2004). Moreover, all of these cases involved findings of significant reprehensibility. The following is a summary of the cases cited by Plaintiff on this point:

> *United States v. Big D Enterprises, Inc.*, 184 F.3d 924 (8th Cir.1999) – punitive damages of $50,000 and nominal damages of $500 (ratio of 100:1) – high reprehensibility based on findings of race-based discrimination – punitive award was also equal to available statutory fine.

6

*Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024 (8th Cir.2000) – punitive damages of $210,000 and actual damages of $7,835 (ratio of 27:1) – high degree of reprehensibility based on findings of actual fraud.

*Kimbrough v. Loma Linda Development, Inc.*, 183 F.3d 782 (8th Cir.1999) – punitive damages of $100,000 and actual damages of $50,000 for one plaintiff (ratio of 2:1) and punitive damages of $100,000 and actual damages of $10,000 for other plaintiff (ratio of 10:1) – high degree of reprehensibility based on discriminatory practices.

*Dean v. Olibas*, 129 F.3d 1001 (8th Cir.1997) – punitive damages of $70,000 and actual damages of $5,000 (ratio of 14:1) – high degree of reprehensibility based on false arrest.

*Sherman v. Kasotakis*, 314 F.Supp.2d 843 (N.D.Iowa2004) – punitive damages of $12,500 and nominal damages of $1 (ratio of 12,500:1) – extreme reprehensibility based on intentional denial of services to and verbal degradation of minority customer.

*Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir.2014) – punitive damages of $300,000 and nominal damages of $1 (ratio of 300,000:1) – high reprehensibility where defendant was found to be a "serial violator of antidiscrimination laws."

*Haynes v. Stephenson*, 588 F.3d 1152 (8th Cir.2009) – punitive damages of $2,500 and nominal damages of $1 (ratio of 2500:1) – defendant's conduct deemed sufficiently egregious to warrant high ratio.

*JCB, Inc. v. Union Planters Bank*, 539 F.3d 862 (8th Cir.2008) – punitive damages of $1.1M and compensatory damages of $1.15M (ratio of 1:1) for conversion and punitive damages of $108,750 and actual damages of $1 (ratio of 108,750:1) for trespass – high degree of reprehensibility.

*May v. Nationwide Mortgage, LLC*, _ F.3d _, 2017 WL 1160953 (8th Cir. March 29, 2017) – punitive damages of $400,000 and actual damages of $50,000 (ratio of 8:1) – extreme reprehensibility based on abusive debt collection practices and improper foreclosure of residence.

*Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir.1999) – punitive damages of $4.5M and actual damages of $47,000 (ratio of roughly 100:1) – very high reprehensibility and potential harm to safety of others based on environmental pollution.

*Jeffries v. Wal-Mart Stores, Inc.*, 15 Fed.Appx. 252 (6th Cir.2001) – punitive damages of $425,000 and actual damages of $8500 (ratio of 50:1) – high reprehensibility based on finding of racial discrimination.

*Daka, Inc. v. Breiner*, 711 A.2d 86 (D.C.App.1998) – punitive damages of $390,000 and actual damages of $10,000 (ratio of 39:1) – high reprehensibility based on workplace discrimination.

7

*Rahn v. Junction City Foundry, Inc.*, 161 F.Supp.2d 1219 (D.Kan.2001) – punitive damages of $100,000 and actual damages of $18,000 (ratio of 5.5:1) – high reprehensibility based on sex discrimination and retaliation.

*Bains LLC v. ARCO Products Co.*, 405 F.3d 764 (9th Cir.2005) – punitive damages of $300,000 to $450,000 and actual damages of $50,000 (ratios from 6:1 to 9:1) – high reprehensibility based on racial discrimination.

*Willow Inn, Inc. v. Public Service Mut. Ins. Co.*, 399 F.3d 224 (3rd Cir.2005) – punitive damages of $150,000 and actual damages of $135,000 (ratio of 1.1:1) – two of the reprehensibility factors present, which was sufficient to support punitive award that was roughly 1.1 times actual damages.

*Wightman v. Consolidated Rail Corp.*, 715 N.E.2d 546 (Ohio1999) – punitive damages of $15M and compensatory damages of $2,400 (ratio of 6250:1) – very high degree of reprehensibility where defendant failed to properly gate railway crossing.

*Coalson v. Canchola*, 754 S.E.2d 525 (Va.2014) – punitive damages of $100,000 and compensatory damages of $5,600 as to first plaintiff (ratio of 17.9:1) and punitive damages of $100,000 and actual damages of $14,000 as to second plaintiff (ratio of 7.1:1) – very high degree of reprehensibility where defendant was operating vehicle while intoxicated.

*United States v. Veal*, 365 F.Supp.2d 1034 (W.D.Mo.2004) – punitive damages of $1.055M and actual damages of $47,804 (ratio of 22:1) – high degree of reprehensibility based on defendant's recurring sexual harassment.

*CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 2005 WL 1595428 (E.D.Pa. July 5, 2005), vacated and remanded by 499 F.3d 184 (3rd Cir.2007) – District Court reduced the punitive award to $2M based on actual damages of $109,000. On appeal, the Third Circuit further reduced the punitive damages award to $750,000, for a ratio of 6.9:1 – three of the reprehensibility factors were present.

*Superior Fed. Bank v. Jones & Mackey Constr. Co., LLC*, 219 S.W.3d 643 (Ark.App. 2005) – punitive damages of $3.08M and actual damages of $175,000 (ratio of 17.6:1) – substantial degree of reprehensibility based on defamation.

*Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781 (8th Cir.2009) – punitive damages of $1.15M and actual damages of $1.15M (ratio of 1:1) – three of the reprehensibility factors were present to justify a punitive award equal to the amount of actual damages.

Again, **all** of these cases involved high reprehensibility. It also bears noting that only two of the cases involved first-part bad faith: *Willow Inn* (approving a ratio of 1.1:1 based on presence of

8

two reprehensibility factors) and *Moore* (approving ratio of 1.1:1 based on presence of three reprehensibility factors). In this instance, none of the reprehensibility factors are present. Thus, to the extent the Court determines that punitive damages may be appropriate, it remains clear that only a ratio of 1:1 or slightly higher can survive constitutional scrutiny.

### 3. Comparable civil or criminal penalties

As previously shown, the maximum statutory fine available in Iowa for bad faith conduct similar to that alleged in this case is $50,000. *See* Iowa Code § 507B.7. Plaintiff suggests that a 30:1 ratio is somehow "reasonable." However, the third of the *Gore* guideposts is intended to assess whether the punitive award is consistent with "legislative judgments concerning the appropriate sanction for the conduct at issue." *Gore*, 517 U.S. at 583 (quoting Justice O'Connor's concurrence in *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S.Ct. 2909, 2934 (1989)). In this case, it clearly is not.

## III. CONCLUSION

The Court should enter judgment as a matter of law in favor of Defendant with respect to the bad faith and punitive damages claims. Alternatively, the punitive damages award must be reduced to comport with due process standards.

Date: April 17, 2017

Respectfully submitted,

s/ Jeffrey S. Dilley
Jeffrey S. Dilley, *Pro Hac Vice*
jsd@henke-bufkin.com
Elizabeth T. Bufkin, *Pro Hac Vice*
etb@henke-bufkin.com
W. Kurt Henke, *Pro Hac Vice*
wkh@henke-bufkin.com
HENKE BUFKIN, P.A.
Post Office Box 39
Clarksdale, MS 38614
662-624-8500 (telephone)
662-624-8040 (fax)

Michael W. Ellwanger, AT0002283
mellwanger@rawlings-law.com
RAWLINGS, ELLWANGER, JACOBS
MOHRHAUSER & NELSON, L.L.P.
522 4TH Street, #300
Sioux City, IA 51101-1624
712-277-2373 (telephone)
712-277-3304 (fax)

*Attorneys for Fireman's Fund Insurance Company*

### Certificate of Service

I, Jeffrey S. Dilley, do hereby certify that on April 17, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send a notification of such filing to all counsel of record.

s/ Jeffrey S. Dilley